UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAZEN OWYDAT, <br> YOUSSEF MEQUEH and <br> SALEH ALKHAFAJI d/b/a WEST <br> FLORISSANT BP f/k/a <br> WEST FLORISSANT AMOCO, <br> <br>     Petitioners/Plaintiffs, <br> <br> vs. <br> <br> CITY OF ST. LOUIS and <br> BOARD OF ADJUSTMENT OF THE <br> CITY OF ST. LOUIS, MISSOURI, <br> <br>     Respondents/Defendants. | Cause No. 4:20-cv-00388 |

### RESPONDENTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, III, IV AND V OF PETITIONERS' PETITION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

COME NOW Respondents City of St. Louis, Missouri and the Board of Adjustment of the City of St. Louis, Missouri, by and through counsel, and for their *Memorandum of Law In Support of Their Motion to Dismiss Counts I, III, IV and V of Petitioners' Petition For Injunction, Mandamus, Declaratory Judgment And, Alternatively, Writ of Certiorari and Application For A Stay Pursuant to Chapter 89.110 RSM. And Damages Claims* respectfully state as follows:

**I.    Introduction**

On February 9, 2020, Petitioners Mazen Owydat, Youssef Mequeh, and Saleh Alkhafaji, as partners doing business as West Florissant BP (collectively referred to as "Petitioners") filed a five count lawsuit against the City of St. Louis and the Board of Adjustment for the City of St. Louis seeking an "Injunction, Mandamus, Declaratory Judgment, and Alternatively, for Writ of

Certiorari pursuant to Chapter 536 and Chapter 89 for Judicial Review of a decision of the City's Board of Adjustment and Damages based on violations of Petitioners' Due Process, Equal Protection and Takings Clause rights under the United States Constitution." ECF 1-2 at p.1. According to Petitioners, the actions of "various officials of the City of St. Louis, Missouri … culminated in an unlawful decision by the Board of Adjustment of the City of St. Louis" to deny an occupancy permit to Petitioners. *Id.*at ¶1. A copy of the Board's decision is attached to the petition as Exhibit 3. In Count III of their petition, Petitioners claim the Board's decision was in error and in violation of their "procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution in that WFBP has been denied its constitutionally protected right to keep and/or renew its occupancy permit…" *Id.* at ¶48. In Court IV, Petitioners allege the Board has not "revoked occupancy permits or refused to grant new occupancy permits to other commercial businesses and convenience stores and gas stations that are similarly situated to WFBP" and the Board's decision to deny or revoke this permit was in "violation WFBP's Fourteenth Amendment equal protection rights." *Id.* at ¶¶53, 58. Finally, in Count V, Petitioners assert the Board's decision to deny a permit "prohibit WFBP from using its property in accordance with WFBP's investment-backed expectations to continue to operate its gas station and convenience stores business" which "represent[s] an unconstitutional taking, a regulatory taking and an inverse condemnation." *Id.* at ¶¶67, 69.

As more fully discussed herein, Counts I, III, IV, and V of the petition must be dismissed because a writ of certiorari is the sole vehicle for relief available under Missouri law for a party aggrieved by the decision of the City's Board of Adjustment. Additionally, Petitioners fail to state a claim against Respondents for violation of Petitioners' rights under the Fifth and

2

Fourteenth Amendments of the United States Constitution or for review of this case under § 536.150 R.S Mo. Accordingly, Counts I, III, IV, and V of the petition must be dismissed.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d. 623, 627 (8th Cir. 2001) quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss, the Court must take the factual allegations of the Complaint as true and liberally construe the Complaint in a light most favorable to Plaintiffs. *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). However, while detailed factual allegations are not required, neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Here, Counts I, III-V of the petition fail to state a claim upon which relief may be granted and must be dismissed.

## III. Analysis

### COUNTS I, III, IV, AND V OF THE PETITION MUST BE DISMISSED AS PETITIONERS' EXCLUSIVE REMEDY IS A WRIT OF CERTIORARI UNDER §89.110 OF THE REVISED STATUTES OF THE STATE OF MISSOURI

In Counts I, III, IV, and V of the petition, Petitioners seek a declaratory judgment against Respondents, an order in mandamus, damages, and an injunction against Respondents related to Respondents' decision to deny Petitioners an occupancy permit at the subject property. ECF 1-2

3

at p. 8, 10, 13, 14. Petitioners' claims, however, are inappropriate as their exclusive remedy in this case is a writ of certiorari issued pursuant to § 89.110 R.S.Mo.

In this case, Petitioners allege they have been damaged because of an erroneous decision by the City's Board of Adjustment. A Board of Adjustment "functions in an administrative or quasi-administrative capacity, and its decisions are reviewed by statutory mandate." *Duffner v. City of St. Peters*, 482 S.W.3d 811, 817 (Mo. App. E.D. 2016). Section 89.110 of the Revised Statutes of Missouri states, in relevant part,

> Any person or persons jointly or severally **aggrieved by any decision of the board of adjustment**…may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. … Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of adjustment . . . (emphasis added)

The scope of review under § 89.110 R.S. Mo is limited to determining whether the challenged decision is legal in the sense of being authorized by the law and whether it is supported by competent and substantial evidence. *State ex rel. Columbus Park Community Council v. Board of Zoning Adjustment of Kansas City*, 864 S.W.2d 437 (Mo. App. W.D. 1993). In order to determine whether the decision is based upon substantial and competent evidence, the Court reviews the applicable laws governing the procedures for granting a permit to determine what evidence is required to justify the decision and whether such evidence was presented. *See e.g. Nigh v. City of Savannah, Mo.*, 956 S.W.2d 451, 454 (Mo. App. W.D. 1997). Therefore, in this this review, the court will look at whether the Board's decision was in violation of any applicable statutes, provisions of the United States and Missouri Constitutions, or City of St. Louis ordinances as well as whether the facts presented support the Board's determination. This statutory procedure provides Petitioners with a more than adequate opportunity for the legality of the Board's decision to be decided. Accordingly, review under §89.110 R.S.Mo. should be

considered Petitioners' exclusive remedy. *Normandy Sch. Dist. v. City of Pasadena Hills*, 70 S.W.3d 488, 492 (Mo. App. E.D. 2002) ("[I]f there is an adequate statutory remedy the procedure prescribed is exclusive.") Because the writ of certiorari sought in Count II of the petition is Petitioners' exclusive remedy, this Court should dismiss Counts I, III, IV, and V.

PETITIONERS HAVE FAILED TO SET FORTH ANY CLAIMS THAT ARE SUBJECT TO REVIEW UNDER §536.150 R.S. MO

A review of each count of the petition shows that Petitioners have failed to set forth sufficient facts to support a cause of action against Respondents. In Count I, Petitioners seek judicial review and relief from the court pursuant to §536.150 R.S. Mo. The petition, however, fails to set forth any facts or actions that are subject to review under this statute. Petitioners claim they were aggrieved by the decision of the City's Board of Adjustment to revoke the occupancy permit for the subject property. It is well-settled that judicial review of zoning and planning decisions by a municipal board of adjustment is governed by § 89.110, not Chapter 536. *Deffenbaugh Industries, Inc. v. Potts*, 802 S.W.2d 520 (Mo. App. W.D. 1990); *State ex rel. Presbyterian Church of Washington, Missouri v. City of Washington, Missouri,* 911 S.W.2d 697, 701 (Mo. App. E.D. 1995). "The proper redress for a person aggrieved by a zoning and planning decision is by petition for writ of certiorari under section 89.110, not by petition for review under section 536.110." *Platte Woods United Methodist Church v. City of Platte Woods*, 935 S.W.2d 735, 737 (Mo. App. W.D. 1996). Accordingly, Count I of the petition must be dismissed.

PETITIONERS HAVE FAILED TO SHOW THEY HAVE BEEN DEPRIVED OF A LEGITIMATE CLAIM OF ENTITLEMENT TO AN ESTABLISHED PROPERTY INTEREST

Count III of the petition again attacks Respondents' decision to deny Petitioners an occupancy permit for the Subject Property claiming a violation of Petitioners' "procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution." ECF 1-2 at ¶48. In support of this allegation, Petitioners assert the existence of a "vested

5

property right" to continue to occupy the property. *Id.* at ¶46. Petitioners, however, have not and cannot shown they have been deprived a legitimate claim of entitlement to an established property interest. As a result, Count III of the petition must be dismissed.

To allege a due process claim, Petitioners show a legitimate claim of entitlement to an established property interest. *Beggs v. Gilkey*, 178 F. App'x 593 (8th Cir. 2006)(per curiam)(unpublished opinion). Petitioners' conclusory statements that they had a "vested property right" to continue to use the property is insufficient to establish a legitimate entitlement to an established property interest.

In order to hold a "property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564 (1972). A court must first find the existence of a protected interest before it can "examine whether the deprivation of the protected interest was done in accordance with due process." *Forrester v. Bass*, 397 F.3d 1047 (8th Cir. 2005) *citing Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). A property interest in an occupancy permit exists when a municipality does not have discretion and must issue the permit to an applicant who has complied with statutory requirements, and the applicant has complied with those requirements. *Carolan v. City of Kansas City, Mo.*, 813 F.2d 178, 181 (8th Cir. 1987).

Petitioners assert the existence of an alleged property interest by claiming they have owned the Property for a many years and have been permitted to occupy and operate their business out of the Property since 1998. ECF 1-2 at ¶46. Such allegations, however, speak to Petitioners' expectation and desire to continue occupying the Property but fail to establish a legitimate entitlement to do so.

Petitioners do not allege Respondents lacked discretion to approve or deny Petitioners' application for an occupancy permit, nor do they point to any ordinance that shows Respondents did not have discretion in deciding whether to revoke or issue an occupancy permit. On the contrary, Respondents do, in fact, have such discretion. *See e.g.* Section 26.84.050 of the Revised Code of the City of St. Louis.

In this case, Respondents determined Petitioners' occupancy of the Property was and would continue to be detrimental to public health, safety, morals, or general welfare, and therefore declined to grant Petitioners an occupancy permit. *See* ECF 1-2 Exhibit C. "Through section 67.400, the State has delegated its police power to the City." *City of Kansas City v. Jordan*, 174 S.W.3d 25, 40 (Mo.App. W.D. 2005). "Generally, the function of the police power has been held to promote the health, welfare, and safety of the people by regulating all threats either to the comfort, safety, and welfare of the populace or harmful to the public interest." *Id.* Building regulations by a municipality are an exercise of the police power. *Id.* Further, "enforcement of the property maintenance ordinances is a valid exercise of the City's police powers." *Id.*

Petitioners cannot and do not make sufficient allegations that Respondents lacked discretion in reaching this conclusion and, therefore, they fail to sufficiently allege deprivation of a legitimate claim of entitlement to an established property interest. As a result, Petitioners fail to state a cause of action against Respondents and Count III of their Petition should be dismissed.

# PETITIONERS CANNOT SHOW THEY WERE INTENTIONALLY TREATED DIFFERENTLY FROM OTHER SIMILARLIY SITUATED BUSINESSES BECAUSE OF THEIR MEMBERSHIP IN A PROTECTED CLASS

Count IV of the petition concerns an allegation that Petitioners were treated differently than other similarly situated "commercial businesses and convenience stores and gas stations" when Respondents denied Petitioners' request for an occupancy permit for the Property. Petitioners assert that the United States and Missouri constitutions "entitle [Petitioners] to receive approval from Respondents of its request for permits without regard to the ethnicity or religion of Petitioners." ECF 1-2 at ¶54. Petitioners, however, do not allege they were treated differently than similarly situated businesses simply because of their membership in a protected class.

In instances where a plaintiff does not allege membership in a protected class, the Supreme Court recognizes a "class of one" equal protection claim where "the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Supreme Court has also reasoned that there are some forms of state action that require the state to make discretionary decisions based on many subjective, individualized assessments. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008). In such circumstances, there is no equal protection violation because "treating like individuals differently is an accepted consequence of the discretion granted," and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id.*

Respondents have broad discretion in deciding whether to issue a conditional use or occupancy permit, and they are certainly within their discretion to decline to issue either upon the finding that such issuance would be detrimental to public health, safety, morals, or general welfare, as was the case here. *See* Sections 25.01.010, 26.80.010, and 26.84.050 of the Revised Code of the City of St. Louis. Further, while Petitioners allege that other similarly situated "commercial businesses and convenience stores and gas stations" have not been denied an occupancy permit, they do not allege with any specificity how those other business compare to their business or circumstances. ECF 1-2 ¶53. As a result, Count IV of the petition should be dismissed.

## RESPONDENTS DID NOT TAKE PETITIONERS' PROPERTY

Finally, in Count V of their Petition, Petitioners allege the decision to deny them an occupancy permit was an "unconstitutional taking, a regulatory taking and an inverse condemnation." ECF 1-2 at ¶69. Petitioners, however, have plead sufficient facts to support any of these claims.

The Fifth Amendment of the United States Constitution states that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. In order to establish a claim under the Fifth Amendment, Petitioners must first identify a property interest protected by the Fifth Amendment. *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 439 (8th Cir. 2007). In their Petition, Petitioners repeatedly allege they have a "vested property right" to continue to occupy the Property. Petitioners, however, have failed to advance any facts which show the existence of any such right.

A regulatory taking occurs when a regulation enacted under the police power of the government goes too far." *Clay County ex rel. County Comm'n of Clay County v. Harley and*

*Susie Bogue, Inc*., 988 S.W.2d 102, 106 (Mo. App. W.D. 1999). The United States Supreme Court has found that a property owner is entitled to compensation for a per se regulatory taking in two scenarios. *Id.* "These two situations are (1) when a regulation causes an actual physical invasion of property; and (2) when a regulation denies 'all economically beneficial or productive use of land.'" *Id.* at 107 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893, 120 L. Ed. 2d 798 (1992)). In this case, Petitioners have not, and cannot adduce any facts that support such a scenario.

If the government's action does not fall into these two categories, a factual inquiry into the specific facts of the case is necessary. *Id.* Both Missouri Court and Federal Court use the same factors when determining whether a taking has occurred. *Id.* Those factors are "'(1) the economic impact of the regulation; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action.'" *Id.* (quoting *Schnuck Markets, Inc. v. City of Bridgeton*, 895 S.W.2d 163, 168 (Mo. App. E.D. 1995)). Missouri courts have "also adopted the United States Supreme Court's standard that a compensable taking occurs when the regulation does not 'substantially advance a legitimate state interest.'" *Id.* (quoting *Harris v. Missouri Dept. of Conservation*, 755 S.W.2d 726, 730 (Mo. App. W.D. 1988)).

In this case, Petitioners have neither identified a regulation they believe has caused their property to be taken nor alleged the existence of an unconstitutional regulation. Nor have Petitioners asserted any facts which show that Respondents decision to deny them an occupancy permit was anything other than a valid use of the City's police power or that there has been any significant economic impact on their property. Accordingly, their claim must fail.

## IV. CONCLUSION

For the reasons set forth above, Petitioners have failed to state a claim against Respondents. Consequently, Petitioners' claims against the City of St. Louis and the Board of Adjustment for the City of St. Louis should be dismissed pursuant to Rule 12(b)(6).

Respectfully Submitted,

JULIAN L. BUSH,
CITY COUNSELOR

By: /s/ Megan Bruyns
Megan G. Bruyns #69987(MO)
Assistant City Counselor
Travis F. Warren #71304(MO)
City Hall, Room 314
1200 Market Street
St. Louis, MO 63103
PHONE: 314-622-3361
FAX: 314-622-4956
Bruynsm@stlouis-mo.gov