IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| MAZEN OWYDAT, YOUSSEF MEQUEH, and SALEH ALKHAFAJI, as partners, d/b/a West Florissant BP, f/k/a West Florissant Amoco,<br><br>    Petitioners/ Plaintiffs,<br><br>vs.<br><br>THE CITY OF ST. LOUIS, MISSOURI, et al.,<br><br>    Respondents/Defendants. | Cause No. 4:20-cv-00388-NAB |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

COME NOW Petitioners/Plaintiffs Mazen Owydat, Youssef Mequeh, and Saleh Alkhafaji, as partners doing business as West Florissant BP, by and through its undersigned counsel, and for its Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts I, III, IV and V of Plaintiff's Verified Petition for Writ of Certiorari and Petition for Judicial Review and Declaratory Judgment, states as follows:

**INTRODUCTION**

This Court should deny the motion as to all counts because Plaintiff has stated causes of action in each of Counts I, III, IV and V. Defendants profoundly misunderstand the nature of this action and the facts as alleged. The central thrust of Plaintiff's Petition is that the City of St. Louis has unlawfully adopted and applied its ordinances in such a way as to deprive Plaintiff from its vested right to continue to use its property as a gasoline station and convenience store, a use that was legally acquired by the issuance of a Conditional Use Permit that is still valid and in

1

place and through an Occupancy Permit that was and still is valid and in place since no change of occupancy ever occurred. These facts have been pleaded and support the causes of action in this case.

The City of St. Louis (the "City), however, for ulterior motives and purposes that will come to light through discovery, has manipulated its ordinances in such a fashion as to attempt to revoke a valid Conditional Use Permit issued pursuant to the City's Zoning Code by manufacturing a "change of occupancy" that supposedly occurred eight years ago. The occupancy permitting procedures of the City arise though its Existing Buildings Code (Chapter 25.20 of the St. Louis Municipal Code) and coercing Plaintiff to seek a new occupancy permit that is neither required by the City's Code or required of any other occupant, let alone another gasoline station with a convenience store that was granted a valid occupancy permit and for which there has been no change in occupancy.

As pleaded in Paragraphs 1, 2 and 3 of the Petition,[1] Plaintiff is a partnership entity that obtained a valid Conditional Use Permit from the City in 1998 that has never been revoked (see the factual allegations in Paragraph 27) and pursuant to which the partnership put the property to actual use as a gasoline station and convenience store continuously from 1998 to the present without any modification of the use or the building and without any change in occupancy.

Missouri law is clear that where such circumstances exist, a Conditional Use Permit ("CUP") creates a vested right in the holder of the CUP to continue the use even if later zoning code changes modify the uses permitted in the district in which the property is located. The CUP in such a situation becomes a legal, non-conforming use that is grandfathered and cannot be taken from the owner without payment of just compensation. Missouri law also is clear that

---

[1] The Complaint in this case is referred to as a "Petition" because the original pleading was filed in state court and then removed to this Court by Defendants under federal question jurisdiction.

once granted, a CUP can be transferred to a different owner so long as the new owner continues to use the property in a way that is consistent with all conditions of the CUP. This Court, however, does not need to concern itself with a transfer of ownership of the CUP since the West Florissant BP partnership has at all times been the owner and occupant of the property to which the CUP and original occupancy permits were issued. *See* the factual allegations in Paragraph 3 of the Petition.

## LEGAL ARGUMENT

**I. Chapter 89.110 is Neither Exclusive Nor the Appropriate Remedy in this Case**

The central argument in Defendants' Motion to Dismiss is that writ of certiorari review is the exclusive cause of action and remedy available to Plaintiff in this case. That argument fails both on the law and on the facts before the Court.

In *Duffner v. City of St. Peters*, 482 S.W.3d 811 (Mo.App. E.D. 2016), the Missouri Appellate Court determined that Chapter 89.110 is not "jurisdictional" but rather presents the Plaintiff with an election of remedies, so that a Plaintiff may plead claims under the Court's "plenary jurisdiction" in addition to the "special jurisdiction" granted by Chapter 89.110 review for matters related to zoning determinations.[2]

---

[2] Footnote 3 of *Duffer* explains: "While *Normandy* and *St. John's* both discuss the trial court's statutory authority in jurisdictional terms, these cases were decided prior to the Missouri Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009). We therefore alter the discussion of these cases to more accurately classify a circuit court's authority under Section 89.110 as limited in terms of remedy, but not jurisdiction. *See id.* at 255 ("[w]hen a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant"). We also question the holding in both *Normandy* and *St. John's* that a circuit court may exercise only its general plenary jurisdiction or its statutory "jurisdiction" under Section 89.110, in light of *Webb*'s clear statement that questions regarding whether an issue is properly before the court under statutes prescribing a certain procedure are not jurisdictional but "really go to the court's authority to render a particular judgment in a particular case." 275 S.W.3d at 254. Under *Webb,* therefore, it would be improper to refrain from judgment on the basis of a perceived limitation on jurisdiction due to a statute; however, *Webb* did acknowledge statutory limitations on a court's ability to give remedies in particular circumstances. *Id.* Thus, whether a circuit court has authority to decide both a declaratory count and a request for a writ of certiorari under Section 89.110 on the merits in the same proceeding must be determined in light of *Webb*."

*Duffner* further held that:

> "the validity of an ordinance is a challenge of an exercise of a legislative function, and certiorari does not lie to review the exercise of legislative power." *State ex rel. Drury Displays, Inc. v. City of Columbia*, 907 S.W.2d 252, 255 (Mo.App.W.D.1995) (*citing Allen v. Coffel,* 488 S.W.2d 671, 673 (Mo.App.1972)); *see also St. John's*, 122 S.W.3d at 640 (*quoting Normandy*, 70 S.W.3d at 492) (statutory review by writ of certiorari is unavailable for challenges to validity of ordinance). Thus, Section 89.110 does not provide a remedy for constitutional challenges to the validity of ordinances. Likewise, "[w]here a party challenges the lawfulness of an ordinance, the trial court's jurisdiction is not limited to review under [S]ection 89.110." *St. John's*, 122 S.W.3d at 640.

Here, Plaintiff is challenging the validity and lawfulness of the City's ordinances in that those ordinances on their face and as applied to Plaintiff are being used to deprive Plaintiff of a vested property right without due process of law and without paying just compensation. Plaintiff here challenges the City's ordinance that allows a staff member and the Board of Public Service from summarily revoking an occupancy permit validly issued by a mere proclamation without any notice of its revocation and without the use of contested-case hearing procedures required under Missouri law to revoke a valid permit. *See* Paragraphs 28-30 and 46-51 and 54-63 and 65-69 of the Petition. The fact that the City uses the Board of Adjustment as a Board of Building Appeals does not convert the revocation of an occupancy permit to a Zoning matter. And the procedures required to adopt zoning regulations under Mo.Rev.Stat. Section 89.020 et seq. were not used by the City to adopt its Existing Building Code, from which the requirement of an occupancy permit emanates. *See, State ex rel. Casey's General Stores, Inc. v. City of Louisiana*, 734 S.W.2d 890 (Mo.App. E.D. 1987) (where notice under 89.050 not properly given, zoning enactment was void).

In *Duffner*, the Court also held Chapter 89 does not provide a remedy for a takings claim and therefore cannot be used to exclude a claim for a governmental taking:

> "Count III is a takings claim, asserted under Article I, section 26 of the Missouri Constitution. Appellants argued that the turf grass requirement **affects their ability to**

> **use and enjoy their property such that it amounts to a governmental taking of private property without just compensation, which falls under the category of a regulatory taking.** *See Clay County ex rel. County Comm'n of Clay County v. Harley & Susie Bogue, Inc.,* 988 S.W.2d 102, 106 (Mo.App.W.D.1999). Though this claim is not an attack on the facial validity of the Ordinance, but rather **a claim arising from an unconstitutional application of the Ordinance to Appellants,**[4] **it similarly is not encompassed by \*819 the statutory procedure for contesting a decision of the Board.** Section 89.110 (providing procedure for "any person ... *aggrieved by any decision of the board of adjustment*" (emphasis added)). Appellants do not claim that the Board's action in granting a partial variance constituted an unconstitutional taking, but rather the application of the Ordinance itself does. Appellants have **requested either injunctive relief or just compensation**, both of which are available to the court if it finds a regulatory taking has occurred. *See Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1071 n.6, 112 S.Ct. 2886, 120 L.Ed.2d 798 (Stevens, J., dissenting) (noting courts "may invalidate the excessive regulation or they may allow the regulation to stand and order the government to afford compensation" (internal quotations and alterations omitted)). **Neither of these is available under Section 89.110,** which provides only that the circuit court "may reverse or affirm, wholly or partly, or may modify the [Board's] decision." **Because Section 89.110 does not encompass Appellants' takings claim, Appellants were not required to proceed exclusively under Section 89.110 for this claim.**

482 S.W.3d at 818-19 (emphasis added). In this case, Plaintiff has also alleged that the application of the City's ordinances is depriving Plaintiff from using its property pursuant to a use lawfully granted and long put to use pursuant to Plaintiff's investment backed expectations. Plaintiff also pleaded for injunctive relief and just compensation. *See* Petition Paragraphs 28-30 and 46-51 and 54-63 and 65-69. The taking alleged by Plaintiff in this case, taking its entire right to operate its lawful business, is far more economically damaging than the taking alleged in *Duffner*, which the appellate Court held stated a claim.

For these reasons, the Court should deny Defendants' Motion to Dismiss since Chapter 89.110 review is not exclusive even in zoning cases. This case does not arise under the zoning power, but the general police power used to enact building codes (as Defendants admit in their Memorandum of Law at Page 7, second paragraph). Plaintiff has stated claims in Counts I, III, IV and V that may be pursued in the alternative to the Chapter 89.110 writ of certiorari.

5

**II.    A.    Plaintiff Pleaded Sufficient Facts to Establish Its Vested Property Right**

Plaintiff pleaded that it has a validly issued CUP (*see* Paragraph 27 of the Petition), and that Plaintiff had continuously occupied and used its property pursuant to the CUP that was issued in 1998 (*see* Paragraph 3 of the Petition), and in the same way that it had operated the business since 1998, as evidenced by the repeated Business Licenses that the City has granted to Plaintiff every year since 1998, up and including 2019 (*see* Paragraph 2 of the Petition). These pleaded facts, read in a light most favorable to Plaintiff, are sufficient to establish a vested property right in Plaintiff that is enforceable through 42 U.S.C. Section 1983. *See, e.g., Gray v. White,* 26 S.W.3d 806 (Mo. Ct. App. E.D. 1999), retransferred to Mo. Ct. of Appeals, (Oct. 3, 2000) and opinion adopted and reinstated after retransfer, (Oct. 12, 2000) ("A CUP holder who acts in good faith reliance upon a CUP that has been granted to him, by making a substantial investment in erecting a building on the property, acquires a vested right in the continued permitted use of that property in a manner that complies with the conditions of the CUP"). Additionally, *Gray* held that a CUP remains in effect so long as its provisions are not violated, and the burden is on the City to so show.

Plaintiff's CUP compliance in this case is not at issue. As pleaded, Plaintiff has been continuously compliant with the use granted in 1998, and the City has recognized that by continually renewing its business licenses and collecting Plaintiff's business license taxes. Plaintiff also pleaded that it relied on these permits in its investment backed expectations and specifically pleaded that it purchased the Property for the express purpose of operating a gasoline station and convenience store just as the Property has been used since at least 1964 (*see* Paragraph 66 of the Petition). These pleaded facts establish a vested property right under Missouri law. Therefore, the Defendants' motion to dismiss should be denied.

### B. The City is Estopped from Denying Plaintiff's Vested Rights

The City's policy at the time of the intercorporate transfer by the Plaintiff partnership from one partner to another was that such a transaction did not constitute a "change of occupancy." Consequently, even if an intercorporate transfer could be treated as a change of occupancy (which Plaintiff denies since the "occupant" has never changed and has continuously been the WFBP partnership), the new policy cannot be applied eight years later to an established vested right, and the City is estopped from relying on such a change in policy.

The issuance of a permit combined with either substantial construction or substantial expenditures or the incurrence of substantial liabilities creates a vested right, and where a governmental body willfully interferes with that right, equitable estoppel can be invoked to prevent a manifest injustice. *See Murrell v. Wolff*, 408 S.W.2d 842, 851-52 (Mo. 1966) (City was estopped from enforcing a subsequently adopted ordinance prohibiting construction of multiple dwellings against a developer who paid a substantial sum towards completion of said subdivision and began construction). *State ex rel. Great Lakes Pipe Line Co. v. Hendrickson*, 393 S.W.2d 481, 484 (Mo. 1965) (Finding a legal, nonconforming use based on landowner's acquisition of site, completion of a portion of the structure, and expenditure of over $64,000 prior to the adoption of the zoning ordinance); *Sahl v. Town of York,* 760 A.2d 266, 270 (Me. 2000) (Property owners' right to complete construction of project had vested where the owners had valid permit, incurred substantial expenses, construction was undertaken in good faith, and owners relied upon the ordinances in existence at the time the permit was issued). Estoppel against a municipality may be rightly and successfully pleaded under circumstances where reliance upon an honestly obtained permit, coupled with substantial work or expenditures or irrevocable commitments. *Metzenbaum on Zoning*, Vol. 1, pp. 172-73.

The case before this Court has exceptional circumstances and the elements of estoppel against the City are met. Specifically, valid conditional use and occupancy permits were granted to WFBP partnership to operate its gasoline station and convenience store in 1998 just as that use had been in existence on that property since 1964. After the "intercorporate transfer" in 2012 for estate planning purposes, the City did not require a new occupancy permit, and continued to approve annual business licenses every year thereafter, collecting taxes from Plaintiff all the while. Plaintiff's occupancy is at least a legal, non-conforming use, and at best a vested property right that this Court should recognize and estop the City from claiming otherwise.

**III. Count I States a Cognizable Claim Under Missouri Law Because Plaintiff's Occupancy Permit was Revoked in a Non-Contested Case Manner, Entitling Plaintiff to a Trial De Novo Under Current Missouri Law Interpreting Chapter 536.150.**

Plaintiff pleaded that it has a valid occupancy permit that was issued in 1998 to the WFBP partnership and that has never been revoked. Plaintiff also pleaded that there was an "intercorporate transfer" of the deed to the Property in 2012 and that the City recognized the deed transfer as "intercorporate." No new occupancy permit was required in 2012 or any year up to 2019. (See Paragraphs 1 and 2 of the Petition). The original occupancy permit is valid and does not expire until there is a change in occupancy. Since the WFBP partnership has continually occupied the and operated the business at the property since 1998, there is no requirement anywhere in the City's ordinances that requires a new occupancy permit. The entire process initiated by and carried out by the City, therefore, is ultra vires and unconstitutional. Also, the occupancy permitting requirement is found in the City's building and property maintenance codes. There is no mention in the City's Zoning Code of an occupancy permit. The City, like many municipalities, has chosen to use its Board of

Adjustment as a Board of Building appeals to hear appeals related to occupancy permit issues. There is, however, no provision in the City's ordinances related to an application for an occupancy permit, or revocation of an occupancy permit, that requires compliance with the formalities set forth in Chapter 536.010 through 536.090. The provisions in Chapter 89 do not salvage the City's position since Chapter 89 is applicable only to appeals related to zoning matters.[3]

Where a municipality chooses to use its Board of Adjustment as a board of appeals for matters arising under the building or property maintenance codes, the appropriate procedure for review of the grant, denial or revocation of an occupancy permit is Chapter 536, the Missouri Administrative Procedure Act ("MAPA"). The threshold question under Chapter 536 is whether there was a contested or non-contested case proceeding. The Missouri Court of Appeals recently answered that question:

> "***[N]ot every case requiring a hearing is a contested case***. It is not dispositive that the agency held some type of hearing because not all hearings are sufficient to comply with MAPA's requirements and thereby create a contested case. . . ***[t]he relevant inquiry is not whether the party received a hearing, but whether a statute, ordinance, or constitutional provision required the agency to provide one.***"

*450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur, Mo.*, 477 S.W.3d 49 (Mo. App. E.D. 2015) (citations omitted) (emphasis added). The governing Code section in this case does not provide for the formal procedural requirements required to qualify the occupancy application/revocation hearing as a contested case. The relevant section of the St. Louis Code is Chapter 25.20, Subsection 112. There are no provisions addressing the required Chapter 536 procedures for a contested case. Pursuant to *450 N. Lindbergh Legal Fund,* the hearing by the Board of Public Safety and the appeal of that decision to the Board of Adjustment

---

[3] The Zoning Ordinance at Chapter 26.84.010 (see Exhibit A attached hereto) defines the powers of the Board of Adjustment and they are all related to zoning matters, not occupancy permits required under Chapter 25.20, Sections 105.1 and 110 (see Exhibit B attached hereto).

sitting as a board of building appeals were non-contested case hearings. "[I]n the review of a non-contested decision, the circuit court does not review the administrative record, but ***hears evidence, determines facts, and adjudges the validity of the agency decision***. Under the procedures of section 536.150, the circuit court conducts such a hearing ***as an original action***." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009) (emphasis added) (citations omitted). With regard to a review of the decisions by the Board of Public Safety and the resulting appeal to the Board of Adjustment, this Court must conduct a "de novo review" and "determine the evidence and give judgment from that evidence." *Id.* at 508.

Chapter 536.150 of the Revised Statutes of Missouri allows that an administrative decision "may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action. . ." Consequently, Count I state a cause of action and Defendants' motion to dismiss should be denied.

**IV.    Each of Counts III, IV and V Alleges Sufficient Facts to State a Cause of Action.**

    **A.  Due Process Protects Property Rights from Government Action that Advances No Legitimate State Interest**

As stated above, the Petition clearly pleads facts establishing Plaintiff's vested property right in continuing to use its property pursuant to its lawfully issued CUP and occupancy permit. The City has no legitimate state interest in attempting to arbitrarily add new conditions to Plaintiff's valid CUP through the mechanism of requiring a new occupancy permit on the false premise that there was a change of occupancy. As pleaded, however, the Court must assume that there was no change of occupancy as pleaded in the Petition because the occupant has always been the WFBP partnership. *See* Paragraphs 1-4 of the Petition. Where government action advances no legitimate state interest, the action is usually seen as a due process or equal

protection violation, rendering the action invalid and unenforceable as applied to Plaintiff's property. *See, e.g., Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528 (2005); *Labrayere v. Bohr Farms, LLC,* 458 S.W.3d 319, 329 (Mo. banc 2015) ("Property is defined as including not only ownership and possession but also the right of use and enjoyment for lawful purposes. . . Consequently, "[a]n arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands is a taking of private property **without due process of law**, which is inhibited by the Constitution") (emphasis added). To state a cause of action under 42 U.S.C. Section 1983, Plaintiff must allege only two elements: "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980). Plaintiff so alleged in its Petition.

Plaintiff's allegations establish a cause of action pursuant to these cases and Defendants' motion to dismiss Count III should be denied.

### B. Plaintiff has Stated a Cause of Action for Equal Protection

Much of the analysis in Subsection A above is applicable here and incorporated by this reference. Here, the City's occupancy permitting ordinance has been applied to Plaintiff so as to deprive Plaintiff of the partnership's right to use and enjoy its Property under a valid CUP, and Plaintiff alleged that it has been singled for disparate treatment under the City's ordinances because of the "ethnicity and religion" of the partners. See Paragraph 54 of the Petition. This allegation specifically places at issue whether a classification of certain persons under the law "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *Marriage of Kohring,* 999 S.W.2d 228, 231–32 (Mo. banc 1999). Race, national origin, and religion have been recognized as suspect

11

classes. *State v. Young*, 362 S.W.3d 386, 397 (Mo. Banc 2012); Sherbrooke Turf, Inc. v. Minnesota Dept. of Transp., 345 F.3d 964, 969 (8th Cir 2003). Plaintiff's allegation invokes both national origin (a suspect class) and religion (a fundamental right) as bases for the discriminatory actions of the City. Therefore, strict scrutiny applies, and this Court must determine whether the classification is necessary to accomplish a compelling state interest. *Id.* The City has no compelling state interest to deny occupancy permits to Muslims from the Middle East as opposed to other business operators whose permits are left in place under the same or substantially similar circumstances. *See* Paragraphs 54-59 of the Petition. Plaintiff's pleading is sufficient to state an equal protection violation pursuant to 42 U.S.C. Section 1983. Defendants' motion to dismiss Count IV should be denied.

**C.    Plaintiff States a Cause of Action for an Unconstitutional Taking and Inverse Condemnation.**

Both federal and state law recognize that governmental actions that concerning land uses that fall short of eliminating all economically beneficial use can still result in a taking where factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action show a deprivation of constitutional rights. *See, e.g. Penn Cent. Transp. Co v. City of New York*, 438 U.S. 104, 124 (1978). These inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960). Here, the City is attempting to make Plaintiff bear the burden for the public due to a generalized problem of crime in the neighborhood for which the City cannot show that Plaintiff is responsible or even a contributing cause. This is a classic case where the *Penn Central* factors will show that a taking has occurred

without just compensation. Moreover, Missouri law recognizes a claim for inverse condemnation as pleaded in Count V of Plaintiff's Petition where the City's regulatory action interferes with Plaintiff's use and enjoyment of its property where the *Penn Central* factors are met. *LaBrayere*, *supra*, at 329.

Plaintiff has properly pleaded the elements of an unconstitutional taking and a claim for inverse condemnation. Defendants' motion to dismiss Count V, therefore, should be denied.

**WHEREFORE**, Plaintiff requests the Court to deny each of Defendants' motions to dismiss counts in Plaintiff's Petition; and, in the alternative, should the Court find that insufficient facts or legal elements have been pleaded to sustain any given count, for leave to file an Amended Complaint, and for such other and further relief as the Court deems just.

Respectfully Submitted,

CURTIS, HEINZ, GARRETT & O'KEEFE, P.C.

*/s/ Helmut Starr*
HELMUT STARR #32899MO
NANCY MOGAB #32478MO
130 South Bemiston Avenue, Suite 200
St. Louis, Missouri 63105
(314) 725-8788
(314) 725-8789 Facsimile
hstarr@chgolaw.com
nmogab@chgolaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 14, 2020, the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss was filed with the Clerk of Court electronically to be served by operation of the Court's electronic filing system upon all attorneys of record.


                                      */s/Helmut Starr*
                                        Helmut Starr