UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Mazen Owydat, et al.<br><br>PLAINTIFFS,<br><br>v.<br><br>City of St. Louis & Board of Adjustment of the City of St. Louis,<br><br>DEFENDANTS. | Civil Action No. 4:20-cv-00388 NAB |

Defendants' Memorandum in Opposition to
Plaintiffs' Motion for Temporary Restraining Order

**I.    Facts**

In their Complaint, Plaintiffs state five separate causes of action against the City of St. Louis and the Board of Adjustment of the City of St. Louis ("the Board"). Counts I and II concern judicial review of the decision by the Board of Adjustment ("Board") to uphold the Board of Public Service's decision to deny Plaintiffs a conditional use permit to operate a convenience store and gas station at 4126 W. Florissant Avenue, St. Louis, Missouri ("the Property"). The remaining counts arise under 42 U.S.C. §§ 1983 and 1988.

On June 6, 2019, the Board of Public Service ("BPS") held a hearing regarding Plaintiffs' conditional use application. At the hearing, Mr. Saleh Al-Khafaji testified that he was one of three owners, and one owner got cancer. He stated that his name was not on the occupancy permit, so they had to apply for a new occupancy permit. On June 18, 2019, BPS voted to deny Plaintiffs' conditional use application because it determined that granting the conditional use permit would be "detrimental to the public health, safety, morals, or general welfare." Section 26.80.010(E) of the Revised Code of the City of St. Louis states that BPS shall not approve a conditional use unless the board finds that "the

1

use will not be detrimental to the public health, safety, morals or general welfare."

On July 12, 2019, Plaintiffs appealed the BPS decision to the Board.

On October 9, 2019, the Board held its first of two hearings on Plaintiffs' appeal. On January 15, 2020, the Board held the second hearing. At each hearing, the Board heard testimony from residents and neighbors describing criminal activity at the Property. The Board also received evidence of the calls for Police service to Property, and a list of over 100 signatures from people in opposition to Plaintiffs' appeal.

On January 28, 2020, the Board of Adjustment issued its Decision, with Findings of Fact, to uphold the BPS decision. *See generally* Doc. 1-2, pp. 19-27. The Board specifically found that the "proposed use does not conform to the standards required for conditional use approval as set forth in Section 26.80.010(E)" of the Revised Code of the City of St. Louis, and that "the use would be detrimental to public health, safety, morals or general welfare." *Id*. at p. 26.

On February 4 and again on February 5, 2020, City sent Plaintiffs a letter informing them that they "may not conduct any business" at the Property because they did not have an occupancy permit. Doc. 3, Complaint, ¶ 10; Doc. 1-2, pp. 17-18.

On February 9, 2020, Plaintiffs filed their Petition in state court. On February 26, 2020, the Missouri Circuit Court entered an order temporarily restraining City from closing Plaintiffs' business until the Court held a hearing under § 89.110 RSMo., scheduled for April 2, 2020. Doc. 1-2, pp. 28-29. By its own terms, the restraining order expired on April 3, 2020. *Id*. Plaintiffs continued to operate their business at the Property.

On March 11, 2020, City removed this matter to this Court based on federal question jurisdiction. Doc. 1. On or about June 5, 2020, the parties fully briefed and submitted to the Court a motion to dismiss all counts of Plaintiffs' Complaint except the , which remains pending. Doc. 10, 11, 17, 18, 25.

On January 15, 2021, City closed Plaintiffs' business, posting a condemnation notice and a letter informing Plaintiffs that the Property was "condemned for occupancy." Doc. 41-6. The letter, dated February 5, 2020, was a re-print of a previously-created letter but like other letters sent to Plaintiffs—Doc.1-2, pp. 17-18—it provided notice that the reason

2

for the condemnation related to the lack of an occupancy permit.

At no time between April 3, 2020—the expiration of the temporary restraining order entered by the state court—and January 15, 2021, did Plaintiffs file any request to this Court seeking an extension of the temporary restraining order, nor did Plaintiffs ever make such a request to the undersigned counsel for an extension, nor did Plaintiffs ever obtain an occupancy permit for the Property.

Plaintiffs now move for a temporary restraining order based on the January 15 closure of their business.

## II. Legal Standards

### A. Temporary Restraining Order Standard

A temporary restraining order is an extraordinary remedy whose applicability rests completely with the moving party. *Williams Pipe Line Co. v. City of Mounds View, Minn.*, 651 F. Supp. 544, 548 (D. Minn. 1986); *see also Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (listing factors to consider). Preliminary relief is intended to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

Whether the court should enter preliminary injunctive relief requires courts to analyze and balance a four-part test laid out in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981): (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on [the nonmovant]; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id*. at 113. The party seeking injunctive relief bears the burden of proving all of the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### B. Administrative Review under § 89.110 RSMo.

Under Missouri law, it is well-settled that judicial review of zoning and planning decisions by a municipal board of adjustment is governed by § 89.110, not Chapter 536. *Deffenbaugh Industries, Inc. v. Potts*, 802 S.W.2d 520 (Mo. App. W.D. 1990); *State ex rel.*

*Presbyterian Church of Washington, Missouri v. City of Washington, Missouri*, 911 S.W.2d 697, 701 (Mo. App. E.D. 1995). The proper redress for a person aggrieved by a zoning and planning decision is by petition for writ of certiorari under § 89.110. *Platte Woods United Methodist Church v. City of Platte Woods*, 935 S.W.2d 735, 737 (Mo. App. W.D. 1996). Section 89.110 also provides that "[a]ll issues in any proceedings under … 89.110 shall have preference over all other civil actions and proceedings."

### III. Argument

The Court should deny Plaintiffs' motion for a temporary restraining order because they have not carried their burden to meet the *Dataphase* test. Plaintiffs are not likely to succeed on the merits, Plaintiffs do not demonstrate harm that is either immediate or irreparable, and the public interest would benefit most if the Court denies injunctive relief.

Further, Plaintiffs pleaded a claim for judicial review under § 89.110 in their Complaint. Doc. 3, ¶¶ 35-44. Yet, Plaintiffs have not abided the statute in that they have not filed transcripts from the underlying hearing (they did file the Board's Decision) or briefed the issue of how the Board's decision was not supported by substantial and competent evidence. By the plain language of the statute, the issues under § 89.110 *shall* have preference over the other claims in Plaintiffs' Complaint. To give that phrase of the statute meaning, Defendants aver that the Court *must* resolve the § 89.110 issues raised by Plaintiffs *before* handling the other claims in Plaintiffs' Complaint, including this injunctive relief request.

### A. Plaintiffs have not carried their burden of proving that they are likely to succeed on the merits of their claims.

The Court should find that Plaintiffs are not likely to succeed on the merits, and thus deny the motion.

Judicial review under § 89.110 is limited to determining whether the challenged decision is authorized by the law and whether it is supported by competent and substantial evidence. *State ex rel. Columbus Park Community Council v. Board of Zoning Adjustment of Kansas City*, 864 S.W.2d 437 (Mo. App. W.D. 1993). In order to determine

whether the decision is based upon substantial and competent evidence, the Court reviews the applicable laws governing the procedures for granting a permit to determine what evidence is required to justify the decision and whether such evidence was presented. *See e.g. Nigh v. City of Savannah, Mo.*, 956 S.W.2d 451, 454 (Mo. App. W.D. 1997). The reviewing court looks at the evidence in the light most favorable to the administrative agency's decision and may not substitute its judgment for that of the agency. *State ex rel. Presbyterian Church v. City of Wash.*, 911 S.W.2d 697, 701 (Mo. App. 1995). As such, the standard of review clearly favors the City and the Board here. Plaintiffs have not put forth substantial evidence to overcome that, nor have they shown they are likely to succeed on the merits. Thus, the Court should deny the motion.

    **B. Plaintiffs Do Not Establish Immediate and Irreparable Harm.**

        **i. Alleged Harms Are Reparable.**

"The threshold inquiry is whether the movant has shown the threat of irreparable injury." *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) (en banc). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Id.* "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Possible or speculative harm is not sufficient. *Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995). When there is an adequate remedy at law, a preliminary injunction is not appropriate. *Modern Computer Sys.*, 871 F.2d at 738.

Here, the only harm Plaintiffs allege relate to monetary damages. Doc. 41, ¶ 20. These are not the kind of harms which cannot be remedied at law. Further, Plaintiff's underlying Complaint already makes clear—and indeed asserts—that there are remedies at law available to them; to wit: judicial review of the administrative agency decision under § 89.110 RSMo., and the damage claims they raise in Counts III, IV, and V of the Complaint. The Court should find that Plaintiffs have not met their burden to show irreparable harm and should deny the motion for a TRO.

### ii.     Alleged Harms Are Not Immediate – Plaintiffs delayed.

Irreparable harm must be certain and imminent such that there is a clear and present need for equitable relief. *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). "An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action." *Bloodgood v. Garraghty*, 783 F.2d 470, 475 (4th Cir. 1986). A plaintiff's delay in seeking a preliminary injunction negates any "showing of irreparable harm because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief." *In re AutoHop Litig.*, No. 12 CIV. 4155, 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013) (quoting *KF ex rel. CF v. Monroe Woodbury Cent. School Dist.*, No. 12 Civ. 2200, 2012 WL 1521060, at *5 (S.D.N.Y. Apr. 30, 2012)); *see also Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) (holding that "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief").

Plaintiffs assert that they will be immediately and irreparably harmed if injunctive relief is not granted. However, Plaintiffs were informed they did not have a valid occupancy permit and that they could not operate their business at the Property *more than 11 months before* filing this motion for injunctive relief. Plaintiffs did receive a temporary restraining order from the state court in late February 2020, but Plaintiffs have done nothing to extend that restraining order since it expired on April 3, 2020, more than 9 months ago. The undersigned counsel had no conversations with Plaintiffs' counsel regarding an extension of that order. The Court should find that Plaintiffs delay and lack of diligence precludes the granting of a temporary restraining order under these facts.

### C. The Public Interest Would Be Best Served by Denying Injunctive Relief.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982). "An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *Romero–Barcelo*, 456 U.S., at 313 ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law"). Among the factors that courts can consider is the

effect that issuance of an injunction might have on public safety. *NAACP v. Town of East Haven*, 70 F.3d 219, 223–24 (2d Cir.1995); *see also Stevenson v. State & Local Police Agencies*, 42 F. Supp. 2d 229, 233 (W.D.N.Y. 1999) ("The hardships that an injunction would impose on defendants, however, which is largely coextensive with the possible harm faced by the public as a whole, is substantial. Obviously the state has a strong interest in ensuring the safety and well-being of its citizens.").

Here, as noted above, the Board concluded that the Property's use was "detrimental to public health, safety, morals or general welfare." To this day, the Property continues to generate significant Police attention for criminal activity. From April 3, 2020, to January 15, 2021, City's Police received 81 calls for service to the Property address, 4126 W. Florissant. On average, that equals one call for service every 3.6 days to the Property. No less than two of those 81 calls involved gunshots fired. Approximately 39 of them were coded as a "disturbance." These statistics plainly show that, even after losing their occupancy permit following two evidentiary hearings in which voluminous evidence was presented concerning the Property's danger to public health and safety, Plaintiffs continued to operate a business that required the Police to respond twice per week on average to deal with problems. The Court should find that the possible harm faced by the public as a whole if Plaintiffs are allowed to continue operating their business is substantial, and that issuing an injunction here may impact public safety. Thus, the Court should deny the motion.

IV.     **Conclusion**

The Court should deny Plaintiffs' motion for a temporary restraining order because Plaintiffs have not sufficiently established that they are so entitled under *Dataphase*. Further, the Court should order Plaintiffs to submit to the Court all necessary documents and briefs to resolve the judicial review issues raised under § 89.110 RSMo., and grant any other relief the Court deems just under the circumstances.

Respectfully submitted,
Michael Garvin,
CITY COUNSELOR

/s/ J. Brent Dulle #59705(MO)
Associate City Counselor
Travis F. Warren, #71304(MO)
Assistant City Counselor
City of St. Louis Law Department
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-4644
DulleB@stlouis-mo.gov