IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| MAZEN OWYDAT, YOUSSEF MEQUEH, and SALEH ALKHAFAJI, as partners, d/b/a West Florissant BP, f/k/a West Florissant Amoco,  ) ) ) ) ) | |
| Petitioners/ Plaintiffs,  ) ) | Cause No. 4:20-cv-00388-NAB |
| vs.  ) ) | |
| THE CITY OF ST. LOUIS, MISSOURI, et al.,  ) ) | |
| Respondents/Defendants.  ) | |

**PLAINTIFF'S MEMORANDUM**
**REGARDING THE STANDARD OF REVIEW**

**Introduction**

This cause of action arises from the ultra vires and unconstitutional denial by various City of St. Louis staff members and boards, including the Board of Adjustment, that lacked jurisdiction over an Occupancy Permit application that was improperly required because Plaintiff West Florissant BP already had a valid Occupancy Permit. Plaintiff seeks only to continue to operate its gas station/convenience store that was granted a Conditional Use Permit and an Occupancy Permit in 1999 on the same terms and conditions as originally approved and vested by more than 20 years' use. West Florissant BP is a partnership to which the Occupancy Permit and Conditional Use Permit was granted in 1999 (*see* **Exhibit 1** attached hereto and incorporated by this reference) and which has continuously occupied and operated its permitted business at 4126 West Florissant since 1999.

This Court is now tasked with determining whether the City of St. Louis' procedures on their face and as applied to West Florissant BP are properly reviewed as a zoning matter subject to Board of Adjustment review under Mo.Rev.Stat. § 89.100 et seq. (as proposed by Defendants), or as a "contested" case under the Missouri Administrative Procedure Act,

1

Mo.Rev.Stat. § 536.100 et seq., or as a "non-contested" case under the Missouri Administrative Procedure Act, Mo.Rev.Stat. § 536.150 (as proffered by Plaintiff).

As discussed in detail below, because the entire administrative record below demonstrates that the administrative citations and proceedings concerned whether or not Plaintiff needed a new occupancy permit under the City's International Building Code ("IBC"), the proceedings did not concern Zoning issues and this case is, therefore, properly reviewed de novo by this Court under Chapter 536.150.

## II. Missouri Law

### A. Review under Chapter 89 is limited to review of Zoning Actions by a Board of Adjustment

Missouri law is clear that Chapter 89 review is limited to actions of a Zoning Board of Adjustment reviewing zoning matters.[1] The Zoning Ordinances of the City likewise limit the authority of its Board of Adjustment to zoning matters. Even a casual glance at the plain language of Section 26.84.050(A), attached hereto as Exhibit 2 and incorporated herein by this reference, belies the City's claim that Chapter 89 review could apply to this dispute:

> **26.84.050 - Jurisdiction.**
> The Board shall have the following powers:
>
> A. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an Administrative Official or Agency *in the enforcement of the zoning code*;

(Emphasis added). The plain and ordinary language of Section 89.110 is limited to "decisions of the board of adjustment." Mo. Rev. Stat. § 89.110; *see also Lorenz v. City of Florissant*, 747 S.W.2d 222, 224 (Mo. Ct. App. 1988); *Babb v. Mo. Pub. Serv. Comm'n,* 414 S.W.3d 64, 75 Mo. Ct. App. 2013) (following *Lorenz*). Here, the decision in question should have been reviewed by

---

[1] Chapter 89.090 limits the jurisdiction of a Board of Adjustment to zoning matters: " **89.090. Board of adjustment — powers, exception for Kansas City. —** 1. The board of adjustment shall have the following powers: (1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official **in the enforcement of sections 89.010 to 89.140** or of any ordinance adopted pursuant to such sections . . . (emphasis added).

the Board of Building Appeals under the IBC, not the Board of Adjustment (see discussion in Part IV below). Thus, as *Lorenz* and *Babb* direct, Section 89.110 cannot apply, and the City's argument fails.

The most recent (and binding[2]) decision from the Missouri Court of Appeals, *Babb v. Mo. Pub. Serv. Comm'n,* 414 S.W.3d 64 (Mo. Ct. App. 2013), clearly holds that Chapter 536, not Chapter 89, should govern this proceeding. The *Babb* court provided an in-depth analysis of both the text of Section 89.110 and the cases applying it. The *Babb* court found that prior cases lacked precedential value because they did not "resort to required rules of statutory interpretation or construction"— namely, an analysis of the plain meaning of the *text* of Section 89.110. *Id.* at 76. Rather than assuming without analysis which statute, Section 89.110 or Section 536.150, applied, the *Babb* court first construed the statute in accordance with its plain and ordinary meaning, as it was required to do under binding Missouri precedent. *Id.* at 74. In so doing, the Court recognized that the "plain and ordinary language of section 89.110 is limited to 'decisions of the **board of adjustment**' ", which was itself a term statutorily defined by section 89.080. *Id.* at 75 (emphasis added). In Babb, the decision was by a Board of Aldermen and was not reviewable under section 89.110 because it was not a decision of a board of adjustment. *Id.* at 68,

---

[2] The Missouri Supreme Court has held:
> There is some confusion among the bench and bar as to whether opinions issued by a district of the court of appeals are binding on circuit courts situated within geographical boundaries of a particular district of the court of appeals. Article V, section 1 of the Missouri Constitution provides that "[t]he judicial power of the state shall be vested in a supreme court, a court of appeals consisting of districts as prescribed by law, and circuit courts." **Article V, section 1 establishes one court of appeals for the entire state of Missouri.** Article V, section 13 of the Missouri Constitution provides, in pertinent part, that the court of appeals "shall be organized into separate districts, the number, not less than three, geographical boundaries, and territorial jurisdiction of which shall be prescribed by law." The southern, western and eastern districts of the court of appeals established pursuant to article V, section 13 are not separate courts but simply different districts of a unitary court of appeals. There is no provision in the Missouri Constitution requiring a circuit court to follow a decision from a particular district of the court of appeals. *Akins v. Dir. of Revenue*, 303 S.W.3d 563, 567 n.4 (Mo. banc 2010) (emphasis added). This Court is bound to follow the Western District Court of Appeals' precedent, per the Missouri Constitution and Missouri Supreme Court precedent. Id.; Mo. Const. Art. V, § 13.

3

74–77.

Here, the City's Board of Adjustment did not have jurisdiction to hear a citation issued under the City's International Building Code ("IBC") regarding an Occupancy Permit since the IBC arises under the City's police power and not its zoning power. The IBC itself provides that Chapter 536 review is appropriate. Thus, Section 89.110 cannot apply, and City's argument fails.

> B. <u>**Contested and Non-contested Case Review Under Chapter 536**</u>
>
> 1. <u>**Contested Case Review Requires the Procedural Safeguards Set Forth in Section 536.020 through 536.090, Inclusive.**</u>

A "'[c]ontested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing[.]" Mo. Rev. Stat. § 536.010. "Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009) (emphasis added). Non-contested cases, on the other hand, "do not require formal proceedings or hearings before the administrative body." *Id.* (citation omitted).

> According to the Missouri Supreme Court:
>
> The key to the classification of a case as contested or non-contested is the requirement of a hearing. *Cade* at 36. The term "***hearing***," as used in section 536.010(2) ***means a proceeding at which a "measure of procedural formality"*** is followed. *Hagely v. Board of Educ. of Webster Groves School Dist.,* 841 S.W.2d 663, 668 (Mo. banc 1992). Procedural formalities in contested cases generally include: notice of the issues (section 536.067); oral evidence taken upon oath or affirmation and the cross-examination of witnesses (section 536.070); the making of a record (section 536.070); adherence to evidentiary rules (section 536.070); and written decisions including findings of fact and conclusions of law (section 536.090). *Id.*

*Id.* at 507. As the Supreme Court noted in *Armstrong*, Mo. Rev. Stat. § 536.070 explicitly provides that "[i]n any contested case," among other things, "(1) Oral evidence shall be taken

4

*only on oath or affirmation*; (2) Each party shall have the right *to call and examine witnesses*, *to introduce exhibits*, *to cross-examine opposing witnesses* . . . , and *to rebut* the evidence against him or her; . . . (4) Each agency shall cause all proceedings in hearings before it to be *suitably recorded and preserved[,]*" and *rules of evidence* (albeit, less strict than those in a court proceeding) *shall be followed*. Mo. Rev. Stat. § 536.070 (emphasis added). "*[N]ot every case requiring a hearing is a contested case*. It is not dispositive that the agency held some type of hearing because not all hearings are sufficient to comply with MAPA's requirements and thereby create a contested case." *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur, Mo.*, 477 S.W.3d 49, 54 (Mo. Ct. App. E.D. 2015) (citations omitted) (emphasis added).

Of crucial significance here, *450 N. Lindbergh* held that *"[t]he relevant inquiry is not whether the party received a hearing, but whether a statute, ordinance, or constitutional provision required the agency to provide one.*" *Id.* (emphasis added). The governing City of St. Louis Code section in this case does not provide for the formal procedural requirements required to qualify the Occupancy Permit as a "contested" case review. The relevant sections of the City's codes are Sections 113.8 and 113.9 of the IBC regarding review of decisions related to occupancy permits. The procedures set forth in those sections for appeals from the Board of Building Appeals or, alternatively, a Hearing Officer appointed by the Board, state:

> 113.8 Appeals from decisions of the board. Any person(s) jointly or severally aggrieved by the decision of the Board of Building Appeals shall be entitled to a judicial review of the decision rendered by the Board of Building Appeals as provided in the Administrative Procedure and Review Act of the State of Missouri, being Sections 536.100 - 536.140 of the Revised Statutes of Missouri.
> ****************************
> 113.9.2 Rights and duties. The hearing officer shall have such rights, responsibilities, and duties as the Board of Building Appeals and the appellants shall have the same rights as an appellant appearing before the Board of Building Appeals, including the right to appeal pursuant to Missouri's Administrative Procedure and Review Act.

See Ordinance 70794, attached hereto as **Exhibit 3,** pages 79-80, and incorporated herein

by this reference. These references to Chapter 536 and particularly Sections 536.100-536.140 do not provide for the type of formal hearing that complies with the standard set forth in *Armstrong* and *450 N. Lindbergh*. In *450 N. Lindbergh*, supra at 54, the Missouri Court of Appeals held that the City of Creve Coeur's municipal code, like that of the City of St. Louis (both cities are constitutional charter cities), ***did not "identif[y] the procedural requirements for conduct of the public hearing,"*** nor were the parties able to direct the court to any other provision of the city code that provided such requirements. *Id.* Indeed, "[n]othing . . . require[d] that the hearing be conducted on the record, that witnesses give testimony under oath, that witnesses may be examined and cross- examined, that formal rules of evidence be followed, or that the agency render written findings of fact and conclusions of law." *Id*. (emphasis added). Therefore, the appeals court concluded that "[t]he hearing mandated in this case did not meet the formal procedural requirements of a hearing for a contested case." *Id.*

Nowhere in the IBC is there any requirement for sworn testimony, cross examination, or adherence to any rules of evidence, or any reference to the other formalities required in Sections 536.020 – 536.090. As a matter of law, therefore, the hearings held or that should have been held were ***not*** contested-case proceedings, and Section 536.150 is the appropriate standard of review.

    **2.**    **Standard of Review in a Non-contested Case Proceeding.**

"Judicial review in a non-contested case is similar to a judge-tried civil case." *State ex rel. Koster v. Morningland of the Ozarks, LLC*, 384 S.W.3d 346, 350 (Mo. Ct. App. 2012). "Thus, in a non-contested case, the circuit court does not review evidence as it would in a contested case, but makes the record by hearing evidence, and, based on the facts that ***it*** finds, adjudges the validity of the administrative agency's decision." *State ex rel. Pub. Counsel v. Pub. Serv. Comm'n*, 210 S.W.3d 344, 352 (Mo. Ct. App. 2006) (citations omitted) (emphasis added). "Given this procedure, ***the reviewing court owes no deference of credibility to the***

6

*administrative agency's decision*." *Id.* (emphasis added).

> [U]nder § 536.150 the circuit court, in review of a non-contested case, reaches its judgment ***without reference to the evidence upon which the administrative decision was made***. Rather, the court receives evidence on the merits of the case and ***based upon the evidence heard by the court finds the facts from which the court determines the validity of the administrative decision***. The court owes no deference to the facts found by the administrative agency or the credibility assessed as to any evidence heard by the agency.

*State ex rel. Fortney v. Joiner*, 797 S.W.2d 848, 851–52 (Mo. Ct. App. 1990) (emphasis added).

According to the Missouri Supreme Court, "[i]n the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision. Under the procedures of section 536.150, the circuit court conducts such a hearing ***as an original action***." *City of Valley Park*, 273 S.W.3d at 506 (emphasis added) (citations omitted). "[I]n a non-contested case the private litigant tries his or her case to the court." *Id.* at 507.

> The standard of judicial review of non-contested cases is governed by section 536.150. The circuit court does not review the record for competent and substantial evidence, but instead ***conducts a de novo review*** in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion. The circuit court does not defer to facts found or credibility assessed by the agency and need not conform doubtful evidence to the agency's decision. ***The circuit court in a non-contested case acts to determine the evidence and give judgment from that evidence***.

*Id.* at 508 (citations omitted) (emphasis added).

In *City of Valley Park*, "[a]fter considering the relevant factors, the circuit court made findings based on the evidence submitted to it and the circuit court concluded that the boundary commission's decision denying the proposal was arbitrary, capricious and unreasonable." *Id.* at 509.

The trial court in *City of Valley Park* essentially (and properly) considered the evidence as being presented for the first time. It reviewed the evidence presented to it, made findings of

fact based on that evidence, and applied the relevant statutory factors to be considered in making the determination as to whether the boundary change would be in the best interest of the municipality and unincorporated territory affected. *Id.* at 508–09. The Supreme Court affirmed the circuit court's decision, finding it was supported by substantial evidence.

As the *City of Valley Park* reveals, the question here is whether, on the evidence that the parties will submit to the Court, West Florissant BP is entitled to retain its 1999 Occupancy Permit or be issued a new one under the standards in the IBC, not an irrelevant zoning provision unilaterally created by the Zoning Administrator. "[U]nder § 536.150 the circuit court, in review of a non-contested case, reaches its judgment ***without reference to the evidence upon which the administrative decision was made***." *State ex rel. Fortney*, 797 S.W.2d at 851–52 (emphasis added).

"[I]n the review of a non-contested decision, the circuit court does not review the administrative record, but **hears evidence, determines facts, and adjudges the validity of the agency decision**. Under the procedures of section 536.150, the circuit court conducts such a hearing **as an original action**." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009) (emphasis added) (citations omitted). The Court must conduct a "de novo review" and "determine the evidence and give judgment from that evidence." *Id.* at 508. In short, without giving any deference to the Board's previous findings, this Court must determine "whether [West Florissant BP] at time of such decision . . . had such right, or was entitled to such privilege"—namely, whether West Florissant had the right to continue to use the Occupancy Permit issued in 1999 or to receive a new Occupancy Permit in 2019 based on the evidence that will be presented to the Court pursuant to Mo. Rev. Stat. § 536.150.

Non-contested case review is particularly appropriate in this case, where the proceedings below were held before City administrative bodies that lacked jurisdiction to hear appeals of a

8

determination by a zoning officer without jurisdiction over IBC occupancy permits because of a purported "change of ownership." As discussed in detail below, the Zoning Administrator, the Board of Public Safety and the Board of Adjustment had no jurisdiction to hear such a matter under the City's own Codes. Instead, the citations against Plaintiff arose from the City's IBC (see **Exhibit** 4 attached hereto and incorporated herein by this reference). The IBC has its own review procedures before a Board of Building Appeals that are independent from zoning officials, and the Zoning Code. For all these reasons, Plaintiff pleaded for Injunctive and Mandamus relief that can be properly raised under Mo.Rev.Stat. § 536.150.

### III. Factual Background

In accordance with a demand from the City, see Exhibit 4, West Florissant applied for a new Occupancy Permit for the operation of its gas station and convenience store at 4126 West Florissant Avenue. After submitting the required application and fees, City Staff circulated the application to various agencies or departments within the City for review (*see* **Exhibit** 5, page 86 of the Administrative Record produced by the City through discovery in this case). Tellingly, neither the Building Department, Police Department, or Fire Department noted any basis for denying an occupancy permit. Instead, and contrary to the law regarding vested rights and legal non-conforming uses and the City's own code Zoning Code regarding occupancy permits, Mary Hart Burton, the Zoning Administrator, made a determination that a new ***Occupancy Permit*** could not be granted because:

> "Conditional use approval is required for this gas station and convenience store here in Zone "G" - Local Commercial and Office District. (***There can be no continuation of this nonconforming use to this new applicant since convenience store uses can no longer be transferred to subsequent owners*** without conditional use approval.) (emphasis added).

*See* **Exhibit** 6, attached hereto and incorporated herein by this reference. Ms. Burton's statement is directly contradicted by City ordinances and Missouri law. As stated in *State ex rel.*

9

*Kugler v. City of Maryland Heights,* 817 S.W.2d 931, 933 (Mo.Ct. App. E.D. 1991) "The legality of **nonconforming use is vested by use** and **not by ownership** or tenancy. *State ex rel. Keeven v. City of Hazelwood,* 585 S.W.2d 557, 560[6] (Mo.App.1979). In *Kugler*, the Court held that a city has a legal duty to recognize a valid nonconforming use and to exempt Relators from application of an ordinance enacted subsequent to the use. *Id.* Here, the City's ordinances regarding conditional uses in District G, Local Commercial and Office, specifically allows convenience stores and gasoline pumping stations and has not been subsequently amended to provide any condition related to an occupancy permit or the transferability of a conditional use permit. *See* Exhibit 2, pages 83-84. Therefore, Plaintiff's claim is even stronger than a legal, non-conforming use as was at issue in *Kugler* because Plaintiff's right to use its conditional use permit has not been affected by a subsequent zoning change. Under the City's Zoning Code, a conditional use permit "shall apply to the use" indefinitely so long as no changes are made to the site or structure in which the CUP is put to use. See **Exhibit** 2, page 101.

*See also, Gray v. White,* 26 S.W.3d 806, 818 (1999), which held that "a CUP holder who acts in good faith reliance upon a CUP that has been granted to him, by making a substantial investment in erecting a building on the property, *acquires a vested right* in the continued permitted use of that property in a manner that complies with the conditions of the CUP" and "the CUP owner's vested right to such continued use of the property is transferable and 'runs with the land.'"

Despite Missouri law and City ordinances to the contrary, Ms. Burton, with a just a few strokes on her computer keyboard, erased controlling legal precedents and she unlawfully converted an application for an Occupancy Permit under the IBC into a "zoning" matter, which she then improperly directed to the Board of Public Service and the Board of Adjustment. There is no legitimate basis for such a conversion under the City's own Ordinances. The City's Zoning

Code, codified at Section 26.80.010(D)(4) states explicitly that a Conditional Use Permit attaches to a property indefinitely so long as there are no changes to the site or structure. See Exhibit 2, page 84. No such changes occurred here nor do Defendants allege that any such change occurred.

With regard to occupancy permits, the City Zoning Code, Section 26.96.020, states explicitly that:

**26.96.020 - Certificates of occupancy—When.**

> A certificate of occupancy shall be required where there is a change in the use of land or where a new building is erected or an existing building is structurally altered or changed or converted in whole or in part. (Ord. 59979 § 25 (part), 1986.)

Exhibit 2, page 101. There were no changes in the "use of land" and there was no new building or an existing building that was structurally altered, changed or converted in whole or in part on Plaintiff's property. Plaintiff's rights in its 1999 Conditional Use Permit and Occupancy Permit were, therefore, vested as far as the Zoning Code is concerned. Moreover, the Conditional Use Permit could even be transferred to a subsequent user under Missouri law. *See, e.g., Gray v. White,* at 818.

As a Zoning Administrator, Ms. Burton is not a Zoning Czar who can unilaterally declare new policies or procedures for review of Occupancy Permit applications. Such a delegation of authority, even if it had been made (which it was not), would not be constitutional. *See, e.g., Automobile Club of Mo. v. City of St. Louis*, 334 S.W.2d 355 (Mo.1960); *State ex rel. Priest v. Gunn*, 326 S.W.2d 314, 320, 321 (Mo. banc 1959) (a legislative body such as the Board of Aldermen generally cannot delegate its authority, but alone must exercise its legislative functions). As an administrator, Ms. Burton cannot legislate. Instead, Ms. Burton is required by her oath of office to follow the ordinances of the City and the law of Missouri. She is beholden to the law.

The Zoning Administrator, the Board of Public Safety and the Board of Adjustment were without jurisdiction to hear the citation against Plaintiff for purportedly failing to have a current Occupancy Permit under the IBC. The proceedings below, therefore, were without jurisdiction, *ultra vires*, and deprived Plaintiff of its vested property rights without due process of law and without just compensation. Despite the clear language of the City's codes, the City did not provide Plaintiff with the process required by its own codes. Consequently, Plaintiff filed its Petition for Injunctive, Declaratory and Mandamus relief pursuant to Mo.Rev.Stat. § 536.150 to allow "non-contested" case review as required by Missouri law and consistent with the City's IBC.

IV. **Chapter 536.150 is the Appropriate Standard of Review on the Facts and Law**

There is no provision in the Property Maintenance Code that allows the Zoning Administrator to govern when an Occupancy Permit is granted. Rather, that Code states: "It shall be the duty of the building official to post a notice on any building, structure or portion thereof when it is found that an occupancy permit is required before any occupancy shall be permitted to occur." Exhibit 3, Page 67.

At the heart of this case is a proceeding that began as a citation for not having a current Occupancy Permit. *See, e.g.,* Exhibit 4, page 2, which shows the violations with which Plaintiff was charged references City Ordinance 70794 (which adopted the 2018 IBC), and particularly Section 110 of that Code. *See* Exhibit 2. This citation to the IBC is significant because that Code does not arise out of the "zoning" power of the City, but rather the "police" power that is concerned not with uses of property, but health and safety concerns. *See, e.g., Village Lutheran Church v. City of Ladue,* 935 S.W.2d 720, 721 (Mo.Ct. App. E.D. 1996).

To further compound the due process problems, one of the citations against Plaintiff regarding its occupancy permit is inaccurate and a further violation of procedural due process

since Section 110 of the IBC is not even a correct citation to occupancy permit regulations. Section 110 is concerned with Inspections by the Code Official of construction work. *See* Exhibit 3, page 56.

The occupancy permitting procedures under Ordinance 70794 are set forth in Section 111, Exhibit 3, page 67. Section 111 only requires that an occupant have an occupancy permit *before occupying* a building or structure, which, of course, Plaintiff acquired in 1999. Section 111.1 also provides that an occupancy permit is required for any change in the existing occupancy *classification* of the building or structure, but that circumstance did not occur here and Defendants have not alleged that it occurred.

There is no reference to a "change of ownership" requiring a new occupancy permit within Section 111 of the International Building Code. Not a single word. There is a provision that allows the "building official" to initiate a revocation of an occupancy permit where the "building or structure" is in a "violation of any ordinance or regulation or any of the provisions of this code." Section 111.8, Exhibit 3, at page 70. But no such revocation proceeding was ever initiated. Instead, City Building Department officials supposedly inspected the premises and determined that a new occupancy permit was required because of a 2012 intercorporate transfer between two partners. Appeals from decisions of the "building official" are supposed to be referred to the Board of Building Appeals, see Exhibit 3, Section 113.3, pages 73-74. Because of Ms. Burton's unilateral and incorrect pronouncement of the law, however, the City misdirected the appeals in this case to the Board of Public Safety and the Board of Adjustment, in violation of Plaintiff's due process rights. *See* Record, Exhibit 5, pages 3, 48 and 85. These facts alone require a *de novo* hearing under Section 536.150.

Court review of decisions under the IBC is addressed in Section 113.8, Exhibit 3, page 79, are explicitly referred to a Chapter 536 proceeding, through a reference to Sections 536.100-

140. More significant, however, is the absence of any provision in the IBC, Ordinance 70794, requiring the formalities of a contested-case hearing as required in 536.020 through 536.090, inclusive. This naked reference to Sections 536.100-140 does not comply with the requirements set forth in *450 N. Lindbergh Legal Fund, LLC*, supra at 54. Consequently, non-contested case review under Section 536.150 is mandated.

Also significant in this regard is City Code Section 26.84.050(A), which sets forth the "Jurisdiction" of the City's Board of Adjustment, a true and accurate copy of which is attached hereto as Exhibit 2, pages 96-97. The Zoning Code is very specific in stating that "certificates of occupancy" shall only be required when there is a "change in the use of land or where a new building is erected or an existing building is structurally altered or changed or modified." *See* Section 26.96.020, supra, which was adopted in 1986 and has not been modified since. At no time in the proceedings below did any City official or board ever allege that a change "in use" occurred or that a "structural alteration, change or modification" to a building occurred. The alleged change of occupancy, thus, could not have arisen under the Zoning Code. The Board of Adjustment, therefore, lacks jurisdiction to hear an appeal of the denial of an occupancy permit purportedly required under the IBC.

Consequently, the question of whether West Florissant even needed a new occupancy permit could only arise under the IBC, and not the Zoning Code. The proper review by this Court, therefore, is under Mo.Rev.Stat. § 536.150.

### V.     Mo. Rev. Stat. § 536.150 is the Proper Method of Review of this Case.

Section 536.150 review is the most appropriate form of review for the facts of this case since neither the Building Officials nor the Zoning Administrator acted within their jurisdictional authority but rather abused their authority by acting unconstitutionally, unlawfully, arbitrarily and unreasonably, all of which are legal conclusions appropriate for Court review and not

through any administrative review. The language of the statute provides the means for review of such *ultra vires* acts:

> ***When any administrative officer*** *or body existing under the constitution or by statute or by municipal charter or ordinance **shall have rendered a decision which is not subject to administrative review***, *determining the legal rights, duties or privileges of any person,* ***including the denial or revocation of a license****, and there is no other provision for judicial inquiry into or review of such decision, such decision **may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action***, *and in any such review proceeding **the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion***; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

(Emphasis added). As the plain language of the statute reveals, the Court "determine[s] the facts relevant to the question whether [Plaintiff] at the time of such decision . . . had such right, or was entitled to such privilege, ***and may hear such evidence on such question*** as may be properly adduced . . . ." *Id.* (emphasis added).

Here, as in other non-contested cases, there was no sworn testimony, no opportunity for cross-examination, nor any rules of evidence followed regarding testimony or documentary evidence. As such, this statute permits and instructs the court to create its own record in determining "whether such person at the time of such decision . . . had such right, or was entitled to such privilege." In other words, the statute does not limit the Court to any administrative "record" in determining whether West Florissant BP was entitled to retain its Occupancy Permit, or obtain a new one by mandamus and had a right to the CUP.

VI. <u>Conclusion</u>

15

Binding Missouri precedent and the City's own ordinances require that this appeal proceed under Chapter 536 rather than Chapter 89, and specifically that the Court proceed under the procedures set forth in Mo. Rev. Stat. §536.150 for non-contested cases. Plaintiff properly invoked injunctive relief and relief by mandamus, both of which forms of action are expressly allowed by Chapter 536.150 de novo review.

Respectfully Submitted,

CURTIS, HEINZ, GARRETT & O'KEEFE, PC

By: */s/Helmut Starr*
 Helmut Starr, #32889MO
 Nancy Mogab, #32478MO
 Edward Sluys, #60471MO
 Andrew Bramman, #69980MO
 130 S. Bemiston, Suite 200
 Clayton, Missouri 63105
 (314) 725-8788 phone
(314) 725-8789 facsimile
hstarr@chgolaw.com
nmogab@chgolaw.com
esluys@chgolaw.com
abramman@chgolaw.com

*Attorneys for Plaintiff*
*West Florissant BP*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2021, the foregoing Plaintiff's Memorandum Regarding the Standard of Review was served by E-mail upon Brent Dulle, dulleb@stlouis-mo.gov and Travis F. Warren, warrent@stlouis-mo.gov, counsel for Defendants.

*/s/Helmut Starr*
Helmut Starr