Title 26 - ZONING

**Chapters:**

# Exhibit 2

Chapter 26.04 - CITATION AND PURPOSE

**Sections:**

26.04.010 - Title.

Chapters 26.04 through 26.100 shall be known and cited as "the zoning code" and shall consist of the following chapters:

| Chapter | Description |
|---------|-------------|
| 26.04 | Citation and Purposes |
| 26.08 | Zoning Definitions |
| 26.12 | Zoning Districts and Boundaries |
| 26.16 | General Zoning Regulations |
| 26.20 | A Single-Family Dwelling District |
| 26.24 | B Two-Family Dwelling District |
| 26.28 | C Multiple-Family Dwelling District |
| 26.32 | D Multiple-Family Dwelling District |
| 26.36 | E Multiple-Family Dwelling District |
| 26.40 | F Neighborhood Commercial District |
| 26.44 | G Local Commercial and Office District |
| 26.48 | H Area Commercial District |
| 26.52 | I Central Business District |
| 26.56 | J Industrial District |

| 26.60 | K Unrestricted District |
|-------|-------------------------|
| 26.64 | L Jefferson Memorial District |
| 26.68 | Comprehensive Sign Control Regulations |
| 26.72 | Regulated Uses |
| 26.76 | Flood Plain Areas |
| 26.80 | Use, Height and Area Exceptions |
| 26.84 | Board of Adjustment |
| 26.88 | Zoning Administrator |
| 26.92 | Changes and Amendments |
| 26.96 | Plats, Certificates of Occupancy and Survey Fees |
| 26.100 | Violations |

(Ord. 59979 § 2 (part), 1986.)

26.04.020 - Acceptance of Act.

The provisions of Section 6 of an Act of the General Assembly of Missouri, approved April 30, 1925, relating to zoning, as amended, are accepted.

(Ord. 59979 § 2 (part), 1986.)

26.04.030 - Zoning Commission.

The Community Development Commission shall be the Zoning Commission as provided for in Section 6 of said Act.

(Ord. 59979 § 2 (part), 1986.)

26.04.040 - Interpretation and purpose.

In interpreting and applying the provisions of the zoning code, they shall be held to the minimum requirements for the promotion of the public safety, health, convenience, comfort, prosperity and general welfare. It is not the intention of the zoning code to interfere with or abrogate or annul any easements, covenants or other agreement between parties; provided, however, that where the zoning code imposes a greater restriction upon the use of a building or

premises or upon the height of a building, or requires larger open spaces that are imposed or required by other ordinances, rules, regulations, or permits or by easements, covenants or agreements, the provisions of the zoning code shall govern.

(Ord. 59979 § 2 (part), 1986.)

Chapter 26.08 - ZONING DEFINITIONS

      **Sections:**

26.08.010 - Application of definitions.

      For the purpose of this zoning code certain terms and words are hereby defined. Words used in the present tense shall include the future, the singular shall include the plural and the singular; the word "building" shall include the word "structure," the word "lot" shall include the word "plot"; and the word "shall" is mandatory and not directory. Any term not herein defined shall be construed as defined in the "Building Code of the City of St. Louis."

(Ord. 62588 § 2 (part), 1992.)

26.08.020 - Accessory building.

      A subordinate building the use of which is incidental to that of the main building.

(Ord. 62588 § 2 (part), 1992.)

26.08.025 - Accessory use.

      The term applied to a use that is subordinate in physical character to the principal use, that is clearly incidental to the principal use and that is located on the same lot with the principal use.

(Ord. 62588 § 2 (part), 1992.)

26.08.030 - Alley.

      A public thoroughfare which affords only a secondary means of access to abutting property.

(Ord. 62588 § 2 (part), 1992.)

26.08.035 - Animal clinic.

      An establishment that is used for the practice of veterinary medicine.

(Ord. 62588 § 2 (part), 1992.)

26.08.040 - Apartment house.

      A dwelling, multiple-family.

(Ord. 62588 § 2 (part), 1992.)

26.08.050 - Basement.

A story having part but not more than one half its height below grade. A basement shall not be included in computing the number of stories of buildings referred to in any part of the Zoning Code unless it is subdivided, rented, sold or leased for dwelling purposes.

(Ord. 62588 § 2 (part), 1992.)

26.08.053 - Bed and breakfast guesthouse.

A dwelling having not more than seven guest-rooms where travelers for compensation are lodged for sleeping purposes with at least a morning meal provided. It is owner-occupied, and no more than three (3) guestrooms shall be served by one bathroom and a separate bathroom must be maintained for the owner occupants.

(Ord. 62588 § 2 (part), 1992.)

26.08.056 - Bed and breakfast homestay.

A dwelling having not more than two guestrooms where travelers for compensation are lodged for sleeping purposes with at least a morning meal provided. It is owner-occupied, having no employees, and lodging travelers.

(Ord. 62588 § 2 (part), 1992.)

26.08.058 - Bed and breakfast inn.

A building having not more than nineteen guestrooms where travelers for compensation are lodged for sleeping purposes with at least a morning meal provided. No more than three guestrooms shall be served by one bathroom and if owner or manager occupied, a separate bathroom must be maintained for said owner or manager.

(Ord. 62588 § 2 (part), 1992.)

26.08.059 - Bicycle parking space.

A four (4) feet by six (6) feet space provided for locking two (2) bicycles to a City approved bicycle rack.

(Ord. No. 69148, § 1, 4-4-2012)

26.08.060 - Bicycle rack.

A stationary device anchored to the ground providing a stable frame to which two (2) bicycles may be conveniently secured. Common examples of preferred bicycle racks include "inverted-U," "post and loop," or "A" racks, and a creative design rack as defined and regulated herein.

(Ord. No. 69148, § 1, 4-4-2012)

Editor's Note:

The former § 26.08.060 has been renumbered as § 26.08.065 at the discretion of the editor. The historical notation has been retained with the amended provisions for reference purposes.

26.08.065 - Boarding house.

A rooming house where, for compensation, meals are provided

(Ord. 62588 § 2 (part), 1992.)

Note:

See the editor's note to § 26.08.060.

26.08.070 - Building.

Any structure for the shelter, support or enclosure of persons, animals, chattels or property of any kind. When separated by division walls without openings, each portion of such building, so separated shall be deemed a separate building.

(Ord. 62588 § 2 (part), 1992.)

26.08.080 - Building, height of.

The vertical distance measured from the curb grade or its equivalent established grade at a point midway between the two side lot lines to the highest point of the roof in the case of a flat roof, to the deck line of a mansard roof, or to the mean height level between the eaves and ridge of a gable, hip or gambrel roof excluding church spires, except that, where buildings are set back from the street line, the height on the building may be measured from the average elevation of the finished lot grade at the base of the front of the building.

(Ord. 62588 § 2 (part), 1992.)

26.08.090 - Buildable width.

The width of that part of the lot not included within the open spaces herein required in the Zoning Code.

(Ord. 62588 § 2 (part), 1992.)

26.08.100 - Cellar.

A story having more than one-half its height below grade. A cellar shall not be included in computing the number of stories of buildings referred to in any part of the Zoning Code unless it is subdivided, rented, sold or leased for dwelling purposes.

(Ord. 62588 § 2 (part), 1992.)

26.08.101 - Check-cashing establishment.

A business engaged in cashing checks for the general public as an element of its operation, which exceeds 50% of its gross revenues, and which is not licensed by the appropriate state or federal agency as a bank, savings and loan association, or credit union.

Check-cashing establishments are not permitted in zoning districts "A," "B," "C," "D," "E," "F," and "L" and may be permitted as conditional uses in zoning districts "G," "H," "I," "J," and "K." No permit shall be issued for any Check-cashing establishment that is located within 5,280 feet of any other check-cashing establishment and/or short-term loan establishment, or within five hundred (500) feet of any premises used as a dwelling including, but not limited to, a single-family dwelling, a two-family dwelling, a multi-family dwelling, a town home, or a semi-attached two-family, or within five hundred (500) feet of any structure used as elementary or secondary schools.

(Ord. No. 68185, § 2, 12-1-2008: prior: Ord. 64836 §§ 1, 2, 1999.)

26.08.103 - Clinic.

An establishment that is used for the provision of medical treatment for sick or injured people, treatment of alcohol and drug abuse, and treatment of the mentally or physically handicapped on an outpatient basis.

(Ord. 62588 § 2 (part), 1992.)

26.08.104 - Conditional use.

A use not authorized as a matter of right by the regulations of the district in which the use is proposed to be located but subject to being authorized for such district by action of the Zoning Administrator. The appropriateness of a particular use is to be determined based on the requirements and standards specified in Section 26.80.

(Ord. 62588 § 2 (part), 1992.)

26.08.104.1 - Convenience store.

Any grocery or retail establishment, not exceeding three thousand five hundred (3,500) square feet, offering for sale a limited line of groceries and household items and prepared foods usually for off-site consumption.

(Ord. No. 69395, § 1, 2-14-2013.)

26.08.105 - Conversion town house.

A town house as defined in Section 26.08.435; except that such town house is the product of a reconstruction or rehabilitation of a previously constructed dwelling, that the total number of town houses resulting from the reconstruction or rehabilitation is equal to or less than the total number of dwelling units previously existing in the dwelling, that the total floor area of the previously constructed dwelling shall not be increased resulting from the reconstruction or rehabilitation of a previously constructed dwelling, and that the aggregate area of all the town house lots resulting from the reconstruction or rehabilitation is no less than the area of the lot of the previously existing dwelling. Reference to a town house in this Zoning Code includes reference to a conversion town house unless a conversion town house is specifically distinguished.

(Ord. 64868 § 2, 2000: prior: Ord. 62588 § 2 (part), 1992.)

26.08.107 - Creative design rack.

Any rack other than the standard "inverted-U," "post and loop," or "A" rack.

(Ord. No. 69148, § 1, 4-4-2012.)

26.08.110 - Dwelling.

Any building, or portion thereof, which is designed for or used for residential purposes.

(Ord. 62588 § 2 (part), 1992.)

26.08.115 - Dwelling unit.

A room or group of rooms with cooking and sanitary facilities, occupied or arranged for occupancy by a single family.

(Ord. 62588 § 2 (part), 1992.)

26.08.120 - Dwelling, single-family.

A building containing one dwelling unit.

(Ord. 62588 § 2 (part), 1992.)

26.08.130 - Dwelling, two-family

A building containing two dwelling units.

(Ord. 62588 § 2 (part), 1992.)

26.08.140 - Dwelling, semi-detached two-family.

Two 2-family dwellings separated by a division wall.

(Ord. 62588 § 2 (part), 1992.)

26.08.150 - Dwelling, multiple-family.

A building containing three or more dwelling units, other than a town house, rooming or boarding house, bed and breakfast establishments, semi-detached two family dwelling, hotel or motel.

(Ord. 62588 § 2 (part), 1992.)

26.08.160 - Family.

A person, or group of persons immediately related by blood, marriage or adoption, living as a single housekeeping unit; also a group of not more than three (3) persons not necessarily related by blood, marriage or adoption, living as a single housekeeping unit.

(Ord. 62588 § 2 (part), 1992.)

26.08.162 - Financial institution.

An establishment that is engaged in the business of a bank, savings and loan association, or credit union that is regulated by state or federal authority. Such establishment includes, without limitation, an office building or portion thereof devoted to such use, a drive-up facility, and a facility containing one or more automated teller machines.

(Ord. 64837 § 3, 1999: prior: Ord. 62588 § 2 (part), 1992.)

26.08.165 - Floor area.

The total interior area of all floors of a building or structure measured to the inside face of the exterior walls but excluding stairwells, lobbies, common corridors and other nonleasable circulation areas, elevator shafts and space occupied by mechanical equipment or space related to the operation and maintenance of the building as well as that floor surface covered by walls or partitions enclosing these common areas or elements of a building.

(Ord. 62588 § 2 (part), 1992.)

26.08.166 - Floor area ratio.

The total floor area of a building or structure on any lot divided by the total area of that lot.

(Ord. 62588 § 2 (part), 1992.)

26.08.170 - Frontage.

All the land abutting on one side of a street or place between two intersecting streets or places (crossing or terminating) measured along the line dividing the street or place from the individual lots, or if the street or place be a dead end, then all the property abutting on one side between an intersecting street or place and the dead-end of the street or place, or if neither of the above apply, then all the land abutting on one side of particular block as designated by house numbers.

(Ord. 62588 § 2 (part), 1992.)

26.08.180 - Garage, private.

A building or portion of a building designed or used for the housing of motor driven vehicles.

(Ord. 62588 § 2 (part), 1992.)

26.08.190 - Garage, public.

A building or portion of a building other than a private garage, a storage garage, or a warehouse garage, used for storage, equipping, repairing, hiring or selling of motor driven vehicles.

(Ord. 62588 § 2 (part), 1992.)

26.08.200 - Garage, storage.

A building or portion of a building, other than a private garage, used exclusively for storage of motor driven vehicles.

(Ord. 62588 § 2 (part), 1992.)

26.08.210 - Garage, warehouse.

A building or portion of a building used exclusively for the storage of motor driven vehicles awaiting sale.

(Ord. 62588 § 2 (part), 1992.)

26.08.230 - Guestroom.

A room for lodging by no more than four (4) persons in a bed and breakfast establishment.

(Ord. 62588 § 2 (part), 1992.)

26.08.240 - Home occupation.

An accessory use of a dwelling unit that constitutes either entirely or partly the livelihood of a person living in the dwelling unit. See Section 26.80.060—Home Occupations.

(Ord. 62588 § 2 (part), 1992.)

26.08.245 - Home for senior citizens.

A residential building containing eight or more bedrooms limited to the use and occupancy of any persons, married or single, 62 years of age or over; such building shall not be used for such purposes as a convalescent or nursing home.

(Ord. 62588 § 2 (part), 1992.)

26.08.250 - Hospital.

An institution providing medical treatment and overnight bed care for the sick or injured.

(Ord. 62588 § 2 (part), 1992.)

26.08.260 - Hotel.

A building, other than a bed and breakfast inn, used as the abiding place of more than 20 persons who are for compensation lodged with or without meals.

(Ord. 62588 § 2 (part), 1992.)

26.08.270 - Lot.

A parcel of land occupied or proposed for improvement with one main building together with the accessory structures and uses customarily incidental to it and including such open space as is required under the Zoning Code, which parcel of land is either referred to in Section 26.80.050 or has its principal frontage either on a public street or place on a private residence street of record. Land that was formerly part of another lot and that was required for compliance with area regulations for an existing building on such other lot shall not be considered in determining whether a building to be erected, enlarged, structurally altered or moved complies with applicable area regulations.

(Ord. 62588 § 2 (part), 1992.)

26.08.280 - Lot, corner.

A lot abutting on two streets at their intersection.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.290 - Lot, depth of.

The minimum horizontal distance between the front and rear lot lines.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.300 - Lot, interior.

A lot other than a corner lot.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.310 - Lot, lines.

Lines bounding a lot, as defined herein.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.320 - Lot, through.

An interior lot having a frontage on each of two streets parallel or approximately parallel to each other.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.325 - Motor fuel pumping station.

An establishment having one or more pumps wherein a principal activity is the sale of motor fuel that is directly dispensed to the consumer's vehicle.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.330 - Nonconforming use.

Any building or land lawfully occupied by a use on May 25, 1950, or on the effective date of any amendment to Ordinance 45309, and which is in conflict with one or more of the regulations of the district in which it is situated.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.331 - Nonconforming structure.

A structure which existed lawfully prior to May 25, 1950, or on the effective date of any amendment to Ordinance 45309, and which is in conflict with one or more of the regulations of the district in which it is situated.

(Ord. 62588 § 2 (part), 1992.)

## 26.08.337 - Package liquor store.

An establishment at which primarily liquor products are sold at retail and not for consumption on the premises.

(Ord. 62588 § 2 (part), 1992.)

26.08.340 - Parking lot, commercial.

A lot on which space for parking is offered to the general public in return for a consideration or compensation.

(Ord. 62588 § 2 (part), 1992.)

26.08.350 - Parking space.

A surfaced area, exclusive of driveways, permanently reserved for the temporary storage of one automobile and connected directly with a street or alley or connected thereto by a driveway. The layout, arrangement and dimensions of drives and parking spaces shall be in accordance with Section 26.16.080.

(Ord. 62588 § 2 (part), 1992.)

26.08.360 - Place.

An open unoccupied space other than a street or alley permanently reserved and approved by the Board of Public Service as the principal means of access to abutting property.

(Ord. 62588 § 2 (part), 1992.)

26.08.370 - Premises.

A continuous area of land and any structures thereon all under a single ownership or operation under a single direction, which premises may include one or more adjacent lots, or fractions of lots.

(Ord. 62588 § 2 (part), 1992.)

26.08.375 - Restaurant.

An establishment where meals or refreshments are sold to the public.

(Ord. 62588 § 2 (part), 1992.)

26.08.377 - Restaurant, carry-out.

A restaurant where food, frozen dessert, or beverages are primarily sold in a packaged, ready-to-consume state, intended for ready consumption by the customer on or off the premises.

(Ord. 62588 § 2 (part), 1992.)

26.08.380 - Rooming house.

A dwelling, other than a hotel or bed and breakfast establishment, where, for compensation, lodging only is provided.

(Ord. 62588 § 2 (part), 1992.)

26.08.384 - Short-term loan establishment.

A business engaged in providing short-term loans to members of the general public as an element of its operation and which is not licensed by the appropriate state or federal agency as a bank, savings and loan association, or credit union. Short-term loan establishments shall include businesses offering title loans, payday loans, signature loans, small loans, pawnshops, and other similar businesses.

Short-term loan establishments are not permitted in zoning districts "A," "B," "C," "D," "E," "F," and "L" and may be permitted as conditional uses in zoning districts "G," "H," "I," "J," and "K".

No permit shall be issued for any short-term loan establishment that is located within 5,280 feet of any other short-term loan establishment and/or check-cashing establishment, or within five hundred (500) feet of any premises used as a dwelling including, but not limited to, a single-family dwelling, a two-family dwelling, a multi-family dwelling, a town home, or a semi-attached two-family, or within five hundred (500) feet of any structure used as elementary or secondary schools.

(Ord. No. 68185, § 3, 12-1-2008: prior: Ord. 64837 §§ 1, 2, 1999.)

26.08.385 - Sign.

Any structure or part thereof, or any device attached to, painted on, or represented on a building or other structure, upon which is displayed or included any letter, word, model, banner, flag, insignia, decoration, device, or representation used as, or in the nature of, an announcement, direction, advertisement, or attention directing device.

(Ord. 62588 § 2 (part), 1992.)

26.08.387 - Sleeping room.

A room or group of rooms, without cooking facilities, comprising sleeping accommodations for one family, within a rooming house or hotel.

(Ord. 62588 § 2 (part), 1992.)

26.08.390 - Story.

That part of a structure contained between the level of one finished floor, or, if the top story, that part of a structure contained between the level of the highest finished floor and the ceiling above it.

(Ord. 62588 § 2 (part), 1992.)

26.08.400 - Story, half.

A space under a sloping roof which has the line of intersection of roof decking and wall face not more than 3 feet above the top floor level and in which space not more than two-thirds of the floor area is furnished for use.

(Ord. 62588 § 2 (part), 1992.)

26.08.410 - Street.

A public thoroughfare which affords principal means of access to abutting property.

(Ord. 62588 § 2 (part), 1992.)

26.08.420 - Structural alteration.

Any change in the supporting members of a building such as bearing walls, columns, lintels, beams or girders.

(Ord. 62588 § 2 (part), 1992.)

26.08.430 - Structure.

A combination of material assembled, constructed or erected at a fixed location, including a building, the use of which requires location on the ground or attachment to something located on the ground.

(Ord. 62588 § 2 (part), 1992.)

26.08.432 - Telephone, outdoor pay.

"Outdoor pay telephone" means a telephone for hire located on private property which is not located within a building used for additional purposes with controlled access by means of a door or doors that may be locked.

(Ord. 64167 § 2, 1997.)

26.08.433 - Tourist home.

A bed and breakfast establishment.

(Ord. 62588 § 2 (part), 1992.)

26.08.435 - Town house.

A series of attached single-family dwellings separated by exterior quality walls or a common wall between units as required by the St. Louis building code, except that the maximum number of abutting dwelling units in any town house series shall not exceed eight, that each dwelling unit shall front wholly and directly upon a public street, or private place or upon a courtyard or way through which the owner of the town house dwelling unit has legally guaranteed ingress and egress to a public street or private place, and that each such dwelling unit shall have a dimension of not less than 14 feet along the width of the dwelling unit. Any contiguous grouping of five or more town house dwelling units to be developed as herein defined shall be subject to the provisions and requirements of Section 26.16.100.

(Ord. 62588 § 2 (part), 1992.)

26.08.440 - Yard.

Open space between buildings and the adjoining lot line which is open to the sky unobstructed by a structure other than (1) sills, belt courses and ornamental features not to exceed 4 inches; (2) that portion of cornices or roof overhang and fixed awnings that is 3 feet or less (except that, when a yard is required, cornices, roof overhang and fixed awnings shall not be any closer to any lot line than 2 feet); (3) that portion of open fire escapes, unenclosed porches or balconies

that 3 feet or less (except that, when a yard is required, open fire escapes, unenclosed porches or balconies shall not be any closer to any lot line than 3 feet); and (4) ordinary projection of chimneys and pilasters when placed so as not to obstruct light and ventilation.

(Ord. 62588 § 2 (part), 1992.)

26.08.450 - Yard, front.

A yard measured across the width of the entire lot and situated between the front lot line and the nearest portion of the main building other than steps, unenclosed balconies or unenclosed porches.

(Ord. 62588 § 2 (part), 1992.)

26.08.460 - Yard, rear.

A yard measured between the side lot lines, the rear lot line and the nearest portion of the main building other than steps, unenclosed balconies or unenclosed porches.

(Ord. 62588 § 2 (part), 1992.)

26.08.470 - Yard, side.

A yard measured between the side line of the lot and the main building or any projection thereof and extending from the front yard to rear yard.

(Ord. 62588 § 2 (part), 1992.)

26.08.480 - Zoning administrator.

A position created within the Department of Public Safety and appointed by the Building Commissioner. The position is responsible for administering and enforcing the Zoning Code, in accordance with Chapter 26.88.

(Ord. 62588 § 2 (part), 1992.)

Chapter 26.12 - ZONING DISTRICTS AND BOUNDARIES

**Sections:**

26.12.010 - Districts established.

In order to regulate and restrict the location and use of buildings and use of land intended for trades, industries, residences or other purposes, to regulate and limit the intensity of the use of lots and the density of population, and to regulate and determine the size of yards, courts and other open spaces within and surrounding buildings, the City is hereby divided into districts of which there shall be twelve (12) in number, known as:

A. Single-family dwelling district. (See Chapter 26.20.)

B. Two-family dwelling district. (See Chapter 26.24.)

C. Multiple-family dwelling district. (See Chapter 26.28.)

    D.  Multiple-family dwelling district. (See Chapter 26.32.)

    E.  Multiple-family dwelling district. (See Chapter 26.36.)

    F.  Neighborhood commercial district. (See Chapter 26.40.)

    G.  Local commercial and office district. (See Chapter 26.44.)

    H.  Area commercial district. (See Chapter 26.48.)

    I.  Central business district. (See Chapter 26.52.)

    J.  Industrial district. (See Chapter 26.56.)

    K.  Unrestricted district. (See Chapter 26.60.)

    L.  Jefferson Memorial district. (See Chapter 26.64.)

(Ord. 59979 § 4 (part), 1986.)

26.12.020 - District map.

The boundaries of the districts are those shown upon the map designated as the "district map," approved by the Board of Aldermen as part of the zoning code, as certified by the signatures of the President and the Clerk of the Board of Aldermen thereon, and filed in the office of the Building Commissioner or such other office or department of the City as may be hereafter provided by ordinance. Said district map and all notations, references and other information shown thereon are a part of the zoning code and have the same force and effect as if the district map and all notation, references and other information shown thereon were fully set forth or described in this code.

(Ord. 59979 § 4 (part), 1986.)

26.12.030 - Boundary lines.

When uncertainty exists with respect to the boundaries of the various districts as shown on the aforesaid district map, the following rules will apply:

    A.  The district boundaries are either streets or alleys unless otherwise shown. Where the designation on the said district map indicating the various districts are approximately bounded by street or alley lines, the street or alley shall be construed to be boundary of such district.

    B.  Where the district boundaries are not street or alley lines, and the property has been subdivided into blocks and lots the district boundary lines shall be considered as the rear lot line on all interior lots; provided, however, that at corners of intersecting streets where lots front on the intersecting street the district boundary line shall be considered to extend for a distance of one hundred (100) feet from the corner along the intersecting street.

    C.  In all other cases the district boundary lines on the said district map shall be determined by use of the scale contained on such district map.

(Ord. 59979 § 4 (part), 1986.)

City Counselor Ops.: 8600, 9784, 10197

Cases:

This case pertains to the establishment of a nonconforming use and the plaintiff' s attempt to enjoin the enforcing of a zoning classed as residential *Glencoe Lime and Cement Company vs. the City of St. Louis,* 108 S.W. 2d 143 (1937).

Zoning ordinance held not invalid because the district near the complainant's property was one in which the use prohibited to complainant's property was permitted. *Geneva Investment Company v. City of St. Louis,* 87 F. 2d 83, certiorari denied, 301 U.S. 692, 57 S. Ct. 795, 81 L. Ed. 1348 (1937).

Spot zoning ordinance amending general zoning laws by classifying a mortuary as being in a commercial instead of residential district held arbitrary and void. *Mueller vs. C Hoffmeister Undertaking and Livery Company,* 121 S.W. 2d 775, 343 Mo. 430.

Classification of property in zoning ordinance must not be arbitrary or unreasonable and must have some reference to objection state in the law. *City of St. Louis vs. Friedman,* 216 S.W. 2d 475 (1949).

Statute permitting zoning and zoning ordinance enacting under statute by City of St. Louis were valid exercises of police power. *Wippler vs. Hone,* 110 S.W. 2d 409 (1938).

Chapter 26.16 - GENERAL ZONING REGULATIONS

　　　　**Sections:**


26.16.010 - Uses prohibited.

　　No structure or land shall be used for a use other than those permitted in the district in which such premises are located unless such use is permitted by other provisions of the zoning code.

　　(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)


26.16.020 - Structures prohibited.

　　No structure shall be erected, placed, enlarged or structurally altered unless such action shall make the premises upon which it shall stand conform to the regulations for the district in which the premises are located, unless authorized by other provisions of the zoning code.

　　(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)


26.16.030 - Open storage prohibited.

　　The use of land within any dwelling district for the purpose of open storage is hereby prohibited.

　　(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)


26.16.040 - Comprehensive Sign Control Regulations.

　　See Chapter 26.68.

　　(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)

26.16.050 - Changes in nonconforming use.

If no structural alterations are made, nonconforming use of a building may be changed to another nonconforming use of the same or a more restricted classification.

(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)

26.16.060 - Discontinuing nonconforming use.

In the event a nonconforming use of any structure or premises is discontinued or its normal operation stopped for a period of one (1) year, the use of the same thereafter shall conform to the regulations of the district in which it is located.

(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)

26.16.065 - Changes in nonconforming residential buildings.

A nonconforming residential building may be repaired, renovated, rehabilitated, restored, reconstructed or otherwise altered, except that such repair or other alteration shall not create additional nonconformity or increase the degree of existing nonconformity of all or any part of such building and further except that no nonconforming element may be added to a building or grounds that such was an original element of the building if it was not an element of the building at the time of the permit application.

(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)

26.16.070 - Damage to nonconforming building.

In the event any nonconforming building has been damaged by fire, explosion or other disaster to the extent of sixty percent (60%) or less of its physical value, it may be restored within twelve (12) months, except that when such restoration becomes involved in litigation the time required for such litigation shall not be counted as a part of the twelve (12) months allowed for restoration. When damaged to the extent of more than sixty percent (60%), it may be restored as a conditional use, subject to the provisions of Section 26.80.010.

(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)

26.16.080 - Off-street parking and loading requirements.

A. All hereafter erected buildings shall provide off-street parking and off-street loading facilities in accordance with district regulations. When provided as a combined facility serving two (2) or more buildings or occupancies, such parking facilities shall have an area not less than the total of the separate requirements of each building or occupancy served thereby. Where buildings contain mixed occupancies, the parking and loading facilities shall be provided for each occupancy in accordance with the percentage of area in the building so occupied. Whenever the application of the district regulations results in the requirement of a fraction of a parking space, a whole parking space shall be provided for such fraction. Existing off-street parking or loading facilities shall not hereafter be reduced in size below the requirements of the applicable district regulations.

B. Off-street parking and loading facilities shall not be required of any existing structure or occupancy. No

existing structure shall be hereafter used in a manner which will increase the number of off-street parking or loading spaces required under the applicable district regulations, unless space be provided equal to the net increase in such required facilities resulting from alteration, conversion, change in use or increase in total dwelling units.

C. 1. Off-street parking or off-street loading areas in any dwelling district shall not extend beyond the building line or into the front yard area. When provided in non-dwelling districts, it may occupy any open land, including front yards, but no parking structure shall extend beyond the building line in any district. The parking space provided shall be paved with bituminous concrete or equivalent surfacing, clearly marked, and contain adequate entrances and exits, and shall be kept free from dust and be used only for parking. When lighted for nighttime use, no light shall be permitted to cast its light upon any dwelling nearby.

2. Notwithstanding the provisions of subsection (C)(1) of this section, vehicles may be parked at anytime on a driveway which is paved with bituminous concrete or equivalent surfacing which is directly connected to a parking or storage structure.

3. Parking on a driveway under the provisions of subsection (C)(2) of this section for a period of more than five (5) continuous days is prohibited.

D. The following schedule of parking spaces and layout standards shall apply to all parking facilities provided in the City:

|  | Angle of parking (in degrees) | | | |
|---|---|---|---|---|
|  | 30 | 45 | 60 | 90 |
| Depth of parking row (in feet) | 16 | 17 | 17 | 18 |
| Width- Parking space (in feet) | 8.5 | 8.5 | 8.5 | 8.5 |
| Width- Aisle (in feet) | 11 | 13 | 18 | 22 |

Parallel parking spaces shall be at least twenty-two (22) feet in length, and eight (8) feet in width.

E.  All parking required in any dwelling district unless otherwise stated in the district regulations shall be located in main building, in any accessory building, on the lot occupied by the main building or, except in the A single-fami dwelling district and B two-family dwelling district, on an alterative site provided the following conditions are me

    1.  Required off-street parking in any dwelling district may be provided as a conditional use on property other than that occupied by the main building; provided that the property on which the parking is located is in the same possession, either by deed, by easement or by long-term lease which has a life or term equal to or exceeding the life of the building occupied by the principal use and in no case less than ninety-nine (99) years, and, further, provided that the parking will be located in an equally or less restricted zoning district. Proof of such deed, easement or long-term lease including covenants which bind the owner and his heirs or assigns to maintain the required number of off-street parking spaces during the existence of the principal use shall be required to be filed with the Zoning Administrator and the City Assessor's Office. At any time that the main building is rendered useless, or if an alternative site, which is just as suitable for off-site parking, becomes available, the Zoning Administrator may allow the recession of the covenant or long-term lease.

    2.  The off-street parking space(s) shall be provided at a location within a walking distance of one hundred fifty (150) feet of the lot of the main use and shall be accessible by pedestrians. The distance shall be measured from the nearest point of access of the lot occupied by the principal use and the nearest point of the parking space.

(Ord. 64054 § 2, 1997; prior: Ord. 60163 § 1 (part), 1986: Ord. 59979 § 5 (part), 1986.)

26.16.085 - Bicycle parking requirements.

A.  Bicycle Rack Construction Requirements.

    1.  Bicycle racks shall be made of steel tubing one (1) inch to four (4) inches thick, containing two (2) locking points between one (1) feet and three (3) feet off the ground and a gap near the bottom for pedal clearance, enabling one to lock a bicycle frame and one of the wheels with a standard U-Lock.

    2.  A bicycle rack must be able to accommodate two (2) bicycles in an upright position. Bicycle racks that support the wheel but not the frame of the bike shall not be used to fulfill a bicycle parking requirement.

    3.  All creative design racks shall be capable of securing two (2) standard bicycles. The creative design rack shall provide a minimum of two points of contact with the bicycle. The design of a creative rack, including the installation details, shall be reviewed and approved by the Building Commissioner.

    4.  All bicycle racks shall be securely anchored to the ground or building structure.

B.  Bicycle Rack Site Requirements.

    1.  Bicycle racks installed pursuant to and required under this section shall be installed on private property. Bicycle racks installed in public streets or alleys require separate approval from the Streets Department and an encroachment permit from the Board of Public Service and shall not be used to fulfill a bicycle rack site requirement.

    2.  Bicycle rack shall be at least three (3) feet from any curb, so as not to impede ingress and egress to and from parked vehicles.

    3.  Bicycle racks shall be at least two (2) feet from the nearest building. Bicycle racks shall allow at least five (5) feet of American Disabilities Act compliant clearance on one or both sides of the rack.

4. Bicycle rack shall be at least two (2) feet from other objects, including but not limited to utility vaults, fire hy[...]
   street lights.

5. Bicycle rack shall be at least five (5) feet from curb cuts and accessibility ramps.

6. Bicycle rack, including attached bicycle, shall maintain a minimum four (4) feet of unobstructed walkway
   for pedestrian traffic at all times.

7. Bicycle racks shall not be located directly in front of an exit or entrance of a building.

8. Bicycle racks shall be located in well-lighted, highly visible areas to minimize theft and vandalism.

9. Bicycle racks shall be located no further from the building than the nearest automobile spaces, other
   than those spaces for persons with disabilities.

10. Safe and convenient means of ingress and egress to bicycle parking facilities shall be provided.

11. Bicycle rack area shall not interfere with accessible paths of travel or accessible parking as required by
    the Americans with Disabilities Act of 1990, as amended.

12. When a bicycle rack is installed adjacent to another bicycle rack, an aisle separating the racks, with a
    minimum four (4) feet of clearance measured from tip to tip of bike tires, shall be provided.

13. Bicycle parking spaces adjacent to automobile parking shall be located so as to protect bicycles from
    damage.

14. In cases where bicycle parking spaces are not visible from the primary street, signage shall be used to
    direct cyclists safely to the bicycle parking spaces.

15. Indoor bicycle racks provided pursuant to Section 26.16.085(D)(3) shall only be required to meet the
    construction and site requirements of Sections 26.16.085(A)(1) and (4) and (B)(8), (10), (11) and (13). In
    addition, if such racks are installed on a wall of a structure, the bottom of the rack shall not be more than
    three (3) feet off the ground.

16. In parking lots and parking garages, physical barriers, such as posts or bollards, shall be provided so as to
    prevent a motor vehicle from striking a parked bicycle.

C. Bicycle Parking Requirement. Bicycle racks shall be required in the City of St. Louis for the following actions
   requiring issuance of a building permit: all new construction and renovations equal to or in excess of
   $1,000,000. Bicycle racks shall be provided in accordance with the following tables. When calculating the
   minimum number of bicycle racks required results in a fractional number, a fraction more than one half (½)
   shall be rounded to the next highest whole number:

   1. Multi-Unit Residential:

| Number of Dwelling Units | Required Number of Minimum Bicycle Parking Racks |
|---|---|
| Less than 12 | 0 |
| 12 or more | 1 per every 6 dwelling units |

   2. Non-Residential:

| Gross Floor Area | Required Number of Minimum Bicycle Parking Racks |
|---|---|
| 0—6,000 sq. ft. | 1 |
| 6,001—10,000 sq. ft. | 2 |
| Over 10,000 sq. ft. | 1 per every additional 10,000 sq. ft. |

3.  Industrial and Hotel/Motel:

| Number of Employees | Required Number of Minimum Bicycle Parking Racks |
|---|---|
| 0—20 | 0 |
| 21—50 | 1 |
| Over 51 | 1 per every 50 employees |

D.  Exemptions.

1.  This section shall not require in excess of twenty (20) bicycle parking racks for any property.

2.  The following uses are exempted from the above requirements: funeral homes and mortuaries; car washes and automobile repair shops.

3.  In the "I" Central Business District bicycle parking shall not be required, pursuant to Section 26.16.085(C) (1)—(3). However, if off-street automobile parking is provided, a minimum of one bicycle rack per every twenty off-street automobile parking spaces, or fraction thereof, shall be provided. The required bicycle parking may be provided within an enclosed structure, and shall not be required to be accessible to the general public.

E.  Off-Street Parking Reduction for Bicycle Parking. The total number of vehicle off-street parking spaces required under the Zoning Code shall be reduced at the ratio of one (1) automobile off-street parking space for each one (1) bicycle space provided. The total number of required automobile off-street parking spaces, however, shall not be reduced by more than ten (10) percent for any newly developed or rehabilitated structure.

(Ord. No. 69148, § 2, 4-4-2012)

26.16.090 - Outdoor drive-in theater in A, B, C, D and E zones.

    A.  No person, firm or corporation shall hereafter establish locate, maintain, and operate an outdoor drive-in theater within eight hundred (800) feet of a district zoned A, B, C, D and E under the zoning code of the City.

    B.  No official or employee of the City shall issue or cause to be issued a certificate of occupancy, license or building permit for the establishment, location, maintenance or operation of an outdoor drive-in theater within eight hundred (800) feet of a district zoned A, B, C, D and E under the zoning code of the City.

    C.  This section shall not be construed to prohibit the operation and maintenance of an outdoor drive-in theater which is established and operating at the time of the passing of this zoning code.

(Ord. 60163 § 1 (part), 1986: prior: Ord. 59979 § 5 (part), 1986.)

Editor's Note:

Sections 26.16.140 through 26.16.190, added by Ord. 56052, were repealed by Ord. 60163.

Chapter 26.20 - A SINGLE-FAMILY DWELLING DISTRICT

      **Sections:**

26.20.010 - District regulations.

The regulations set forth in this chapter are district regulations in the "A" Single-Family Dwelling District.

(Ord. 62588 § 3 (part), 1992.)

26.20.020 - Use regulations.

A building or premises shall be used only for the following purposes:

    A.  Single-Family Dwellings. Any dwelling is so defined as a single-family residence because it is a house in which eight or fewer unrelated mentally or physically handicapped persons reside, and may also include two additional persons acting as houseparents or guardians who need not be related to each other or to any of the mentally or physically handicapped person residing in the home. The home may not be within 1,250 feet of another such home or dwelling;

    B.  Two-family dwellings which comply with the area and parking regulations of the "B" Two-Family Dwelling District where 40 percent or more of the frontage of a street is occupied by either two-family, semi-detached two-family or multiple-family dwellings;

    C.  Conversion town houses;

    D.  Home occupations, subject to the provisions of Section 26.80.060;

    E.  Publicly owned parks, playgrounds and libraries and privately owned parks and playgrounds wherein no service is rendered, or activities conducted, as a business;

    F.  Accessory structures and uses customarily incidental to any of the above uses except that, if the accessory structure is a garage, it shall only be a private garage that is located not less than 60 feet from the front line nor less than 4 feet from any side lot line nor exceeding 12 feet in height nor occupying more than 30 percent of a rear yard;

G. Temporary buildings for use incident to construction work, which buildings shall be removed upon the completion or abandonment of the construction;

H. Signs. See Chapter 26.88;

I. Babysitting Center. But no more than one on either side of the street in the same block.

(Ord. 64868 § 3, 2000: prior: Ord. 62588 § 3 (part), 1992.)

Cases:

Group homes are required to apply to City Board of Adjustment before claiming that City failed to accommodate homes as required by Fair Housing Act. *Oxford House-C v. City of St. Louis,* 77 F.3d 249 (8th Cir. 1996).

26.20.025 - Conditional uses.

The following conditional uses may be allowed in the "A" Single-Family Dwelling District, subject to the provisions of Section 26.80:

A. Bed and breakfast guesthouse, subject to the additional provisions of Chapter _____ (B.B.355);

B. Bed and breakfast homestay, subject to the additional provisions of Chapter _____ (B.B.355);

C. Cemeteries;

D. Churches;

E. Farming and truck gardening;

F. Governmental buildings;

G. Greenhouses, providing no product is sold on the premises;

H. Hospitals;

I. Off-street automobile parking facilities;

J. Parking facilities and open lots located between the front yard and the structure;

K. Publicly owned museums and art galleries;

L. Schools;

M. Utility stations and utility towers.

(Ord. 62588 § 3 (part), 1992.)

26.20.030 - Parking for multiple dwellings.

Dwelling shall provide space in the main building, in an accessory building, or on the lot occupied by the main building, sufficient to accommodate one (1) motor car for each dwelling.

(Ord. 62588 § 3 (part), 1992.)

26.20.035 - Parking for hospitals.

Any hospital shall provide parking space within 500 feet of the main building sufficient to accommodate 1 parking space for every 2 beds plus 1 space for every doctor on the maximum shift.

(Ord. 62588 § 3 (part), 1992.)

26.20.040 - Parking for places of assembly.

Any arena, auditorium, meeting room, or other structure used principally as a place of public assembly, shall provide parking space within 1,000 feet of the main building or structure sufficient to accommodate 1 parking space for every 3 seats based on the maximum seating capacity, except as noted herein.

    A. Any athletic field or diamond used principally as a place of public recreation shall provide parking space sufficient to accommodate 10 parking spaces for every diamond or athletic field, or 1 space for every 4 seats, whichever is greater (1 seat is equal to 2 feet of bleacher length).

    B. Any gymnasium without bleachers or fixed seating shall provide parking space sufficient to accommodate 1 parking space for every 150 square feet of floor area.

    C. Any church shall provide parking space sufficient to accommodate 1 parking space for every 4 seats (1 seat equals 2 feet of bench or pew length).

    D. Any school, public or private, including vocation/technical schools shall provide parking space sufficient to accommodate 1 parking space for every classroom and office, plus 1 space for every 5 students over 16 years of age.

(Ord. 62588 § 3 (part), 1992.)

26.20.050 - Height regulations.

No building hereafter erected shall exceed 2 ½ stories or 35 feet in height unless two side yards of not less than 10 feet in width are provided, in which case a building may not exceed 3 stories or 45 feet in height. Any church, school or governmental building may be erected to a height not exceeding 85 feet, provided that front and rear yards are increased in depth and the side yards are increased in width beyond that area regulations 1 foot for each foot of height that the building exceeds 35 feet.

(Ord. 62588 § 3 (part), 1992.)

26.20.060 - Front yard.

When 25 percent of any frontage within the district is improved with dwellings and a majority of such improved frontage has observed a front yard line with a variation in depth of not more than 6 feet, no building hereafter constructed shall project beyond the average front yard line so established except that in no event shall the front yard line be greater than 50 feet. In all other cases, there shall be a front yard line of not less than 25 feet. Through lots shall have front yard on each street in accordance with this section. On corner lots the frontage shall be on that side of a street on which interior lots have been platted. No accessory building shall project beyond such front yard line.

(Ord. 62588 § 3 (part), 1992.)

26.20.070 - Side yard.

There shall be provided a side yard of not less than four (4) feet in width on each side of a building, and the total width of both side yards shall be not less than ten (10) feet; provided however, that lots of record prior to the effective date of the Zoning Code having a width of less than (40) feet, may reduce the total side yard width by an amount equal to one-half (½) the difference between the width of such lot and forty (40) feet, but in no case shall either side yard be less than three (3) feet in width.

(Ord. 62588 § 3 (part), 1992.)

26.20.080 - Rear yard.

There shall be a rear yard of not less than 25 feet in depth.

(Ord. 62588 § 3 (part), 1992.)

26.20.090 - Density of populations.

A.  Except as provided in Section 26.20.020.B, there shall be a lot area of not less than four thousand (4,000) square feet for each dwelling unit. Lots of record prior to the effective date of Ordinance 45309 having an area of less than four thousand (4,000) square feet may be used for one (1) single-family dwelling provided the yard regulations of this section are complied with.

B.  Conversion town houses dwellings shall not be required to have a minimum lot area.

(Ord. 64868 § 4, 2000: prior: Ord. 62588 § 3 (part), 1992.)

Chapter 26.24 - B TWO-FAMILY DWELLING DISTRICT

Sections:

26.24.010 - District regulations.

The regulations set forth in this Chapter or set forth elsewhere in the zoning code when referred to in this Chapter are the district regulations in the "B" Two-Family Dwelling District.

(Ord. 59979 § 7 (part), 1986.)

26.24.020 - Use regulations.

A building or premises shall be used only for the following purposes:

1.  Any use permitted in the "A" Single-Family Dwelling District;

2.  Two-family dwellings;

3.  Semi-detached two-family dwellings or multiple-family dwellings for not more than four families, which comply with the area and parking regulations of the "C" Multiple-Family Dwelling District, where 40 percent or more of the frontage of a street is occupied by semi-detached two-family or multiple family dwellings;

4.  Conversion town houses;

5. Accessory structures and uses customarily incidental to any of the above uses;

6. Temporary buildings for use incident to construction work, which buildings shall be removed upon the completion or abandonment of the construction.

(Ord. 64868 § 5, 2000: prior: Ord. 59979 § 7 (part), 1986.)

City Counselor Ops.: 8317, 8318

Cases:

Board did not abuse its discretion in allowing hotel usage in two family dwelling zone. *Beckmeyer v. Beu,* 367 S.W. 2d 9 (1963.)

26.24.025 - Conditional uses.

The conditional uses are the same as those in the A single-family district.

(Ord. 59979 § 7 (part), 1986.)

26.24.030 - Parking regulations.

The parking regulations are the same as those in the A single-family district.

(Ord. 59979 § 7 (part), 1986.)

26.24.040 - Height regulations.

The height regulations are the same as those in the A single-family dwelling district, except that any church, school, or governmental building may be erected to a height not exceeding eighty-five (85) feet, provided that the side yards are increased in width beyond the area regulations one (1) foot for each three (3) feet of height that the building exceeds thirty-five (35) feet.

(Ord. 59979 § 7 (part), 1986.)

26.24.050 - Front yard.

The front yard regulations are the same as those in the A single-family dwelling district.

(Ord. 59979 § 7 (part), 1986.)

City Counselor Ops.: 8317

26.24.060 - Side yard.

The side yard regulations are the same as those in the A single-family dwelling district; provided, however, that any structure having two (2) or more dwelling units the principal entrance of which opens upon a side yard and does not face an abutting street shall provide on each side of the building a side yard having a width of not less than eight (8) feet.

(Ord. 59979 § 7 (part), 1986.)

26.24.070 - Rear yard.

The rear yard regulations are the same as those in the A single-family dwelling district.

(Ord. 59979 § 7 (part), 1986.)

26.24.080 - Density of population.

    A.  Single-family dwellings shall have a lot area of not less than four thousand (4,000) square feet, except that lots of record prior to the effective date of Ordinance 45309 may be used for one (1) single-family dwelling provided the yard regulations of this section are complied with. Other dwellings, except as provided in Section 26.24.020.3., shall have a lot area of not less than two thousand five hundred (2,500) square feet for each dwelling unit.

    B.  Conversion town houses dwellings shall not be required to have minimum lot area.

(Ord. 64868 § 6, 2000: prior: Ord. 59979 § 7 (part), 1986.)

Chapter 26.28 - C MULTIPLE-FAMILY DWELLING DISTRICT

    **Sections:**

26.28.010 - District regulations.

The regulations set forth in this Chapter or set forth elsewhere in the Zoning Code when referred to in this Chapter are the district regulations in the "C" Multiple-Family Dwelling District.

(Ord. 62588 § 4 (part), 1992.)

26.28.020 - Use regulations.

A building or premises shall be used only for the following purposes:

    A.  Any use permitted in the "B" Two-Family Dwelling District;

    B.  Town houses that front wholly and directly upon a public street;

    C.  Multiple-family dwellings;

    D.  Parks or playgrounds;

    E.  Accessory structures and uses customarily incidental to any of the above uses;

    F.  Temporary buildings for use incident to construction work, which buildings shall be removed upon the completion or abandonment of the construction.

(Ord. 62588 § 4 (part), 1992.)

26.28.025 - Conditional uses.

The following conditional uses may be allowed in the "C" Multiple-Family Dwelling District, subject to the provisions of Section 26.08.010:

A. Any uses eligible to be a conditional use in the "B" Two-Family Dwelling district;

B. Bed and breakfast inn, subject to the additional provisions of Chapter (8.25);

C. Day care centers;

D. Town houses where one or more dwelling units front wholly or partially on a private place or upon a court-yard or way through which the owner of the town house dwelling unit has legally guaranteed ingress and egress to a public street or private place.

(Ord. 62588 § 4 (part), 1992.)

26.28.030 - Parking regulations.

The parking standards in "A" Single-Family Dwelling District shall apply, except as modified by Section 26.28.010.

(Ord. 62588 § 4 (part), 1992.)

26.28.040 - Parking space.

Each new multiple-family dwelling shall provide parking space sufficient to accommodate one motor car for each one dwelling unit. Each rehabilitated or reconstructed dwelling shall provide parking space sufficient to accommodate three motor cars for each four dwelling units. Notwithstanding the foregoing two sentences in the case of multiple-family dwelling constructed exclusively for occupance by elderly or blind or other physically handicapped person and structurally designed in accordance with specific Federal Housing Administration requirements for such dwellings, the required amount of parking is reduced from the specified ratio by 40 percent if adequate space is provided in the dwelling, in an accessory building, or on the lot to ensure that parking space as otherwise required by zoning district regulations will be available in the event of a change in occupancy. No such parking space, including any interior aisle of any parking lot shall extend into any minimum required rear or side yard area.

(Ord. 62588 § 4 (part), 1992.)

26.28.050 - Height regulations.

Dwelling and accessory structures may not exceed a height of three stories and 45 feet, unless 40 percent or more of the dwellings or accessory structures having the same frontage are higher, in which case a height equal to or less than that greatest height may be used. Any church, school, governmental building or hospital may be erected to a height not exceeding 85 feet, providing the side yards are increased in width beyond the area regulations 1 foot for each 3 feet of height that the buildings exceeds 35 feet.

(Ord. 62588 § 4 (part), 1992.)

26.28.060 - Front yard area.

A. When 25 percent of a frontage within the district is improved with dwellings and a majority of such improved frontage has observed a front yard line with a variation in depth of not more than 6 feet, no building hereafter constructed shall project beyond the average front yard line so established, except that in no event shall the front yard line be greater than 50 feet. If less than 25 percent of such frontage is developed, then a front yard line for such frontage shall be the same as that for any other frontage located within two city

blocks, as designated by house numbers in any direction from the site. If no such precedent is available, then the front yard line shall be a minimum of 10 feet, but may not be required to exceed 25 feet from the lot line at the front of the lot.

B. Notwithstanding the preceding paragraph, no front yard shall be required to exceed the average depth of the front yard line in either of the lots abutting, and no front yard line shall be required to be greater than 50 feet from the front lot line.

(Ord. 62588 § 4 (part), 1992.)

## 26.28.070 - Side yard.

A. All detached dwelling units shall provide a side yard of 4 feet on one side and may provide no side yard on the other. All attached units shall provide a side yard of 4 feet for one end unit. The other end may provide no side yard. If a yard is provided on both sides of a detached dwelling unit or both ends of attached units, then neither such yard shall be less than 4 feet.

B. All residential accessory structures need not have a side yard except as provided in Section 26.28.080 below.

C. If a side yard of 4 feet is not provided, as permitted above, a maintenance agreement must be granted by the owner of the property abutting that side of the lot prior to zoning approval.

(Ord. 62588, § 4 (part), 1992.)

## 26.28.080 - Rear yard.

A. There shall be a minimum rear yard of 15 feet unless a side yard of 12 feet is provided, in which case no rear yard shall be required.

B. All residential accessory structures need not have a rear yard.

C. If, as permitted above, no rear yard is provided, a maintenance easement must be granted by the owner of the rear abutting property prior to zoning approval.

(Ord. 62588 § 4 (part), 1992.)

## 26.28.090 - Density of population.

A. Detached single-family dwelling shall have a lot area of not less than 4,000 square feet, except that lots of record prior to the effective date of Ordinance 45309 and new lots that equal the average density of the original platted parcels may be used for one single-family dwelling, provided the yard regulations of this section are complied with.

B. Town houses and two-family dwellings shall have a lot area of not less than 1,000 square feet for each dwelling unit therein.

C. Conversion town houses dwellings shall not be required to have a minimum lot area.

D. Multiple-family dwelling units shall have a lot area of not less than 1,500 square feet for each dwelling unit therein, or as was lawfully provided in a existing building prior to rehabilitation.

(Ord. 62588 § 4 (part), 1992.)

Chapter 26.32 - D MULTIPLE-FAMILY DWELLING DISTRICT

**Sections:**

26.32.010 - District regulations.

The regulations set forth in this chapter or set forth elsewhere in the zoning code when referred to in this chapter are the district regulations in the D multiple-family dwelling district

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.015 - Purpose.

The purpose of the D multiple-family dwelling district is to maintain older medium density residential districts, to preserve older architectural styles while encouraging a harmonious intermingling of other structures, and to provide for an increased variety and intermixture of uses free from other uses except those both compatible and convenient to the residents of such district.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.020 - Use regulations.

A building or premises shall be used only for the following purposes:

A. Any use permitted in the C multiple-family dwelling district;

B. A canopy, open at the sides, may be provided in the required yard space of any building, for the shelter of persons entering such building from the street or other designated point of disembarkation from vehicles;

C. Accessory structures and uses customarily incidental to any of the above uses;

D. Temporary buildings for use incidental to construction work, which buildings shall be removed upon the completion or abandonment of the construction.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.025 - Conditional uses.

The following conditional uses may be allowed in the D multiple-family dwelling district subject to the provisions of Section 26.80.010:

A. Any use eligible to be a conditional use in the C multiple-family dwelling district;

B. The following neighborhood commercial retail uses, provided that the use is confined to the first floor or basement of the main building:

1. Art galleries and studios,

2. Bakery shops,

3. Barber and beauty shops,

4. Book, magazine, and stationery stores,

      5.  Drug stores,

      6.  Dry cleaning pick-up stations (not having on-site processing),

      7.  Financial institutions,

      8.  Florists,

      9.  Gift shops,

      10.  Hardware stores;

C.  Greenhouses;

D.  Hotels;

E.  Nursing and convalescent homes, children's homes, and homes for the aged;

F.  Professional and general offices not exceeding three thousand five hundred (3,500) square feet;

G.  Rooming and boarding houses, halfway houses, and penal institutions; including group homes and residential-custodial care facilities, residential facilities for treatment of alcohol and other drug abuse (except for current users of illegal drugs or addicts of a controlled substance), and homes in which nine or more (or such other lesser or greater number as state law may in the future mandate) unrelated mentally or physically handicapped persons reside.

H.  Telephone, outdoor pay.

(Ord. 64167 § 3, 1997: prior: Ord. 62183 § 2 (part), 1990: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

## 26.32.030 - Parking regulations.

The parking standards in C multiple-family dwelling district and in Sections 26.32.040 and 26.32.045 shall apply.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

## 26.32.040 - Parking space.

A.  Facilities listed in Section 26.32.025(G) shall provide parking spaces sufficient to accommodate one (1) parking space for each dwelling unit; and one (1) parking space for each two (2) beds offered for rent in rooming and boarding houses; and one (1) parking space for every six (6) beds, one parking space for every two (2) self care units, plus one (1) parking space for every two (2) employees on the maximum shift in other facilities listed in said section.

B.  Any nursing or convalescent home, children's home or home for the aged shall provide parking spaces sufficient to accommodate one (1) parking space sufficient to accommodate one (1) parking space for every six (6) beds, one (1) parking space for every two (2) self care units, plus one (1) parking space for every two (2) employees on the maximum shift.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

## 26.32.045 - Parking at hotels.

Hotels shall provide parking spaces sufficient to accommodate one (1) parking space for each dwelling unit or sleeping room.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.050 - Height regulations.

Dwellings, hotels and their accessory structures may not exceed a height of three (3) stories and forty-five (45) feet unless forty percent (40%) or more the structures having the same frontage are higher, in which case a height equal to or less than the greatest height may be used. Any church, school, governmental building or hospital may be erected to a height not exceeding eighty-five (85) feet, providing the side yards are increased in width beyond the area regulations one (1) foot for each five (5) feet of height that the building exceeds thirty-five (35) feet.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.060 - Front yard area.

The front yard regulations are the same as those in the C multiple-family dwelling district.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.070 - Side yard.

A.  All detached dwelling units shall provide a side yard of four (4) feet on one (1) side and may provide no side yard on the other. All attached units shall provide a side yard of four (4) feet for one (1) end unit. The other end unit may provide no side yard. If a yard is provided on both sides of a detached dwelling unit or both sides of attached units, then neither such yard shall be less than four (4) feet.

B.  All residential accessory structures need not have a side yard except as provided in Section 26.32.080.

C.  If a side yard of four (4) feet is not provided, as permitted above, a maintenance easement must be granted by the owner of the property abutting that side of the lot prior to zoning approval.

D.  All nonresidential structures and related accessory structures not exceeding three (3) stories or thirty-five (35) feet in height shall have side yards of four (4) feet.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.080 - Rear yard.

The rear yard regulations are the same as those in C multiple-family dwelling district.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.090 - Density of population.

A.  Detached single-family dwellings shall have a lot area of not less than four thousand (4,000) square feet, except that lots of record prior to the effective date of Ordinance 45309 and new lots that equal the average density of the original platted parcels may be used for one (1) single-family dwelling, provided the yard regulations of this section are complied with.

B.  Town houses and two-family dwellings shall have a lot area of not less than eight hundred fifty (850) square feet for each dwelling unit therein.

C.  Conversion town house dwellings shall not be required to have a minimum lot area.

D.  Multiple-family dwelling units shall have a lot area of not less than seven hundred fifty (750) square feet for

each dwelling unit thereon, or as was lawfully provided in an existing building prior to rehabilitation.

E. Facilities listed in Section 26.32.025(G) shall have a lot area of not less than one thousand five hundred (1,500) square feet for each dwelling unit therein; and an additional lot area of not less than seven hundred fifty (750) square feet for each sleeping room therein offered for rent in rooming and boarding houses; and an additional lot area of not less than five hundred (500) square feet for each person domiciled therein in other facilities listed in said section.

F. Nursing and convalescent homes, children's homes and homes for the aged shall have a lot area of not less than five hundred (500) square feet for each person domiciled therein.

G. All new commercial uses have a floor area ratio of not more than 1.5.

(Ord. 62183 § 2 (part), 1990: prior: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 9 (part), 1986.)

26.32.100 - Neighborhood density.

Facilities listed in Section 26.32.025(G) shall not be located within one thousand two hundred fifty (1,250) feet of another listed facility.

(Ord. 62183 § 2 (part), 1990.)

Chapter 26.36 - E MULTIPLE-FAMILY DWELLING DISTRICT

**Sections:**

26.36.010 - District regulations.

The regulations set forth in this chapter or set forth elsewhere in the zoning code when referred to in this chapter are the district regulations in the E multiple-family dwelling district.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.015 - Purpose.

The purpose of the E multiple-family dwelling district is to establish and preserve medium density residential districts, including some high density commercial and residential uses, free from other uses except those of such district.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.020 - Use regulations.

A building or premises shall be used only for the following purposes:

A. Any use permitted in the D multiple-family dwelling district;

B. Hotels;

C. Accessory structures and uses customarily incidental to any of the above uses;

D. Temporary buildings for use incident to construction work, which buildings shall be removed upon the

completion or abandonment of the construction.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.025 - Conditional uses.

The following conditional uses may be allowed in the E multiple-family dwelling district, subject to the provisions of Section 26.80.010:

    A.  Any use eligible to be a conditional use in the D multiple-family dwelling district;

    B.  Bakery shops;

    C.  Barber and beauty shops;

    D.  Book, magazine, and stationery stores;

    E.  Butcher shops;

    F.  Convenience stores;

    G.  Dry cleaning pick-up stations (no on-site processing);

    H.  Dry goods shops;

    I.  Drug stores;

    J.  Financial institutions;

    K.  Florists;

    L.  Funeral parlors;

    M.  General offices;

    N.  Gift shops;

    O.  Grocery and other retail stores not exceeding three thousand five hundred (3,500) square feet;

    P.  Hardware stores;

    Q.  Hobby and toy shops;

    R.  Pet shops;

    S.  Professional offices;

    T.  Similar neighborhood commercial uses.

(Ord. No. 69395, § 2, 2-14-2013: Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.030 - Parking regulations.

The parking standards in D multiple-family dwelling district, except as modified by Sections 26.36.040 and 26.36.050, shall apply.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.040 - Parking at hotels.

Hotels shall provide parking space within five hundred (500) feet of the main building sufficient to accommodate one (1) motor car for each dwelling unit, and one (1) motor car for each four (4) sleeping rooms.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.050 - Loading at hotels.

Hotels shall provide one (1) loading space of adequate width, length and height to accommodate commercial vehicles servicing such building, which loading space shall be off the streets and alleys. One (1) additional such loading space shall be provided for each additional one hundred thousand (100,000) square feet of floor space in excess of the first one hundred thousand (100,000) square feet of floor space.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.060 - Height regulations.

Buildings may exceed eight (8) stories or one hundred (100) feet in height provided they are set back from the side yard regulations one (1) foot for each five (5) feet of additional height above eight (8) stories or one hundred (100) feet. The required set-back may be provided at the base to permit a vertical structure without physical set-back in the upper stories, or the set-back may be provided at any one (1) or more floor levels to govern the permitted height above such set-back.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.070 - Front yard areas.

The front yard regulations are the same as those in the D multiple-family dwelling district.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.080 - Side yard.

A. All detached dwellings less than forty-five (45) feet in height shall provide a side yard of four (4) feet on one side and may provide no side yard on the other. All attached dwelling units less than forty-five (45) feet in height shall provide a side yard of four (4) feet for one (1) end unit. The other end may provide no side yard. If a yard is provided on both sides of a detached dwelling unit or both ends of attached units, then neither such yard shall be less than four (4) feet.

B. All nonresidential structures and related accessory structures not exceeding three (3) stories or thirty-five (35) feet in height shall have a minimum side yard of four (4) feet.

C. All other main buildings shall have side yards of not less than five (5) feet and shall have an additional six (6) inches of side yard for every ten (10) feet in height above forty-five (45) feet in the case of residential and thirty-five (35) feet in the case of nonresidential structures.

D. All accessory structures need not have a side yard except as provided in Section 26.36.090.

E. If a side yard of four (4) feet is not provided, as permitted above, a maintenance easement must be granted by the owner of the property abutting that side of the lot prior to zoning approval.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.090 - Rear yard.

A. For all structures less than forty-five (45) feet in height, there shall be a minimum rear yard of fifteen (15) feet unless a side yard of twelve (12) feet is provided, in which case no rear yard shall be required.

B. All structures over forty-five (45) feet in height shall have a minimum rear yard of twenty (20) feet and there shall be an additional six (6) inches of yard for every ten (10) feet in height over forty-five (45) feet.

C. If no rear yard is provided, as permitted above, a maintenance easement must be granted by the owner of the rear abutting property prior to zoning approval.

(Ord. 60483 § 1 (part), 1987: Ord. 59979 § 10 (part), 1986.)

26.36.100 - Density of population.

A. Detached single-family dwellings shall have a lot area of not less than four thousand (4,000) square feet, except that lots of record prior to the effective date of Ordinance 45309 and new lots that equal the average density of the original platted parcels may be used for one (1) single-family dwelling, provided the yard regulations of this section are complied with.

B. Town houses and two-family dwellings shall have a lot area of not less than seven hundred fifty (750) square feet for each dwelling unit therein.

C. Conversion town house dwellings shall not be required to have a minimum lot area.

D. Multiple-family dwelling units shall have a lot area of not less than two hundred fifty (250) square feet for each dwelling unit therein.

E. Rooming and boarding houses shall have a lot area of not less than one thousand five hundred (1,500) square feet for each dwelling unit therein, and an additional lot area of not less than seven hundred fifty (750) square feet for each sleeping room therein offered for rent.

F. Nursing and convalescent homes, children's homes and homes for the aged or physically or mentally disabled shall have a lot area of not less than five hundred (500) square feet for each person domiciled therein.

G. All commercial uses shall have a floor area ratio of not more than 2.0.

(Ord. 60483 § I (part), 1987: Ord. 59979 § 10 (part), 1986.)

## Chapter 26.40 - F NEIGHBORHOOD COMMERCIAL DISTRICT

**Sections:**

26.40.010 - District regulations.

The regulations set forth in this Chapter or set forth elsewhere in the Zoning Code when referred to in this Chapter are the district regulations in the "F" Neighborhood Commercial District.

(Ord. 62588 § 5 (part), 1992.)

26.40.015 - Purpose.

The purpose of the "F" Neighborhood Commercial District is to establish and preserve those commercial and professional facilities that are especially useful in close proximity to residential areas. The district is designed to provide convenient shopping and servicing establishments for persons residing in the immediate neighborhood to satisfy those basic home and personal shopping and service needs which occur frequently and so require retail and service facilities in relative proximity to places of residence, so long as such uses are compatible with and do not detract from adjacent residential uses.

(Ord. 62588 § 5 (part), 1992.)

26.40.020 - Use regulations.

A building or premises shall be used only for the following purposes:

- A. Any use permitted in the "E" Multiple-Family Dwelling District;
- B. Art galleries and studios;
- C. Bakery Shop;
- D. Barber and beauty shops;
- E. Bed and breakfast guesthouse, subject to the provisions of Chapter (8.25);
- F. Bed and breakfast homestay, subject to the provisions of Chapter (8.25);
- G. Bed and breakfast inn, subject to the provisions of Chapter (8.25);
- H. Bookstores;
- I. Butchershops;
- J. Computer stores;
- K. Drug stores;
- L. Dry cleaning stations (not having on-site processing);
- M. Financial institutions;
- N. Florists;
- O. General offices;
- P. Grocery and other retail stores;
- Q. Hardware stores;
- R. Professional offices;
- S. Shoe repair shops;
- T. Video and record stores;
- U. Mixed uses which include any of the permitted residential and commercial uses;
- V. Accessory structure and uses customarily incidental to any of the above uses;
- W. Temporary buildings for use incident to construction work, which buildings shall be removed upon the completion or abandonment of the construction.
- X. Any permitted use exceeding 3,500 square feet provided it is not within a commercial structure to be erected, enlarged, structurally altered or moved.

(Ord. 62588 § 5 (part), 1992.)

26.40.025 - Conditional uses.

The following conditional uses may be allowed in the "F" Neighborhood Commercial District, subject to the provisions of Section 26.80:

A.  Any use eligible to be a conditional use in the "E" Multiple-Family Dwelling District;

B.  Bar and taverns;

C.  Package liquor stores;

D.  Parking lots;

E.  Private clubs or lodges;

F.  Restaurants and carry-out restaurants that meet the site requirements specified in Section 26.40.026;

G.  Theaters;

H.  Commercial uses similar to those permitted in Section 26.40.020;

I.  Any permitted use which exceeds 3,500 square feet within a commercial structure to be erected, enlarged, structurally altered or moved;

J.  Motor fuel pumping stations that meet the site requirements specified in Section 26.40.027;

K.  Any permitted or conditional use that utilizes a sales or service window or facility for customers who are in cars.

(Ord. 62588 § 5 (part), 1992.)

26.40.026 - Site requirements for carry-out restaurants.

Carry-out restaurants shall comply with the requirements of either of the following numbered paragraphs:

A.  The carry-out restaurant is not a carry-out restaurant that sells to customers who are in cars or who consume the sold products in cars parked on the carry-out restaurants premises, nor is it a carry-out restaurant that sells products through a sales window, to customers who are in cars, for immediate consumption by the customer either on or off the premises provided that:

   1.  The carry-out restaurant does not have any free standing sign;

   2.  The total square footage of all signs attached to the building does not exceed 150 square feet, nor do signs extend above the roof of the building or extend more than 15 feet in height above grade; and

   3.  No sign shall have any moving part or be illuminated from any flashing or intermittent source; or

B.  The carry-out restaurant is a carry-out restaurant that sells to customers who are in cars or who consume the sold products in cars parked on the carry-out restaurant premises, or is a carry-out restaurant that sells products through a sales window to customers who are in cars for immediate consumption by the customers either on or off the premise provided that:

   1.  For lots that are contiguous with or directly across a street, alley, public or private easement from a dwelling district:

      a.  The lot contains a minimum of 20,000 square feet.

      b.  The carry-out restaurant does not have more than one freestanding sign. Said sign shall not exceed 25 feet in height nor exceed on all faces a total of 150 square feet of sign copy and shall be a

minimum of 50 feet from any existing residential use or dwelling district.

   c. The total square footage of signs attached to the buildings shall not exceed 100 square feet per side facing a street, nor shall signs attached to any one facade occupy more than one-tenth of the facade, nor shall signs extend above the roof of the buildings or extend more than 25 feet in height above grade. Buildings on corners facing two streets may have a sign facing each street.

   d. A drive through menu board not exceeding 40 square feet per face nor more than 6 feet in height and a separate speaker post in the drive through area and behind the required front yard with a sound system not audible at the lot lines may be erected. Traffic direction signs shall not exceed 4 square feet per facing and 4 feet in height.

   e. No sign shall have any moving part or be illuminated from any flashing or intermittent source.

   f. A minimum of 15 parking spaces shall be provided on a lot. Parking areas shall be screened at all property line with a 10-foot landscaped strip contiguous with or directly across an alley or public or private easement, other than a public street, from any existing residential use or dwelling district. Parking area screens shall consist of a minimum 2-foot high berm and a masonry or wood barrier that is at least 70 percent opaque and not less than 6 feet in height and shall be maintained in good order.

   g. A landscape strip not less than 3 feet in width shall be provided along all public streets and shall contain 2-foot high solid landscaping or a masonry wall not less than 2 feet in height except that these elements shall not be required in approved driveways. Street trees shall be installed in the tree lawn, between the public sidewalk and public street, when the tree lawn has sufficient width, or street trees with gates shall be installed in public sidewalks where the sidewalk has sufficient width and is on an earth base with a minimum of 25 feet between trees not including driveways. A minimum of 15% of the lot area shall be landscaped, including screening areas.

   h. All parking stalls shall be provided with continuous secured curbing not less than 6 inches high and 18 inches wide to insure careful location of the parked cars.

   i. Exterior refuse container enclosures shall have masonry walls not less than 5 feet high and latched doors. All trash disposal containers shall be located on the site in a manner which will establish their permanent location. At a minimum such trash containers shall be located at every entrance and exist to the premises.

   j. There shall be no other carry-out restaurant along the same street (or streets in the case of a corner location) nearer than 600 feet unless the average weekday traffic volume along such street or streets is more than 7,500 vehicles per day per carry-out restaurant. However, in no case shall a carry-out restaurant as provided for herein be permitted nearer than 300 feet from another such use on the same side of the street and in no case shall an additional such use be permitted at an intersection if two such uses already exist at that intersection.

   k. No vehicular access shall be allowed to any public alley abutting a residential zoning district.

   l. Parking area light poles shall be metal or masonry with underground wiring and not exceed 22 feet in height and adjusted so that no more than .5 foot candle (measured at grade) falls on any abutting residential lot.

 2. For lots that are not contiguous with or directly across a street, alley, public or private easement from any dwelling district:

a. The lot contains a minimum of 20,000 square feet.

b. The restaurant does not have more than one freestanding sign except that carry-out restaurants on a corner facing two public streets may have one freestanding sign per street frontage provided that at least one such frontage is 200 feet or greater. Said sign shall not exceed 25 feet in height plus one foot in height for each additional 1,000 square feet of lot area in excess of 20,000 square feet nor exceed on all faces a total of 200 square feet of sign copy provided that said signs shall not exceed the maximum permitted height for the district.

c. The total square footage of signs attached to the building shall not exceed 200 square feet per side facing a street nor shall signs attached to any one facade occupy more than one-tenth of the facade, nor shall signs extend above the roof of the buildings or extend more than 25 feet in height above grade. Building on corners facing two streets may have a sign facing each street.

d. A drive through menu board not exceeding 40 square feet per face nor more than 6 feet in height and a separate speaker post in the drive through area and behind the required front yard with a sound system not audible at the lot line may be erected. Traffic direction signs shall not exceed 6 square feet per facing and 6 feet in height.

e. No sign shall have any moving part or be illuminated from any flashing or intermitted source.

f. A minimum of 15% parking spaces shall be provided on a lot.

g. A minimum of 10% of the lot area shall be landscaped, including screening areas. A landscaped strip not less than 3 feet in width shall be provided along all public streets and shall contain a 2-foot high solid landscaping or a masonry wall not less than 2 feet in height except that these elements shall not be required in approved driveways.

h. All parking stalls shall be provided with continuous secured curbing not less than 6 inches high and 18 inches wide to insure careful location of parked cars.

i. Exterior refuse container enclosures shall have masonry walls not less than 6 feet high with latched doors. All trash disposal containers shall be located on the site in a manner which will establish their permanent location. At a minimum such trash containers shall be located at every entrance and exit to the premises.

j. There shall be no other carry-out restaurant along the same street (or streets in the case of a corner location) nearer than 600 feet unless the average weekday traffic volume along such street or streets is more than 7,500 vehicles per day per carry-out restaurant. However, in no case shall a carry-out restaurant as provided for herein be permitted nearer than 300 feet from another such use on the same side of the street and in no case shall an additional such use be permitted at an intersection if two such uses already exist in that intersection.

k. Parking area light poles shall be metal or masonry with underground wiring and not exceed 22 feet in height.

(Ord. No. 69198, § 2, 7-18-2012: Ord. 62588 § 5 (part), 1992.)

26.40.027 - Site requirement for motor fuel pumping stations.

Motor fuel pumping stations shall comply with the requirements in either of the following numbered paragraphs:

A. The motor fuel pumping station is wholly contained within the accessory to a parking facility, provided

there are no exterior signs on the premises advertising the motor fuel pumping station location, or

B. All other motor fuel pumping stations provided that:

1. There shall be no other motor fuel pumping station along the same street (or streets in the case of a corner location) nearer than 600 feet unless the average weekday traffic volume along such street or streets is more than 7,500 vehicles per day per station. However, in no case shall a station as provided for herein be permitted nearer than 300 feet from another such use on the same side of the street and in no case shall an additional station be permitted at an intersection if two such stations already exist in that intersection.

2. Not more than one free-standing sign shall be permitted; said sign shall not exceed 25 feet in height nor exceed on all faces a total of 150 square feet of sign copy and shall be a minimum of 50 feet from any existing residential use or dwelling district.

3. The total square frontage of all signs attached to the building shall not exceed 100 square feet, nor shall signs attached to any one facade occupy more than one-tenth of the facade, nor shall signs extend above the roof of the buildings or extend more than 25 feet in height above grade. Two streets may have a sign facing each street.

4. Not more than one sandwich board type sign shall be permitted which shall indicate the types of gasoline for sale and the price thereof. Said sign shall not be placed on or extend into any public right-of-way;

5. All banners, pennants and similar devices designed for temporary outdoor display shall be prohibited. All graphics shall be exhibited as a permanent source or displayed from permanently mounted sign backgrounds;

6. No sign shall have any moving part or be illuminated from any flashing or intermittent source;

7. Stations shall be screened at all property lines contiguous with or directly across an alley or public or private easement, other than a public street, from existing residential uses and dwelling districts. Screens shall consist of a masonry or wood barrier that is at least 70 percent opaque and not less than 6 feet in height and shall be maintained in good order;

8. A trash enclosure, 6 feet in height, constructed of masonry or wood and opaque, shall be provided. Said enclosure shall be enclosed on all sides, and have a solid gate 6 feet in height providing access to the trash area. Trash shall not exceed the height of the enclosure. No trash, including, without limitation, discarded oil cans, batteries, signs, and tires, shall be stored on any section of the site, except within an enclosed structure;

9. All hoist, service racks, accessory sales rack and vending machines shall be maintained within an enclosed building;

10. No driveway shall be closer than 20 feet to any residential use or dwelling district; and

11. No pump island shall be nearer than 20 feet to a property line.

(Ord. No. 69198, § 2, 7-18-2012: Ord. 62588 § 5 (part), 1992.)

26.40.030 - Parking regulations.

The parking in the "E" Multiple Family Dwellings District, except as modified by Section 26.40.040 shall apply.

(Ord. 62588 § 5 (part), 1992.)

26.40.040 - Specific parking and loading regulations.

In addition, the following uses shall provide parking space within 1,000 feet of the main building:

A. Retail stores within floor area of more than 3,000 square feet shall provide parking space sufficient to accommodate one motor car for each 700 square feet of floor area in excess of 3,000 square feet which is actually used for the selling of merchandise.

B. Banks and office buildings with floor area of more than 7,500 square feet shall provide parking space sufficient to accommodate one motor car for each 1,250 square feet of floor area in excess of 7,500 square feet which is actually used for banking purpose or for offices.

C. Restaurants, bars, taverns, and exhibition halls with more than 1,000 square feet of floor area shall provide parking space sufficient to accommodate one motor car for each 200 square feet of floor area in excess of 1,000 square feet which is actually used by patrons or customers for such purposes.

D. Theaters shall provide parking space sufficient to accommodate one motor car for each 12 seats.

E. Mortuaries and funeral homes shall provide parking space sufficient to accommodate three motor cars for each chapel or parlor.

F. Dance halls shall provide parking space sufficient to accommodate one motor car for each 100 square feet of floor area used for dancing.

G. Bowling alleys shall provide parking space sufficient to accommodate 2 motor cars for each alley.

H. All hereinafter erected or enlarged retail stores, food markets, restaurants, bars, taverns, mortuaries, laundries and dry cleaning establishments having or to have more than 5,000 square feet of gross floor area shall provide one loading space, at least 10 feet by 25 feet and having a 14-foot clearance, which shall be located off the public street, alley and sidewalk and on the same lot of the building served. One additional loading space shall be provided for each additional 25,000 square feet or fraction thereof of gross floor area, but not more than 4 such spaces shall be required.

I. Private clubs and lodges shall provide parking space sufficient to accommodate one motor car for each one hundred (100) square feet of floor area used for purposes of dancing, assembly or dining.

(Ord. 62588 § 5 (part), 1992.)

26.40.050 - Height regulations.

No building shall exceed 3 stories or 50 feet in height. Churches, school, public building, hospitals and institutions may be erected to a height exceeding 85 feet.

(Ord. 62588 § 5 (part), 1992.)

26.40.070 - Front yard area.

A. When 25 percent of any frontage within the district is improved with buildings and a majority of such improved frontage has a front yard line variation in depth of not more than 6 feet, no building hereafter constructed shall project beyond the average front yard line so established, except that in no event shall this

front yard be greater than 50 feet.

B. Where any frontage is partially in a dwelling district and partially in a commercial district, the front yard regulations of the dwelling district shall apply for that frontage.

C. No front yard shall be required for existing commercial structures located at the intersection of two streets or existing commercial structures which are contiguous with existing commercial structures located at the intersection of two streets for any commercial structures to be erected, enlarged, structurally altered or moved on land formerly occupied by a commercial structure with no front yard located at the intersection of two streets.

D. Residential structures and mixed residential and commercial structures that are not at or contiguous with commercial structure at the intersection of two streets shall have a front yard as set forth in the front yard requirements of the least restrictive adjacent dwelling district.

E. In all other cases no front yard shall be required.

(Ord. 62588 § 5 (part), 1992.)

26.40.080 - Side yard.

A. All residential structures shall meet the side yard requirements (including without limitation requirements as to maintenance easements) of the least restrictive adjacent dwelling except when the structure includes commercial uses.

B. All non-residential structures, mixed commercial and residential structures, and related accessory structures that do not adjoin a dwelling district, require no side yard, but a maintenance easement must be granted the owner of the property abutting each side of a lot having a side yard of less than 4 feet prior to zoning approval; if such structures do adjoin a dwelling district, there shall be a side yard adjoining having a width of no less than 4 feet, unless a maintenance easement is granted by the owner of the property abutting the lot prior to zoning approval.

(Ord. 62588 § 5 (part), 1992.)

26.40.090 - Rear yard.

A. All residential structures shall meet the rear yard requirements of the least restrictive adjacent dwelling district except those which include commercial uses.

B. All non-residential structures, mixed commercial and residential structures, and related accessory structures require no rear yard setback except that an appropriate space shall be provided to accommodate trash receptacles and loading areas.

(Ord. 62588 § 5 (part), 1992.)

26.40.100 - Density of population.

A. All residential structures hereafter constructed shall meet the density requirements of the least restrictive adjacent dwelling district except where 40 percent or more of the structures having the same frontage is occupied by multiple family dwellings. In the latter such cases, dwelling shall conform to area regulations of the "D" Multiple-Family Dwelling District.

B. All non-residential structures, mixed commercial and residential structures shall have a floor area ratio of not

more than 1.5.

(Ord. 62588 § 5 (part), 1992.)

## Chapter 26.44 - G LOCAL COMMERCIAL AND OFFICE DISTRICT

**Sections:**

26.44.010 - District regulations.

The regulations set forth in this chapter or set forth elsewhere in the zoning code and referred to in this chapter are the district regulations in the G local commercial and office district.

(Ord. 59979 § 12 (part), 1986.)

26.44.015 - Purposes.

The purpose of the G local commercial and office district is to establish and preserve areas that accommodate a wide range of businesses catering to the personal and home needs of the general public and to provide for employment activity and service to the public which does not detract from nearby residential uses.

(Ord. 59979 § 12 (part), 1986.)

26.44.020 - Use regulations.

A building or premises shall be used only for the following purposes:

A. Any use permitted in the F neighborhood commercial district;

B. Bars and taverns;

C. Dyeing and cleaning works;

D. Laundries;

E. Livery stables and riding academies;

F. Milk distributing and bottling plants;

G. Package liquor stores;

H. Printing shops;

I. Restaurants other than carry-out restaurants that operate as described in Section 26.40.026B provided that carry-out restaurants that meet the site requirements specified in Section 20.40.026B2 shall be permitted;

J. Telephone, outdoor pay, if the proposed telephone is not located on a lot that is located contiguous with or directly across a street, alley, public or private easement from a dwelling district;

K. Tinsmith or sheet metal shops;

L. Wholesale business;

M. Accessory structures and uses customarily incidental to any of the above uses;

N. Temporary buildings for use incident to construction work, which buildings shall be removed upon the

completion or abandonment of the construction;

O.   Any permitted use exceeding seven thousand (7,000) square feet provided it is not within a commercial structure to be erected, enlarged, structurally altered or moved.

(Ord. 64167 § 4, 1997: Ord. 59979 § 12 (part), 1986.)

26.44.025 - Conditional uses.

The following conditional uses may be allowed in the G local commercial and office district, subject to the provisions of Section 26.80.010:

A.   Any use eligible to be a conditional use in the F neighborhood commercial district;

B.   Commercial use similar to those permitted in Section 26.44.020;

C.   Any permitted use which exceeds seven thousand (7,000) square feet within a commercial structure to be erected, enlarged, structurally altered or moved;

D.   Any permitted or conditional use which utilizes a sales or service window or facility for customers who are in cars except those carry-out restaurants permitted in Section 26.44.020;

E.   Carry-out restaurants other than those carry-out restaurants permitted in Section 26.44.020 and that meet the applicable site requirements specified in Section 26.40.026B1;

F.   Telephone, outdoor pay, if the proposed telephone is located on a lot that is located contiguous with or directly across a street, alley, public or private easement from a dwelling district.

(Ord. 64167 § 5, 1997: prior: Ord. 59979 § 12 (part), 1986.)

26.44.030 - Parking and loading regulations.

The parking regulations for uses enumerated in Chapter 26.20 through 26.40 inclusive, except as modified by Section 26.44.040, shall apply.

(Ord. 59979 § 12 (part), 1986.)

26.44.040 - Specific parking and loading regulations.

In addition, parking space shall also be provided for the following uses:

A.   Wholesale, manufacturing and industrial buildings shall provide parking space within one thousand (1,000) feet of the main building sufficient to accommodate one (1) motor car for each ten (10) employees regularly employed at the site, based on the greatest number employed at any one period of the day or night.

B.   All hereinafter erected or enlarged buildings having or to have more than five thousand (5,000) square feet of gross floor area and used for manufacturing, storage, warehouse, goods display, department store, wholesale store, and other uses involving the receipt or distribution by vehicles of materials or merchandise shall provide one (1) loading space, at least ten (10) feet by twenty-five (25) feet and having a fourteen (14) foot clearance, for each twenty-five thousand (25,000) square feet of gross floor area or fraction thereof in excess of five thousand (5,000) square feet.

(Ord. 59979 § 12 (part), 1986.)

26.44.050 - Height regulations.

The height regulations are the same as those in the F neighborhood commercial district.

(Ord. 59979 § 12 (part), 1986.)

26.44.060 - Area dwellings.

For dwellings the area regulations are the same as those in the D multiple-family dwelling district. For other buildings the following area regulations only shall be required.

(Ord. 59979 § 12 (part), 1986.)

26.44.070 - Front yard—Nondwellings.

The front yard regulations are the same as those in the F neighborhood commercial district.

(Ord. 59979 § 12 (part), 1986.)

26.44.080 - Side yard—Nondwellings.

A. There shall be a side yard having a width of not less than five (5) feet on that side of a lot which adjoins any dwelling district.

B. Where dwelling accommodations are hereafter created above any nondwelling use there shall be two (2) side yards each of eight (8) feet in width unless every room within that portion of the structure used for dwelling purposes shall open directly upon a front yard or a rear yard of dimensions as required in the D multiple-family dwelling district.

(Ord. 59979 § 12 (part), 1986.)

Chapter 26.48 - H AREA COMMERCIAL DISTRICT

Sections:

26.48.010 - District regulations.

The regulations set forth in this chapter or set forth elsewhere in the zoning code and referred to in this chapter are the district regulations in the H area commercial district.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

26.48.015 - Purpose.

The purpose of the H area commercial district is to establish and preserve general commercial areas consisting of shopping centers and commercial strips where customers reach individual business establishments primarily by automobile. This district is intended to provide diversified types of goods and services to a large consumer population

coming from an extensive area. Regulations of this district are to facilitate the use of heavily trafficked areas suitable for the operation of businesses catering to the general public, which does not materially detract from nearby residential uses.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

26.48.020 - Use regulations.

The use regulations are the same as those in the G local commercial and office district, except that for any property located within 1,500 feet of an interstate highway or ramp or right-of-way for the same, the area of any permitted use exceeding seven thousand (7,000) square feet in any commercial structure to be erected, enlarged, structurally altered or moved.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

26.48.025 - Conditional uses.

The following conditional uses may be allowed in the H area commercial district, subject to the provisions of Section 26.80.010;

    A.  Any use eligible to be a conditional use in the G local commercial and office district;

    B.  Commercial use similar to those permitted in Section 26.48.020;

    C.  Any permitted or conditional use which utilizes a sales or service window or facility for customers who are in cars except those carry-out restaurants permitted in Section 26.48.020.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

26.48.030 - Parking and loading regulations.

The parking regulations are the same for uses enumerated in Chapters 26.20 through 26.44 inclusive.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

26.48.040 - Height regulations.

The height regulations are the same as those in the E multiple-family dwelling district.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

26.48.050 - Area regulations.

For dwellings the area regulations are the same as those in the E multiple-family dwelling district. For other buildings the following area regulations only shall be required.

    A.  Front Yard. The front yard regulations are the same as those in the F neighborhood commercial district.

    B.  Side Yard.

        1.  There shall be a side yard having a width of not less than five (5) feet on that side of a lot which adjoins any dwelling district.

2. Where dwelling accommodations are hereafter created above any non-dwelling use there shall be two (2 each of eight (8) feet in width which shall be increased in width six (6) inches for each additional story ab (3rd) story unless every room within that portion of the structure used for dwelling purposes shall open front yard or a rear yard of dimensions as required in the E multiple-family dwelling district.

(Ord. 67607 § 2 (part), 2007: prior: Ord. 59979 § 13 (part), 1986.)

Chapter 26.52 - I CENTRAL BUSINESS DISTRICT

    Sections:

26.52.010 - District regulations.

    The regulations set forth in this chapter or set forth elsewhere in the zoning code and referred to in this chapter are the district regulations in the I central business district.

(Ord. 59979 § 14 (part), 1986.)

26.52.020 - Use regulations.

    A building or premises may be used for any purpose except the following: abattoir; acetylene gas manufacture; acid manufacture, ammonia, bleaching powder or chlorine manufacture: arsenal; asphalt manufacture or refining; automobile body or fender repair shops; automobile salvage yard; bag cleaning (except when the dustless vacuum process is exclusively employed); blast furnace; boiler works; brick, terra cotta or tile manufacture; candle manufacture; carry-out restaurants that sell to customers in cars or who consume the sold products in cars parked on the carry-out restaurant premises, or sell products through a sales window to customers who are in cars, for immediate consumption by the customer either on or off the premises; celluloid manufacture; cement, gypsum, lime or plaster-of-paris manufacture; dextrine, glucose and starch manufacture; distillation of bones, coal or wood; dye stuff manufacture (not including chemical dyes); emery, emery cloth and sand paper manufacture; fat rendering; fertilizer manufacture; fireworks or explosive manufacture or storage; flour and grain milling; forge plant; fuel manufacture; gas manufacture or storage; glass manufacture; glue, gelatin or size manufacture; incineration, reduction or dumping of garbage, dead animals, offal or refuse; iron, brass, copper or steel foundry or works (unless gas or electrically operated); lamp black manufacture, match manufacture; meat packing; motor fuel pumping stations (except where wholly contained within and accessory to a parking garage and providing there are no exterior signs on the premises advertising the motor fuel pumping station location); oilcloth or linoleum manufacture; oiled goods manufactured from raw materials; ore reduction; paint materials manufacture; paper and paper pulp manufacture; petroleum products refining (or wholesale storage thereof); potash or washing soda manufacture; proxylin manufacture; rock crushing; rolling mill; rubber or gutta percha manufacture; salt works; saw mill; smelting or refining of metals; soap manufacture from refuse; stockyard, corral or pen; stone mill or quarry; storage of barrels, bottles, iron, junk, rags or scrap paper; stove or shoe polish manufacture; sugar refining; tanning, curing or storage of green salted hides or skins, or leather dressing or coloring; tar distillation or manufacture; tar roofing or water proofing manufacture; telephone, outdoor pay, if the proposed telephone is located on a lot that is located contiguous with or directly across a street, alley, public or private

easement from a dwelling district; tobacco (chewing) manufacture or treatment; used car lots, car leasing or car rental lots; vinegar, sauerkraut or pickle manufacture; wool pulling or scouring; yeast manufacture; any use which is a nuisance per se.

(Ord. 64167 § 6, 1997: prior: Ord. 59979 § 14 (part), 1986.)

26.52.025 - Conditional uses.

The following conditional uses may be allowed in the I central business district subject to the provisions of Section 26.80.010:

    A.  Telephone, outdoor pay, if the proposed telephone is located on a lot that is located contiguous with or directly across a street, alley, public or private easement from a dwelling district.

(Ord. 64167 § 7, 1997.)

26.52.030 - Parking and loading regulations.

No parking regulations shall be required for this district. Loading regulations are the same for uses enumerated in Chapters 26.20 through 26.48, inclusive.

(Ord. 59979 § 14 (part), 1986.)

26.52.040 - Height regulations.

Buildings may be erected to such height that the cubic contents of said building above the established grade shall not exceed the volume of a prism having a base equal to the projected horizontal area of the building and a height of two hundred (200) feet. In the case of buildings occupying a lot having frontage on intersecting streets and which buildings are so designed as to provide a setback or open space at one (1) corner or corners where such street intersections occur, or when such setback begins below the two hundred (200) foot height above the established grade, the volume determined by the above rule may be exceeded by an amount equal to the volume so taken out of the reference prism of two hundred (200) foot height; provided, however, that the total volume of the actual building shall not exceed by more than twenty-five percent (25%) the volume of said reference prism of two hundred (200) foot height.

(Ord. 59979 § 14 (part), 1986.)

26.52.050 - Area regulations.

There shall be a lot area of not less than two hundred and fifty (250) square feet for each dwelling unit up to and including eight (8) stories or one hundred (100) feet in height; thereafter there shall be provided a lot area of not less than one hundred (100) square feet for each additional dwelling unit above eight (8) stories or one hundred (100) feet in height. Sleeping rooms without cooking facilities shall have a lot area of not less than one hundred (100) square feet each.

(Ord. 59979 § 14 (part), 1986.)

Chapter 26.56 - J INDUSTRIAL DISTRICT

**Sections:**

26.56.010 - District regulations.

The regulations set forth in the chapter or set forth elsewhere in the zoning code and referred to in this chapter are the district regulations in the J industrial district.

(Ord. 59979 § 15 (part), 1986.)

26.56.020 - Use regulations.

The use regulations are the same as those in the I central business district, except that motor fuel pumping stations that meet the site requirements specified in Section 26.40.027 shall be permitted; carry-out restaurants that sell to customers who are in cars or who consume the sold products in cars parked on the carry-out restaurant premises, or sell products through a sales window, to customers who are in cars, for immediate consumption by the customer either on or off the premises that meet the site requirements specified in Section 26.40.026 B1 or 2 as appropriate shall be permitted; and a building or premises may be used for an automobile body, fender repair shop, used car lot, or car leasing or rental lot; and provided further that no building shall be in any case hereinafter erected nor shall any existing building be converted, reconstructed or structurally altered for dwelling purposes except where forty percent (40%) or more of the frontage is occupied by dwellings.

(Ord. 59979 § 15 (part), 1986.)

City Counselor Ops.: 10420

26.56.025 - Conditional uses.

The following conditional uses may be allowed in the J industrial district subject to the provisions of Section 26.80.010:

Telephone, outdoor pay, if the proposed telephone is located on a lot that is located contiguous with or directly across a street, alley, public or private easement from a dwelling district.

(Ord. 64167 § 8, 1997.)

26.56.030 - Parking and loading regulations.

The parking and loading regulations are the same for uses enumerated in Chapters 26.20 through 26.50, inclusive.

(Ord. 59979 § 15 (part), 1986.)

26.56.040 - Height regulations.

The height regulations are the same as those in the E multiple-family dwelling district.

(Ord. 59979 § 15 (part), 1986.)

City Counselor Ops.: 8311

26.56.050 - Area regulations.

The area regulations are the same as those in the E multiple-family dwelling district.

(Ord. 59979 § 15 (part), 1986.)


Chapter 26.60 - K UNRESTRICTED DISTRICT

**Sections:**


26.60.010 - District regulations.

The regulations set forth in this chapter or set forth elsewhere in the zoning code and referred to in this chapter are the district regulations in the K unrestricted district.

(Ord. 59979 § 16 (part), 1986.)

26.60.020 - Use regulations.

In the unrestricted district buildings and premises may be used for any purpose whatsoever not in conflict with any ordinance of the city regulating nuisances or Section 26.60.025, provided that motor fuel pumping stations shall meet the site requirements specified in Section 26.40.027 and carry-out restaurants that sell to customers in cars or who consume the sold products in cars parked on the carry-out restaurant premises, or sell products through a sales window, to customers who are in cars, for immediate consumption by the customer either on or off the premises shall meet the site requirements specified in Section 26.40.026 B 1 or 2 as appropriate. Provided, however, that no building shall be hereafter erected, nor shall any existing building be converted, reconstructed or structurally altered for dwelling purposes.

(Ord. 59979 § 16 (part), 1986.)

26.60.025 - Conditional uses.

The following conditional uses may be allowed in the unrestricted district, subject to the provisions of Section 26.80.010:

    A.  Acid manufacture;

    B.  Cement, lime, gypsum, or plaster-of-paris manufacture;

    C.  Fireworks, exposures, manufacture or storage;

    D.  Fertilizer manufacture and potash refining;

    E.  Fuel manufacture;

    F.  Garbage, offal, or dead animals, reduction or dumping;

    G.  Glue manufacture, fat rendering, or distillation of bones;

    H.  Petroleum refining;

    I.  Salvage storage, wholesaling or retailing;

    J.  Smelting or refining of metals;

K.   Stockyards or abattoir;

L.   Telephone, outdoor pay, if the proposed telephone is located on a lot that is located contiguous with or directly across a street, alley, public or private easement from a dwelling district.

(Ord. 64167 § 9, 1997: prior: Ord. 59979 § 16 (part), 1986.)

26.60.030 - Parking and loading regulations.

The parking and loading regulations are the same for uses enumerated in Chapters 26.20 through 26.56, inclusive.

(Ord. 59979 § 16 (part), 1986.)

26.60.040 - Height regulations.

The height regulations are the same as those in the H area commercial district.

(Ord. 59979 § 16 (part), 1986.)

26.60.050 - Area regulations.

The area regulations are the same as those in the G local commercial and office district.

(Ord. 59979 § 16 (part), 1986.)

Chapter 26.64 - L JEFFERSON MEMORIAL DISTRICT

**Sections:**

26.64.010 - District regulations.

The regulations set forth in this chapter or set forth elsewhere in the zoning code and referred to in this chapter are the district regulations in the L Jefferson Memorial district.

(Ord. 59979 § 17 (part), 1986.)

26.64.020 - Use regulations.

A building or premises may be used for any purpose permitted in the I central business district.

(Ord. 59979 § 17 (part), 1986.)

26.64.030 - Parking and loading regulations.

The loading regulations are the same for uses enumerated in Chapters 26.20 through 26.48, inclusive. No parking regulations shall be required for this district.

(Ord. 59979 § 17 (part), 1986.)

26.64.040 - Height regulations.

The height regulations are the same as those in the I central business district except that in no instance shall any portion of a building or structure including all appurtenances and super structures thereon, exceed a mean sea level elevation of seven hundred fifty-one (751) feet. It shall be unlawful to increase the height of an existing building or other structures located within this district unless it complies with the regulation of the district.

(Ord. 59979 § 17 (part), 1986.)

26.64.050 - Area regulations.

The area regulations are the same as those in the I central business district.

(Ord. 59979 § 17 (part), 1986.)

Chapter 26.66 - BED AND BREAKFAST DISTRICTS

   **Sections:**


26.66.010 - Establishment procedure.

A bed and breakfast district may be established and designated by ordinance in any area which contains one (1) or more contiguous city blocks, or portions of city blocks in the following manner:

   A.  No bed and breakfast district bill shall be introduced in or validly enacted by the Board of Aldermen unless such bill is introduced by the Alderman of the ward within which the area of the proposed district is located or, if such area is within more than one (1) ward, by the Alderman of each such ward.

   B.  Any such bill shall include a description of the boundaries of the proposed district; the city block numbers of those city blocks or portions of city blocks within the proposed district; and an exhibit depicting a general location map of the proposed district; provided, however, that any such proposed district must contain at least one complete city block.

   C.  For the purposes of this section, the words "contiguous city blocks, or portions of city blocks" means those city blocks numbered by the city which are immediately across a right-of-way from another city block or immediately adjacent diagonally across an intersection of rights-of-way from another city block.

   D.  After any such bill is introduced in the Board of Aldermen and assigned to the Board's appropriate standing committee, said bill shall not be voted upon by the Board of Aldermen until a public hearing on said bill has been held by said committee. The area to be included in such a proposed bed and breakfast district shall be posted with notice of the public hearing in at least two places on each block within the proposed district no less than seven (7) days prior to the public hearing.

(Ord. 62589 § 1, 1992.)

26.66.020 - Declaration—Filing of copies.

Upon passage of a bed and breakfast district bill by the Board of Aldermen and approval by the Mayor, the area described within the boundaries contained within the bill shall be declared and established a bed and breakfast district, and the Clerk of the Board of Aldermen shall forthwith file a copy of same with the Board of Public Service and with the

Zoning Administrator, who shall maintain a plat of the bed and breakfast district.

(Ord. 62589 § 2, 1992.)

26.66.030 - Effect of district designation.

    A.  No person shall own, operate or maintain a bed and breakfast homestay, a bed and breakfast guesthouse, or a bed and breakfast inn within any bed and breakfast district, as set forth in this chapter, without first obtaining a permit from the Board of Public Service and a graduated business license from the License Collector; provided, however, that notwithstanding the provision of any other ordinance, no such person shall be required to file a plat and neighborhood consent petition as a condition for a bed and breakfast establishment permit or license.

    B.  Notwithstanding the provision of any use regulations for any zoning district, any building or premises within a bed and breakfast district may be used for the purposes of a bed and breakfast establishment as a use by right; provided said building or premises meets and maintains the requirements established in Section Three of Ordinance 62566 (B.B. 355); and provided further that no person shall own, operate, manage or maintain a bed and breakfast establishment that violates the rules, regulations and requirements of said Section Three of Ordinance 62566 (B.B. 355).

    C.  The Board of Public Service shall in writing immediately notify the Aldermen of the ward in which any proposed bed and breakfast establishment would be located of the filing of any occupancy permit or license application, and a separate written notice of the time, place and date of the meeting at which the Board of Public Service will consider such application.

(Ord. 62589 § 3, 1992.)

26.66.040 - License approval—Generally.

If the Board of Public Service finds that the applicant in a Bed and Breakfast District meets all the requirements of the Ordinances of the City, the Board shall approve the issuance of a license to the applicant, permitting him to conduct such business for a period of one year from the date of issuance of the license, unless the license is revoked or canceled for cause before the expiration of such time.

(Ord. 62589 § 4, 1992.)

26.66.050 - Protests against licenses or applications—When and how initiated.

    A.  A protest against issuance, renewal or continuation of a bed and breakfast establishment license issued pursuant to this chapter all be initiated by submission to the Board of Public Service of a written letter of protest signed by either ten (10) or more persons residing or conducting business, or ten (10) or more persons owning property, within a petition circle of the establishment which is the subject of the protest. Said petition circle shall be determined by drawing a circle with a radius of three hundred fifty feet (350') plus one-half the width of the front of the premises from the center of the premises projected to the streets. A person shall be considered to reside within the petition circle of a premises for which an application for bed and breakfast establishment has been submitted to the Board of Public Service if: (1) his domicile is within the petition circle; and (2) he is registered to vote from an address within the petition circle on the date on which an application is filed. A person shall be considered to conduct a business within the petition circle if he is

engaged in any business or professional activity on the main or surface floor of a building and if he leases or rents space for such purpose, or owns property used for such purpose, within the petition circle. Where a corporation is conducting business within the petition circle, the signature of the local managing officer shall, for purposes of this chapter, be considered the signature of a person conducting business within the petition circle. If there are less than twenty (20) property owners within the petition circle of a licensed premises or proposed licensed premises, a protest may be initiated against the license for such premises by a protest letter signed by a majority of property owners within the petition circle. If there are less than twenty (20) persons residing or conducting business within the petition circle of a licensed premises or proposed licensed premises, a protest may be initiated against the license for such premises by a protest letter signed by a majority of the persons residing or conducting business within the petition circle. Such letter shall contain the name and address of the licensed premises or proposed licensed premises which is the subject of the protest, the type of license being protested, and the name of the person who shall serve as the protest representative. Upon verifying that there are sufficient signatures on the protest letter to initiate a protest, the Secretary of the Board of Public Service shall issue protest petitions to the protest representative. He shall also notify the licensee or applicant whose license or application is the subject of the protest, the Alderman for the ward in which the licensed premises is or would be located and the police department that a protest has been initiated against the license or application. Such notice shall contain an explanation of the protest procedures as established by this chapter and title, and by the rules and regulations of the Board of Public Service. If the protest is against renewal or continuation of a license notice shall be served at the licensed premises upon either the licensee or any employee, agent or servant of the licensee found upon the licensed premises. If the protest is against an application for a license, service of the notice shall be made by sending the notice by registered United States mail, return receipt requested, to the address given by the applicant on the license application submitted to the Board of Public Service.

B. A protest shall not be initiated against renewal more than 45 days, nor less than 14 days, prior to the date on which the existing license for the premises which is the subject of the protest is scheduled to expire. A protest may be initiated against continuation of a license at any time during the term of the license, however, any protest letter submitted to the Board of Public Service less than 45 days prior to the date on which the existing license for the premises which is the subject of the protest is scheduled to expire shall be treated as a protest against renewal of the license. A protest may be initiated against an application for issuance of a license at any time up to the time set for the hearing on such application. The application hearing shall not be postponed because of the filing of a protest against such application; however, the Board of Public Service shall make no decision concerning whether to issue the license applied for until after the conclusion of the protest hearing provided for by the provisions of this chapter. No protest may be initiated against the continuation of a license for a period of six months after the Board has denied, after a hearing, a previous protest against such license.

(Ord. 62589 § 5, 1992.)

26.66.060 - Protest petitions—Contents—Time for collection of signatures.

A. The Board of Public Service shall promulgate a protest petition form. There shall be a heading on each page of the petition which shall: (1) identify by trade name and address the licensed premises or proposed licensed premises which is the subject of the protest; (2) give the name of the licensee or applicant; (3) state that persons signing the petition are supporting the protest filed against the license or application of the

licensee or applicant for the premises named on the petition; and (4) contain such additional information as may be required under the rules and regulations of the Board. No signature appearing on a protest petition shall be considered valid unless the name and address of the person who signed the petition is printed on the face of the petition next to his signature.

B. The Board of Public Service shall not, except for good cause shown, accept any protest petition submitted more than thirty days from the date on which the protest petitions were issued to the protest representatives; except that where the thirtieth day after the date on which the protest petitions were issued falls on a Saturday, Sunday or holiday, the Board shall accept protest petitions filed on the next working day thereafter.

(Ord. 62589 § 6, 1992.)

26.66.070 - Hearing on protest—Notice—Procedure.

A. After the last date on which protest petitions may be submitted, the Board shall fix a date for a hearing on the protest. Such hearing shall be held not less than twenty, nor more than thirty, days following the last date on which protest petitions may be submitted. The Board shall have power to continue the hearing for good cause. The Board shall not schedule a hearing for a protest against continuation of a license, and shall summarily dismiss such protest where no protest petitions are submitted to him prior to the closure date for submission of protest petitions.

B. The Board shall, at least ten days prior to the date on which the protest hearing is scheduled, cause notice of the time, place and date of the hearing to be served on the licensee or applicant whose license or application is the subject of the protest. If the protest is against renewal or continuation of a license, notice of the protest hearing shall be served at the licensed premises upon either the licensee or any employee, agent or servant of the licensee found upon the licensed premises. If the protest is against an application for a license, service of the notice shall be made by sending the notice by registered United States mail, return receipt requested, to the address given by the applicant on the license application submitted to the Board of Public Service. The Board shall also, at least ten days prior to the date on which a protest hearing is scheduled, cause notice of the time, place and date of such hearing to be served upon the protest representative, the Alderman of the ward in which the licensed premises is or would be located, and the police department. Service of the notice upon the protest representative shall be made by sending the notice by registered United States mail, return receipt requested, to the address given by the protest representative on the written letter of protest. In addition, the Board shall cause a placard containing the words "HEARING ON PROTEST AGAINST BED AND BREAKFAST ESTABLISHMENT LICENSE IN THIS BLOCK," printed in bold black letters at least 1 ½ inches in height, to be placed at each end of the block on the side of the street where the licensed premises or the proposed licensed premises which are the subject of the protest hearing is or would be located, unless such placement is not possible. If it is not possible to place said placards in the manner specified in the previous sentence, the person posting the placards shall place the placards in such manner as to give the greatest notice to passersby of the protest hearing. Said placards shall specify in clear and legible lettering the time, place and date of the hearing, the trade name and address of the licensed premises or premises proposed to be licensed, the name of the licensee or applicant whose license or application is the subject of the protest, and the type of license which is the subject of the protest. Neither the protest representative nor anyone else signing a protest letter or petition shall be liable for the costs of said placarding.

C. At the protest hearing, both the protest representative and the licensee or applicant whose license or

application is the subject of the protest shall be entitled to produce testimony under oath and to be represented by counsel, and the Board shall have the power, on his own motion, to subpoena witnesses and to take testimony under oath pertaining to all matters connected with the protest. The Alderman for the ward in which the premises which is the subject of the protest is located, together with the police department, shall have the right to be heard at the hearing.

D.  The protest hearing shall be a bifurcated proceeding. During the first phase of the hearing, the Board shall consider evidence concerning whether the protest petitions submitted to him contain the signatures of a valid majority of either: (1) persons residing or conducting business within the petition circle of the licensed premises or proposed licensed premises which is the subject of the protest; or (2) persons owning property within said petition circle. The Board shall also consider during the first phase of the hearing any testimony offered concerning the sufficiency of the written protest letter which initiated the protest, including, but not limited to, evidence concerning whether the letter contained sufficient signatures to initiate the protest. After conclusion of the first phase of the hearing the Board shall make a decision as to whether the protest petitions submitted to him contain a valid majority of either persons residing or conducting business, or persons owning property, within the petition circle. He need not, prior to initiation of the second phase of the hearing, make any determination as to the sufficiency of the written protest letter. During the second phase of the hearing, the Board shall consider evidence concerning whether issuance, renewal or continuation of the license which is the subject of the protest would be detrimental to the neighborhood in which the licensed premises is or would be located.

(Ord. 62589 § 7, 1992.)

26.66.080 - Protests—Necessity of majority of signatures on petition protecting continuation of license—Effect.

A.  A protest against continuation of a license may only be sustained by the Board if the protest petitions submitted to it to protest such continuation contain the signatures of either a majority of the persons residing or conducting business within the petition circle of the licensed premises which is the subject of the protest or a majority of the persons owning property within such petition circle. If, after the first phase of the hearing is completed, the Board determines that the protest petitions submitted to it in protest of continuation of a license contain the signatures of neither a majority of the persons residing or conducting business within the petition circle of the licensed premises which is the subject of the protest nor a majority of the persons owning property within such petition circle then it shall deny the protest and shall not consider evidence of whether continuation of the license would be detrimental to the neighborhood in which the licensed premises is located.

B.  If the Board determines, after the first phase of the hearing is completed, that protest petitions submitted to it to protest an application for a license contain the signatures of either a majority of the persons residing or conducting business within the petition circle of the proposed licensed premises which is the subject of the protest or a majority of the persons owning property within such petition circle, then the Board shall sustain the protest and refuse to grant the license applied for, regardless of any evidence concerning detriment to the neighborhood.

(Ord. 62589 § 8, 1992.)

26.66.090 - Protests—Allocation of burden of proof—Grounds for sustaining protests—Effect of sustaining protest.

A.  If the Board determines after the first phase of the protest hearing that the protest petitions submitted to it con
    signatures of either: (1) a majority of the persons residing or conducting business within the petition circle of the
    licensed premises which is the subject of the protest; or (2) a majority of the persons owning properly within suc
    petition circle, it shall sustain the protest unless the licensee shows by a preponderance of the evidence submitt
    the hearing that renewal or continuation of the license would not be detrimental to the neighborhood in which
    licensed premises is located. If the Board determines after the first phase of the protest hearing that the protest
    petitions submitted to it do not contain the signatures of either a majority of the persons residing or conducting
    business within the petition circle of the licensed premises which is the subject of the protest or a majority of th
    persons owning property within such petition circle, the Board shall deny the protest, unless the protestors sho
    preponderance of the relevant evidence submitted at the hearing that issuance or renewal of the license would
    detrimental to the neighborhood in which the licensed premises is or would be located.

B.  If the Board sustains a protest against issuance of a license it shall refuse to grant such license to the person
    applying therefor. If it sustains a protest against renewal of a license such license shall not be revoked, but
    the Board shall refuse to renew such license after it expires. If the Board sustains a protest against
    continuation of a license it shall cancel such license effective one month after any decision is filed upholding
    such protest. If the license expires by operation of law before it can be cancelled it shall not be renewed.

(Ord. 62589 § 9, 1992.)

26.66.100 - Extension of protested license.

Where a protest has been filed against continuation or renewal of a license and the license expires prior to a
decision by the Board on the protest, the Board shall grant an extension of the license. If the Board sustains a protest,
the extension shall expire on the date on which the decision on the protest is issued.

(Ord. 62589 § 10, 1992.)

26.66.110 - Withdrawal of signatures from protest petitions.

Any person who has signed a protest petition against the issuance, continuation, or renewal of a license may
withdraw his signature from such petition by submitting a letter to the Board requesting withdrawal in person at the
hearing. The Board may also allow a person to withdraw his signature from a protest petition if it finds, based upon a
preponderance of evidence, that the circulator of a petition threatened or coerced such person or that the circulator
made a material misrepresentation of fact concerning the licensed premises or proposed licensed premises to such
person.

(Ord. 62589 § 11, 1992.)

Chapter 26.68 - COMPREHENSIVE SIGN CONTROL REGULATIONS

26.68.010 - Scope of chapter.

These regulations shall govern and control the erection, remodeling, enlarging, moving, operation and maintenance
of all signs by conforming uses within all zoning districts. Nothing herein contained shall be deemed a waiver of the
provisions of any other ordinance or regulation applicable to signs. Signs located in areas governed by several

ordinances and/or applicable regulations shall comply with all such ordinances and regulations.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.015 - Purpose.

In interpreting and applying the provisions of the sign regulations of the zoning code, they shall be held to the minimum requirements for the promotion of the public health, traffic safety and convenience, comfort, prosperity, aesthetics and general welfare.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.020 - Definitions.

For the purpose of this chapter the following terms, phrasing, words and their deviations shall have the meaning given herein:

1. Animation or animated sign. "Animation or animated sign" means any sign or part of a sign which changes physical position by any movement or rotation, including electronic and video display changed by remote or automatic means.

2. Area of sign. The area of a sign shall be measured in conformance with the regulations as herein set forth provided that the structure or bracing of a sign shall be omitted from measurement unless such structure or bracing is made part of the message or face of the sign. Where a sign has two faces at a right angle to the building or street, the area of one face shall determine the area of the sign. Where a sign has two faces not at a right angle to the building or street or has three or more faces, the area of all faces shall determine the area of the sign.

   a. Signs with backing. The area of all signs with backing or a background, material or otherwise, that is part of the overall sign display shall be measured by determining the sum of the areas of each square, rectangle, triangle, portion of a circle or any combination thereof which creates the smallest single continuous perimeter enclosing the extreme limits of the display surface or face of the sign including all frames, backing, face plates, nonstructural trim or other component parts not otherwise used for support.

   b. Signs without backing. The area of all signs without backing or a background, material or otherwise, that is part of the overall sign display shall be measured by determining the sum of the area of each square, rectangle, triangle, portion of a circle or any combination thereof which creates the smallest single continuous perimeter enclosing the extreme limits of each work, written representation (including any series of letters), emblems or figures of similar character including all frames, face plates, nonstructural trim or other component parts not otherwise used for support.

   c. All other signs or combinations thereof. The area of any sign having parts both with and without backing shall be measured by determining the total area of all squares, rectangles, triangles, portions of a circle of any combination thereof constituting the smallest single continuous perimeter enclosing the extreme limits of any of the following combinations: the display surface or face of the sign including all frames, backing, face plates, nonstructural trim or other component parts not otherwise used for support for parts of the sign that have backing and each words, written representation

(including any series of letters), emblems or figures or a similar character including all frames, face plates, nonstructural trim or other component parts not otherwise used for support for parts of the sign having no backing.

3. Building front. "Building front" means that exterior wall of a building facing the front line of a premises.

4. Display surface or face. "Display surface or face" means the area made available by the sign structure for the purpose of displaying the message.

5. Distance of sign projection. "Distance of sign projection" means the distance from the exterior wall surface of the building to the display face of a wall sign.

6. Electronic message center. "Electronic message center " means a sign or device capable of displaying letters, numbers, words, symbols, figures or images, including graphics, that can be electronically, digitally or mechanically changed by remote or automatic means. This definition includes what is commonly referred to as a "digital" sign or device.

7. Exterior wall surface. "Exterior wall structure" means the most exterior part of a wall, sun screen or any screening or material covering a building.

8. Flashing signs. "Flashing sign" means any directly or indirectly illuminated sign either stationary or animated, which exhibits changing natural or artificial light or color effects by any means whatsoever, including blinking, fluctuating scrolling or fading.

9. Ground sign. "Ground sign" means a sign supported by poles, uprights or braces extending from the ground or an object on the ground but not attached to any part of any building. Height measurement for ground signs shall be from the grade level or the level of the abutting roadway whichever is higher.

10. Illuminated sign. "Illuminated sign" means a sign lighted by or exposed to artificial lighting either by lights on the sign or within the sign or directed towards the sign.

    a. Concealed light source. Internal and external lighting, such as neon tubing, flood lights, thin line and gooseneck reflectors are permitted provided the light source is directed upon the face of the sign and is effectively shielded so as to prevent beams or rays of light from being directed toward any person facing such sign or device upon any public way or street and shall not be of such intensity so as to cause glare or impair the vision of any person upon any public way or street or adjoining premises. Neon tubing shall be enclosed in channels or covered by plastic faces.

    b. Exposed light source. Internal and external lighting, such as neon tubing and lamps are permitted, provided the intensity of such lighting shall not cause glare or impair the visions of any person, facing such sign or device, upon any public way, street or adjoining premises.

11. Joint identification sign. "Joint identification sign" means a sign which serves as a common or collective identification for two (2) or more businesses or industrial uses on the same premises.

12. Marquee sign. "Marquee sign" means a sign on or attached to a permanent overhanging shelter that projects from the face of a building and is supported entirely by the building and which sign is painted on or erected against the marquee. Said such signs shall not exceed seven (7) feet in height nor shall they project below the face of the marquee nor lower than ten (10) feet above the sidewalk. A marquee sign may extend the full length but in no case shall it project beyond the ends of the marquee.

13. On-premises signs. "On-premises sign" means a sign relating to products, goods, services or uses which are conducted, sold, manufactured, produced, offered or occurs on the same premises as the sign.

14. Outdoor general advertising device. "Outdoor general advertising device" means a device maintained by

advertising agencies which advertises products of their customers or clients, and all business signs individually or privately owned which are not on the premises of the owner or place of business to which they apply, including wall signs and those otherwise attached to buildings and structures or devices, as well as those not attached to buildings and supported by uprights or braces on the ground.

15. Projecting sign. "Projecting sign" means a sign attached to a building at an angle, provided:

   a. There is no more than one such sign for each entrance door to a business establishment;

   b. It projects no more than five (5) feet from the building;

   c. The sign advertises a use which occupies at least eighteen (18) feet of sign frontage;

   d. The bottom of the sign is at least ten (10) feet from grade and its top is no higher than whichever of the following is highest: forty (40) feet above grade, or the height of the building at the building line; and

   e. No support for a sign shall extend above the cornice line of a building to which it is attached.

The area of a projecting sign is included in the gross area of all allowable signs of the applicable zoning district except ground signs. Only one side of a projecting sign shall be counted in computing the total square feet of a sign.

16. Roof line. "Roof line" means the highest point on any building where an exterior wall encloses usable floor area including floor area provided for housing mechanical equipment.

17. Roof sign. "Roof sign" means an on-premises sign which projects above the roof line or is located on the roof of a building or structure.

18. Sign. "Sign" means any object or device or part thereof situated outdoors which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business product, service, event, or location by any means including words, letters, figures, designs, symbols, fixtures, colors, motion, illumination or projected images.

19. Sign with backing. "Sign with backing" means any sign that is displayed upon, against or through any material or color surface or backing that forms an integral part of such display and differentiates the total display from the background against which it is placed.

20. Sign without backing. "Sign without backing" means any word, letter, emblem, insignia, figure or similar character or group thereof, that is neither backed by, incorporated in or otherwise made part of any larger display area.

21. Sign frontage. "Sign frontage" means the length along a ground floor building front, facing a street or a private way accessible from a street, which is occupied by a separate and distinct use or by the same use which occupies the front of said building.

22. Street front. "Street front" means any boundary line of a premises or parcel of land that runs parallel to and within twenty (20) feet of the right-of-way of a street or highway designated and assigned an individual name or number by the legislative action of the municipality.

23. Street property line. "Street property line" means a common boundary between private property and a dedicated street or alley.

24. Temporary sign. "Temporary sign" means any exterior sign or advertising display constructed of cloth, canvas, fabric, plywood, metal or other material intended to be displayed for a short period of time not in excess of six (6) months.

25.  Wall sign. "Wall sign" means a sign attached to, painted on, or erected against a wall or parapet wall of a bui
     structure which extends no more than twenty-four (24) inches from the wall surface upon which it is attache
     whose display surface is parallel to the face of the building to which the sign is attached.

26.  Wind sign. "Wind sign" means any sign in the nature of a series of two (2) or more banners, flags,
     pennants or other objects or material which call attention to a product or service fastened in such a
     manner as to move upon being subjected to pressure by wind or breeze.

27.  Window sign. "Window sign" means a sign which is applied or attached to, or located within three (3) feet
     of the interior of a window, which sign can be seen through the window from the exterior of the
     structure.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.030 - Reserved.

26.68.050 - Reserved.

26.68.055 - Signs on vacant City or Land Reutilization Authority of the City of St. Louis-owned properties.

A.  Notwithstanding to the contrary any ordinance, statute, or legal authorization from the City or Land
    Reutilization Authority, respectively, the placement of any sign on any building or structure owned by the City
    or the Land Reutilization Authority which is vacant or unoccupied, on any traffic control device or signal or on
    any utility pole is prohibited.

B.  Notification of Violation—Removal Required. Upon receiving a complaint from any person that a sign or
    advertisement has been placed in violation of this chapter, the Building Commissioner shall issue a notice to
    the person, partnership or corporation whose name appears on such sign or advertisement requiring such
    person, partnership or corporation to remove the signage within fifteen (15) days of the date of the notice.
    Failure to remove the signage with this period of times shall constitute a violation of this section.

C.  Penalty for Violation. Any person who is found guilty or who enters a plea of guilty to a violation of this
    section shall be punished by a fine of not more than $500.00 or by imprisonment of not more than ninety
    (90) days or by both a fine and imprisonment.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.060 - Permits required in all districts.

No person shall erect a sign not described herein above until a building permit for said sign has been issued by the
Building Commissioner stating that said proposed sign complies with the rules and regulations described herein below
relating to signs. In addition to other information with regard to said sign as may be required by the Building
Commissioner, the applicant must provide a glossy 8" × 10" photograph(s) of the premises where the sign is proposed
which adequately shows all existing signs on the premises, and all pertinent information needed to properly review the
application as requested by the Building Commissioner. If said sign complies with the herein below rules and
regulations, the permit may be issued by the Building Commissioner if said sign also complies with all applicable

provisions of the Building Code of the City; if said sign fails to comply with the rules and regulations set out herein below said permit shall not be issued, regardless of whether said sign complies with all provisions of the Building Code of the City.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.070 - Signs in historic districts.

No sign shall be erected within a district which has been zoned an historic district, unless said sign meets and satisfies an requirements of the applicable historic district ordinance and accompanying development plan, which ordinance has been approved by the Board of Aldermen and the Mayor of the City.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.080 - Signs in zone districts A, B, C, D, and E.

A. General. On premises signs may be erected, altered and maintained only for and by a conforming use in the district in which the signs are located; shall be located on the same premises as the conforming use and shall be clearly incidental, customary as commonly associated with the operation of the conforming use provided, however, that no sign of any type shall be erected or maintained for or by a single unit dwelling.

B. Permitted Contents. Identification by letter, numeral, symbol or design of the conforming use by name, use, hours of operation, services offered and events.

C. Permitted Sign Types. Wall, window and ground.

D. Permitted Maximum Number. One (1) sign for each front line of the premises on which the conforming use is located.

E. Permitted Maximum Sign Area.

1. Hotel and Motel. No one sign shall exceed thirty (30) square feet.

2. All other uses. Total signage shall not exceed thirty (30) square feet.

F. Permitted Maximum Height.

1. Wall and Window Signs. The roof line of the building to which the sign is attached.

2. Ground Signs. Six (6) feet above grade.

G. Permitted Location.

1. Wall and Window Signs. Shall be set back from the boundary lines of the premises on which they are located, the same distance as a building containing a conforming use; provided, however, wall signs may project into the required setback space the permitted depth of the sign;

2. Ground Signs. Shall be set in at least ten (10) feet from every boundary line of the premises or shall be set in on a line parallel with the exterior line of any building on the said premises.

H. Permitted Illumination. May be illuminated but only from a concealed light source, shall not remain illuminated between the hours of 12:00 a.m. and 6:00 a.m., and shall not flash, blink, fade, scroll or fluctuate.

I. Animation. Shall not be animated.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.090 - Signs in zone district F.

A. General. On premises signs may be erected, altered or reconstructed only for and by a conforming use in the district in which the signs are located; shall be located on the same property as the conforming use and shall be clearly incidental, customary and commonly associated with the operation of the conforming use; provided, however, that no sign of any type shall be erected or maintained for or by a single unit dwelling except signs identifying home occupations.

B. Permitted Contents. Identification by letters, numeral, symbol or design of the conforming use, by name, use, hours of operation, services offered and events.

C. Permitted Sign Types. Wall, window, ground, marquee and roof signs are permitted. Projecting signs that comply with the provisions in the definition section, designated as Section 26.68.020(15)(a—e), are permitted.

D. Permitted Maximum Sign Area.

  1. Hotel and Motel. No one sign shall exceed two hundred (200) square feet.

  2. All Other Uses. The total area in square feet of all on-premises signs on a sign frontage, except for free-standing signs shall not exceed:

| Average Distance of Sign from Center Line of Abutting Street | Sign Frontage Multiplied by |
|---|---|
| Less than 100 | 2* |
| 100—399 | 4 |
| 400 and over | 5 |

* Excepting that a use with less than twenty-five (25) feet of sign frontage may have a maximum of fifty (50) square feet of on-premises signs.

  3. The distance of a sign on or under a canopy, marquee or awning from the center line of an abutting street shall be constructed to be the same as if such sign were attached to the building to which the said canopy, marquee or awning is attached.

  4. If the first floor of a building is substantially above street grade and the basement is only partially below street grade, separate occupants of each level may each have one-half (½) the square feet of signage to which use would be entitled if it were a single ground floor use.

  5. If a building fronts on two (2) or more streets, the sign area for each street frontage shall be computed separately.

  6. If the ground sign has two (2) faces the area of each face shall not exceed seventy-five (75) square feet; if a ground sign has more than two (2) faces the total of all faces shall not exceed one hundred fifty (150) square feet. A premise with a front line of two hundred (200) feet or more may have two (2) ground signs.

E. Permitted Maximum Height.

1.  Wall and Window Signs. The roof line of the building to which the sign is attached.

2.  Ground Signs. Shall not exceed thirty (30) feet above grade.

3.  Roof Signs. Including the supporting structures fifty percent (50%) of the building height on which they are erected but a maximum height of five (5) feet above roof line, or parapet wall if it is higher than the roof line. Further, there must be a clear space of not less than four (4) feet between the lowest part of the sign and roof level, except for necessary structural supports, if sign is over one hundred (100) square feet in size. If such clearance is necessary said sign cannot exceed nine (9) feet above roof line or parapet wall. If sign is less than one hundred (100) square feet no such clearance is necessary.

F.  Permitted Location.

1.  Wall and Window Signs. Shall be set in from the boundary lines of the premises on which it is located, the same distance as a building containing a conforming use; provided, however, wall signs may project into the required setback space the permitted depth of the sign.

2.  Ground Signs. Shall be set in at least three (3) feet from every boundary line of the premises.

G.  Permitted Illumination. Concealed or exposed light source. No sign shall be illuminated that it interferes with the effectiveness of an official traffic sign, signal or device; illumination shall not flash, blink, fade, scroll or fluctuate.

H.  Animation. Shall not be animated.

(Ord. No. 69198, § 4, 7-18-2012.)


26.68.100 - Signs in zone districts G and H.

A.  General. On premises signs may be erected, altered or reconstructed only for and by a conforming use in the district in which the signs are located; shall be located on the same premises as the conforming use; and shall be clearly incidental, customary and commonly associated with the operation of the conforming use.

B.  Permitted Contents. Identification by letter, numeral, symbol and design of the conforming use by name, use, hours of operation, services and products offered, events and prices of products and services.

C.  Permitted Sign Types. Wall, window, ground, marquee and roof signs are permitted. Projecting signs that comply with the provisions in the definition section, designated as Section 26.68.020(15)(a—e), are permitted.

D.  Permitted Maximum Sign Area.

1.  Hotels and Motels. On premises having a linear street frontage of one hundred (100) feet or less: one hundred (100) square feet; on premises having a linear street frontage of more than one hundred feet: one (1) square foot of street front; provided, however, computations shall be made and sign area shall be made and sign area shall be determined on each street front separately, and provided, further, that in no event shall more than three hundred (300) square feet of sign area be applied to any one (1) street front and no sign shall exceed three hundred (300) square feet in size.

2.  All Other Uses. The total area in square feet of all on-premises signs on a sign frontage, except for free-standing signs, shall not exceed:

| Average Distance of Sign from Center Line of Abutting Street | Sign Frontage Multiplied by |
|---|---|

| Less than 100 | 3* |
| 100—399 | 4 |
| 400 and over | 5 |

* Excepting that a use with less than twenty-five (25) feet of sign frontage may have a maximum of fifty (50) square feet of on-premises signs.

3. The distance of a sign on or under a canopy, marquee and awning from the center line of an abutting street shall be construed to be the same as if such sign were attached to the building to which the said canopy, marquee or awning is attached.

4. If the first floor of a building is substantially above street grade and the basement is only partially below street grade, separate occupants of each level may each have one-half (½) the square feet of signage to which use would be entitled if it were a single ground floor use.

5. If a building fronts on two (2) or more streets, the sign area for each street frontage shall be computed separately.

6. If the ground sign has two (2) faces the area of each face shall not exceed one hundred (100) square feet; if a ground sign has more than two (2) faces the total of all faces shall not exceed two hundred (200) square feet. A premises with a front line of two hundred (200) feet or more may have two (2) ground signs.

E. Permitted Maximum Height.

1. Wall and Window Signs. The roof line of the building to which the sign is attached.

2. Ground Signs. Shall not exceed thirty (30) feet above grade.

3. Roof Signs. Including the supporting structures fifty percent (50%) of the building height on which they are erected but a maximum height of ten (10) feet above roof line, or parapet wall if it is higher than the roof line. Further, there must be a clear space of not less than four (4) feet between the lowest part of the sign and the roof level, except for necessary structural supports, if sign is over one hundred (100) square feet in size. If such clearance is necessary said sign cannot exceed fourteen (14) feet above roof line or parapet wall. If sign is less than one hundred (100) square feet no such clearance is necessary.

F. Permitted Location. Ground signs shall be set in at least three (3) feet from every boundary line of the premises. Provided, however, wall signs may project into the required setback space the permitted depth of the sign.

G. Permitted Illumination. Concealed or exposed light source. No sign shall be illuminated that it interferes with the effectiveness of an official traffic sign, signal or device. Illumination shall not flash, blink, fade, scroll or fluctuate.

H. Animation. May be animated unless the Building Commissioner shall determine that animation will constitute a distraction to traffic or a source of undue annoyance to adjoining uses.

I.  Joint Identification Signs. Subject to the conditions hereinafter set forth and upon application to and issuance by the Building Commissioner of a sign permit therefor, joint identification signs are permitted for three (3) or more conforming uses on the same premises as the sign, excluding parking. The following joint identification signs are in addition to all other signs:

1.  Permitted Sign Types of Joint Identification Signs. Wall and ground.

2.  Permitted Maximum Number of Joint Identification Signs. One (1) sign for each front line of the premises.

3.  Permitted Area of Joint Identification Signs. The greater number of the following: (1) one hundred (100) square feet or (2) two (2) square feet of sign area for each linear foot of street frontage on the premises; provided, however, that the total area of all signs on each front line of the premises shall not exceed two hundred (200) square feet.

4.  Permitted Maximum Height Above Grade of Joint Identification Signs. Thirty-five (35) feet.

5.  Permitted Location of Joint Identification Signs. Shall be set in at least three (3) feet from every boundary line of the premises.

6.  Permitted Illumination of Joint Identification Signs. May be illuminated but shall not flash, blink, fade, scroll or fluctuate and shall only be illuminated by a concealed or exposed light source.

7.  Animation of Joint Identification Signs. Shall not be animated.

(Ord. No. 69198, § 4, 7-18-2012.)


26.68.110 - Signs in zone districts J and K.

A.  General. On premises signs may be erected or altered and reconstructed only for and by a conforming use in the district in which the signs are located; shall be located on the same premises as the conforming use and shall be clearly incidental, customary and commonly associated with the operation of the conforming use.

B.  Permitted Contents. Identification by letter, numeral, symbol or design of the conforming use by name, use, hours of operation, services and products offered, events and prices of products and services.

C.  Permitted Sign Types. Wall, window, roof, projecting, marquee ground and electronic message center signs, provided such electronic message center signs meet the following criteria;

1.  The sign shall not flash, blink, fade, scroll, fluctuate or have animation and shall only be illuminated by a concealed or exposed light source.

2.  Each message on the sign shall be displayed for a minimum of five (5) minutes.

3.  The sign shall not be located within five hundred (500) feet of any premises used as a dwelling unit or zoned residential.

4.  Only one (1) such sign shall be allowed and the electronic message center portion of such sign size shall not exceed ten (10) square feet per side and no letter or numeral on any sign shall exceed ten (10) inches by 14 (fourteen) inches in size. No sign shall have more than two sides.

D.  Permitted Maximum Sign Area. The total area in square feet of all on premises signs on a sign frontage, except for free-standing signs shall not exceed:

| Average Distance of Sign from Center Line of Abutting Street | Sign Frontage Multiplied by |
|---|---|
| Less than 100 | 4* |
| 100—399 | 5 |
| 400 and over | 6 |

* Excepting that a use with less than twenty-five (25) feet of sign frontage may have a maximum of fifty (50) square feet of permanent signs.)

1. The distance of a sign on or under a canopy, marquee or awning from the center line of an abutting street shall be construed to be the same as if such sign were attached to the building to which the said canopy, marquee or awning is attached.

2. If the first floor of a building is substantially above street grade and the basement is only partially below street grade, separate occupants of each level may each have one-half (½) the square feet of signage to which use would be entitled if it were a single ground floor use.

3. If a building fronts on two (2) or more streets, the sign area for each street frontage shall be computed separately.

4. If the ground sign has two (2) faces the area of each face shall not exceed one hundred twenty-five (125) square feet; if a ground sign has more than two (2) faces the total of all faces shall not exceed one hundred fifty (150) square feet. A premise with a front line of two hundred fifty (250) feet or more may have two (2) ground signs.

5. Roof signs shall be limited to one (1) per building except in the case of a group of buildings under the same ownership, one (1) per building group.

E. Permitted Maximum Height.

1. Wall and Window Signs. The roof line of the building to which the sign is attached.

2. Ground Signs. Fifty (50) feet above grade.

3. Roof Signs. Including the supporting structures fifty percent (50%) of the building height on which they are erected but a maximum height of thirty-five (35) feet above roof line, or parapet wall if it is higher than the roof line. Further, there must be a clear space of no less than four (4) feet between the lowest part of the sign and the roof level, except for necessary structural support, if sign is over one hundred (100) square feet in size. If such clearance is necessary said sign cannot exceed thirty-nine (39) feet above roof line or parapet wall. If sign is less than one hundred (100) square feet no such clearance is necessary.

F. Permitted Location.

1. Wall and Window Signs. Set back from the boundary lines of the premises on which it is located, the same

distance as a structure containing a conforming use provided, however, wall signs may project into the required setback space and permitted depth of the sign.

2. Ground Signs. Any location provided that the sign is at least three (3) feet from any boundary line of the premises on which the conforming use is located.

G. Permitted Illumination. May be illuminated but shall not flash, blink, fade, scroll or fluctuate and shall be illuminated by a concealed or exposed light source.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.120 - Signs in zone districts I and L.

A. General. Signs may be erected, altered and maintained only for and by a conforming use in the district in which the signs are located; shall be located on the same premises as the conforming use and shall be clearly incidental, customary and commonly associated with the operation of the conforming use.

B. Permitted Contents. Identification by letter, numeral, symbol or design of the conforming use by name, use, hours of operation, services and products offered, events and prices of products and services.

C. Permitted Sign Types. Window signs; wall signs other than wall signs which are painted on the side of a building. Ground signs which denote names, entrances, exits, rates and hours of operation for parking lots. Projecting signs that comply with the provisions outlined in the definition section—Section 26.68.020(15)(a—e).

D. Permitted Maximum Sign Area. The total area in square feet of all on premises signs on a sign frontage, except for freestanding signs, shall not exceed:

| Average Distance of Sign from Center Line of Abutting Street | Sign Frontage Multiplied by |
|---|---|
| Less than 100 | 3* |
| 100—399 | 4 |
| 400 and over | 5 |

* Excepting that a use with less than twenty-five (25) feet of sign frontage may have a maximum of fifty (50) square feet of on-premises signs.

1. The distance of a sign on or under a canopy, marquee or awning from the center line of an abutting street shall be construed to be the same as if such sign were attached to the building to which the said canopy, marquee or awning is attached.

2. If the first floor of a building is substantially above street grade and the basement is only partially below street grade, separate occupants of each level may each have one-half (½) the square feet of signage to which use would be entitled if it were a single ground floor use.

3. If the building fronts on two (2) or more streets, the sign area for each street frontage shall be computed separately.

4. A parking lot ground sign in zone district I or L shall have no more than two (2) faces and the area of each face shall not exceed thirty (30) square feet.

E. Permitted Maximum Height.

1. Wall and Window Signs. The roof line of the building to which the sign is attached.

2. Ground Signs. Twenty (20) feet above grade.

F. Permitted Location.

1. Wall and Window Signs. Shall be set back from the boundary lines of the premises on which it is located, the same distance as a structure containing a conforming use; provided, however, wall signs may project into the required setback space the permitted depth of the sign.

2. Ground Signs. Any location.

G. Permitted Illumination. May be illuminated by a concealed or exposed source but shall not flash, blink, fade, scroll or fluctuate.

H. Animation. Shall not be animated.

(Ord. No. 69198, § 4, 7-18-2012.)


26.68.130 - Outdoor general advertising devices.

A. Prohibited. The erection and maintenance of outdoor general advertising devices (device) are non-conforming and prohibited in all districts except as may be allowed pursuant to the provisions of this chapter.

B. Nonconforming. Any device lawfully existing prior to March 11, 1988, or prior to the effective date of the ordinance codified in this chapter, but could not be erected in accordance with the provisions herein shall be deemed nonconforming, but may continue in accordance with the following conditions.

1. Destruction, Damage or Obsolescence. The right to maintain any non-conforming device shall terminate and shall cease to exist whenever the device is damaged over 60% of its value or destroyed, from any cause whatsoever, or became obsolete or substandard under any ordinance regulating such devices to the extent that the device becomes a hazard or a danger.

2. Changes.

   a. Message. The message of the device may be changed or modified without a permit, subject to all other provisions herein, provided the area of the device is not enlarged, the height or depth of the sign increased or any portion of the device structurally altered.

   b. Maintenance. Permits shall be obtained pursuant to applicable City ordinance(s) for any alterations (other than changing or modifying the message), electrical work or repairs.

   c. Damage. Any device that is damaged in excess of 60% of the device shall be deemed unlawful and shall be immediately removed. If the device is not damaged more than 60%, then it may be maintained and repaired pursuant to the maintenance provisions above.

3. Ownership. There may be a change in tenancy, ownership or management of a nonconforming device provided there is no change in the area or height of such device.

4. By Discontinuation. Discontinuation of a device shall mean the absence of any commercial advertisement or information message and the discontinuation of any device for a period of sixty days or more regardless of to resume or not to abandon such use or device shall be considered abandonment of use and that device for not considered a continued use under this subsection.

5. By Relocation. Unless it is a device under a settlement agreement with the City of St. Louis, any device that is moved or relocated for any reason for any distance whatever, shall become an unlawful device and shall be removed immediately. Devices that are subject to the terms of a settlement agreement with the City of St. Louis may be relocated pursuant to the terms of the agreement and if the relocation site is a conforming site with the State of Missouri as of March 15, 2011.

6. By Violation of Law. Any violation of ordinance, state or federal statute shall terminate immediately the right to maintain such device.

7. Replacement. A nonconforming device may be replaced with a permit if the replacement device is at the exact same location, of the same kind/type of device, operates in the same manner, has no greater area, no greater height, and has the same or less number of faces than the existing nonconforming device. This provision shall not apply to devices that have been discontinued, per Section 26.68.130(B)(4) of the City of St. Louis Revised Code, and those discontinued devices shall be removed and shall not be replaced.

8. Removal. Any device that loses its nonconforming status shall be removed within seven (7) days of such loss of nonconforming status by the owner of the device or the owner of the property on which the device is located. If the device is not removed within said seven (7) days, the Building Commission may remove said device and charge the owner of the device for said removal and the City of St. Louis may also place a lien on the property on which the device is located.

C. Exemptions. The following devices are hereby exempted from the provisions of this chapter:

1. All on-premises signs;

2. Repealed;

3. Repealed;

4. Notice of any judicial or public proceeding posted by public officers or employees in the performance of their duties pursuant to laws, ordinances, orders of the court, regulations, policies and procedures;

5. Repealed;

6. Signs required or specifically authorized for a public purpose by a law, statute, regulation or ordinance;

7. Signs of government, public utility, public service, railroad companies, or their contractors which aid safety, indicate installations or repairs, or which show the location of underground facilities;

8. Devices that encroach the public right-of-way that have been lawfully erected;

9. Repealed;

10. Pursuant to Sections 226.500 to 226.600, RSMo., Cum. Supp. 1993, any lawfully erected or proposed device located within six hundred sixty feet of the nearest edge of the right-of-way of any interstate or primary highway in areas zoned commercial or industrial subject to the following regulations which are consistent with said Missouri statutes and customary use in the City of St. Louis:

    a. The City of St. Louis shall not issue a permit to allow a device to be newly erected without having the requisite permit issued by the Missouri Highways and Transportation Commission;

    b. Lighting;

i. No revolving or rotating beam or beacon of light that simulates an emergency light or device shall be of any sign. No flashing, intermittent, or moving light or lights will be permitted except scoreboards a illuminated signs designating public service information, such as time, date, or temperature, or simil be allowed; trivision, electronic, digital, projection or other changeable message signs or devices sha except as provided herein;

ii. The lighting on an outdoor general advertising device shall not exceed the level of 0.3 footcandles over ambient lighting levels using a footcandle meter at a preset distance based on sign size as follows:

| Billboard Dimension | Measurement Distance |
|---|---|
| 11 × 22 | 150' |
| 10.5' × 36' | 200' |
| 14' × 48 | 250' |
| 20' × 60 | 350' |

If the state or federal government adopts more restrictive lighting standards then the more restrictive regulations shall apply;

iii. Signs or devices may not have message surfaces made entirely or partly of light emitting diodes (LEDs) or similar lighting technology. Any sign or general outdoor advertising device with one or more LED message surfaces, trivision display or projection display that was permitted prior to April 16, 2010, shall be considered a nonconforming general outdoor advertising device and shall be allowed to continue in operation and be maintained in accordance with the provisions herein.

iv. External lighting, such as floodlights, thin line and gooseneck reflectors are permitted, provided the light source is directed upon the face of the sign or device and is effectively shielded so as to prevent beams or rays of light from being directed into any portion of the main traveled way of the interstate or federal-aid primary highway and the lights are not of such intensity so as to cause glare, impair the vision of the driver of a motor vehicle, or otherwise interfere with a driver's operation of a motor vehicle; provided the light source is effectively shielded so as to prevent beams or rays of light from shining onto any lot which is used or zoned residential.

v. No sign or device shall be so illuminated that it interferes with the effectiveness of, or obscures, an official traffic sign, device, or signal,

vi. No sign or device shall emit scent, odor, amplified sound, noise, radio frequencies or visible matter with the exception of light.

vii. No sign or device shall use interactive technology that allows electronic communications with the viewers of the sign except for communication necessary for repairs.

      viii.  The duration of each message on changeable message devices shall be no less than eight (8) second federal government adopts more restrictive duration standards then the more restrictive regulation:

  c.  Size of Signs/Devices.

     i.  The maximum area per face for any one sign shall be one thousand two hundred square feet, inclusive of border and trim but excluding the base of apron, supports, and other structural members;

     ii.  The maximum size limitations shall apply to each side of a sign structure, and signs may be placed back to back, or in V-type construction with not more than one display to each facing;

     iii.  The maximum height of any sign shall be no more than thirty-five feet from the highest point on the device to the grade of the highway from which the sign is intended to be read.

  d.  Spacing and Location of Signs.

     i.  No sign structure shall be erected within five hundred feet of an existing sign on the same side of the highway;

     ii.  No sign structure shall be erected within three hundred feet of any lot which is used or zoned residential, nor shall any sign structure be located:

       a.  Within fifty feet of any property line of the lot on which the sign structure is located;

       b.  Within thirty feet from the nearest building;

       c.  Within one hundred feet of any on-premise sign;

       d.  In or within 300 feet of any park, playground, school, library, hospital, church, historic district, landmark, an area on the National Register of Historic Places or the Jefferson Memorial District;

       e.  The spacing between structure provisions of subsection (10)(d)(i) of this section do not apply to signs which are separated by buildings, natural surroundings, or other obstructions in such manner that only one sign facing located within such distance is visible at any one time. Directional or other official signs or those advertising the sale or lease of the property on which they are located, or those which advertise activities on the property on which they are located, including products sold, shall not be counted, nor shall measurements be made from them for the purpose of compliance with spacing provisions;

       f.  No sign shall be located in such manner as to obstruct or otherwise physically interfere with effectiveness of an official traffic sign, signal, or device or obstruct or physically interfere with a motor vehicle operator's view of approaching, merging or intersecting traffic;

       g.  The measurements in this section shall be the minimum distances between outdoor advertising sign structures measured along the nearest edge of the pavement between points directly opposite the signs along each side of the highway and shall apply only to outdoor advertising sign structures located on the same side of the highway involved;

       h.  No sign shall be located adjacent to or within five hundred feet of an interchange, intersection at grade, or safety rest area. Such distances shall be measured from beginning or ending of the pavement widening at the exit from or entrance to the main traveled way;

       i.  No sign shall be located on the roof of a building or non-sign structure.

11.  Signs located within the redevelopment project area established pursuant to Ordinance No. 65668,

approved October 18, 2002.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.135 - Prohibited use of signs.

It shall be unlawful to allow any sign to fall into non-use by failing to display a message or public information message for a period of sixty (60) days or more. If any such sign shall fall into such non-use its removal and dismantling shall be ordered by the Building Commissioner of the City whether or not said sign is a nonconforming sign. Failure to obey the Building Commissioner's said order by removal of said sign or by renewing the use of said sign by placement of a new advertising message or public information message within seven (7) days of receipt of said order shall be unlawful and shall subject the owner of said sign to a fine of not less than twenty-five dollars ($25.00) and not more than five hundred dollars ($500.00) for each week subsequent to such order which passes without compliance with said order.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.140 - Signs for and by nonconforming use in all zone districts.

A. General. Signs may be erected, altered and maintained for and by a nonconforming use in any zone district under the following restrictions:

1. Nonconforming Uses in Zone Districts A and B. Signs may be erected, altered and maintained for and by a nonconforming use in zone districts A and B subject to all of the restrictions concerning signs for and by conforming uses in zone districts A, B, C, D and E as set out herein above in Section 26.68.080.

2. Nonconforming Uses in Zone Districts C, D and E. Signs may be erected, altered and maintained for and by a nonconforming use in zone districts C, D and E subject to all of the restrictions concerning signs for and by conforming uses in zone districts C, D and E as set out herein above in Section 26.68.080.

3. Nonconforming Uses in Zone District F Local Business. Signs may be erected, altered and maintained for and by a nonconforming use in zone district F subject to all of the restrictions concerning signs for and by conforming uses in zone district F as set out herein above in Section 26.68.090.

4. Nonconforming Uses in Zone Districts G and H. Signs may be erected, altered and maintained for and by a nonconforming use in zone districts G and H subject to all of the restrictions concerning signs for and by conforming uses in zone districts G and H as set out herein above in Section 26.68.100.

5. Nonconforming Uses in Zone Districts I, J, K and L. Signs may be erected, altered and maintained for and by a nonconforming use in zone districts I, J, K and L subject to all of the restrictions concerning signs for and by conforming uses in zone districts I, J, K and L as set out herein above in Sections 26.68.110 and 26.68.120.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.150 - Nonconforming signs.

A. Declaration of Public Policy. A nonconforming sign may be maintained and repaired. If reconstructed (not meaning to restyle or reword), the sign must conform to the regulations in the district in which it is located.

B. Definition of Nonconforming Signs. A nonconforming sign shall be any sign which:

1. On the effective date of the ordinance codified in this chapter was lawfully maintained and had been lawfull accordance with the provisions of any prior zoning ordinance but which sign does not conform to the limitat established by this chapter in the district in which the sign is located; or

2. On or after the effective date of the ordinance codified in this chapter was lawfully maintained and erected in accordance with the provisions of this chapter but which sign, by reason of amendment to this chapter after the effective date thereof does not conform to the limitations established by the amendment to this chapter in which the sign is located.

3. Continuance of Nonconforming Signs. Subject to the termination hereinafter provided, any nonconforming sign may be continued in operation and maintained after the effective date of the ordinance codified in this chapter; provided, however, that no such sign shall be changed in any manner that increases the noncompliance of such sign with the provisions of this chapter established for signs in the district in which the sign is located; and, provided, further that the burden of establishing a sign to be nonconforming under this section rests entirely upon the person or persons, firm or corporation claiming a nonconforming status for a sign.

4. Termination of Nonconforming Signs.

    a. By Abandonment. Abandonment of a nonconforming sign shall terminate immediately the right to maintain such sign.

    b. By Violation of the Title. Any violation of this title shall terminate immediately the right to maintain a nonconforming sign.

    c. By Destruction, Damage or Obsolescence. The right to maintain any nonconforming sign shall terminate and shall cease to exist whenever the sign is damaged over sixty percent (60%) of its value or destroyed, from any cause whatsoever, or becomes obsolete or substandard under any applicable ordinance of the municipality to the extent that the sign becomes a hazard or a danger.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.160 - Signs in Chapter 353 Development Plans, in signage overlay plan districts and signs with special provisions.

A. Chapter 353 Development Plans. Any urban redevelopment corporation ("Developer") formed, existing and in good standing under Chapter 353 of the Revised Statutes of Missouri that has obtained approval by ordinance adopted by the Board of Aldermen for the City for a development plan ("Development Plan") in accordance with Chapter 11.06 of the Revised Code of the City of St. Louis may, with respect to the area described in the Development Plan ("Development Area") promulgate uniform sign standards for the development area with respect to the placement, location, size, type and appearance of signs erected or caused to be erected and placed by or on behalf of the Developer in connection with its redevelopment activities in the development area including access within the public right-of-way. Such uniform sign standards and any amendments thereto shall be immediately effective upon the approval of such standards by resolution of the Board of Aldermen and shall terminate upon expiration of the agreement approved and authorized by the ordinance approving the Development Plan, as amended or modified; provided, however, that prior to the adoption of any such resolution by the Board of Aldermen, any such standards shall have been reviewed and favorably recommended by the Planning Commission which may delegate said review to the Director of the Planning and Urban Design Agency; and provided further that no authority is given to any Developer to regulate or restrict the placement, location, size, type or appearance of signs indicating that any

real estate is "for sale" or "for lease"; and provided further that no authority is given to any developer to regulate, restrict placement, location, size, type or appearance of signs as set forth and provided in Section 26.68.130.

B. Signage Plan Overlay Districts.

1. A Signage Plan Overlay District may be created by ordinance to promulgate uniform sign standards for a designated district allowing for flexibility in the size, height, type, placement and number of allowed signs. A Signage Plan District provides a means for defining common sign regulations for unique areas of the City, to encourage a creative incentive and latitude in the design and display of signs for the Signage Plan Overlay District.

2. An applicant may apply for the establishment of a Signage Plan Overlay District for any property or project area zoned "F" Neighborhood Commercial District or higher with a minimum of two (2) acres of area and in accordance with other regulations to be established by the Planning Commission.

3. A Signage Plan Overlay District may be approved by ordinance by the Board of Aldermen of the City of St. Louis after a recommendation from the Planning Commission.

4. Notwithstanding the foregoing, any redevelopment project area established pursuant to Ordinance No. 65668, approved October 18, 2002, shall hereby be deemed to be a Signage Plan Overlay District, provided that the developer(s) designated for such redevelopment project area promulgate(s) uniform sign standards with respect to the placement, location, size, height, type and number of signs within such redevelopment area. Such uniform sign standards and any amendments thereto shall be immediately effective upon approval by resolution of the Board of Aldermen.

C. Kiel Center Arena - Special Provisions. Notwithstanding the provision of Ordinance 60704, approved March 11, 1988, Ordinance 60364, approved June 18, 1987, Ordinance 62121, approved December 17, 1990, the zoning code of the City of St. Louis, a building sign including off-premise outdoor advertising may be erected, maintained and operated on the new Kiel Center Arena located in City Blocks 209 and 210 south subject to the following conditions:

1. Said device shall display no more than five logo signs; and

2. Said device may contain any information or advertising and an electronic message board; and

3. Said device may be either a wall or window type; and

4. Said device may be installed no less than two hundred feet from any other off-premise outdoor general advertising device on the same side of the highway existing at the time of the erection; and

5. Said device may not exceed (a) two hundred feet in length, (b) ten feet in height, and (c) sixty-five feet above grade on Clark Avenue as measured to the bottom of the device.

Except as herein provided, the device shall be subject to all other provisions of the ordinances of the City of St. Louis.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.170 - Prohibited signs.

Any sign not specifically permitted by this title shall be deemed prohibited. These prohibited signs include, but are not limited to the following:

A. Signs which emit any odor, noise, amplified sound, radio frequencies or visible matter, other than light.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.175 - Board-up signage prohibited.

    A.  The application, by stencil or other similar means, of any words, letters, numbers, or graphic advertising designs on the plywood or other material used to secure openings in vacant or occupied buildings is prohibited.

    B.  The City of St. Louis and the Land Reutilization Authority shall be exempt from the provisions of this section.

    C.  Penalty for Violation. Any person violating the provisions of this chapter shall, upon conviction, be punished by a fine of not more than five hundred dollars, or by imprisonment of not more than ninety days, or by both fine and imprisonment.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.180 - Removal of signs within or on public right-of-way or easement.

    A.  No person, partnership, corporation or organization shall place, erect, attach or set up a prohibited sign, as defined in Chapter 26.68 of the Revised Code, within or on a public right-of-way or a public easement.

    B.  The Refuse Commissioner is hereby authorized to remove and dispose of any signs which are placed within or on a public right-of-way or a public easement and which are specifically prohibited by Chapter 26.68 of the Revised Code.

    C.  Penalty for Violation. Any person violating the provisions of this chapter shall be subject to a fine of not more than five hundred dollars or by imprisonment of not more than ninety days, or by both fine and imprisonment.

(Ord. No. 69198, § 4, 7-18-2012.)

26.68.190 - Substitution clause.

    Any device, display, or sign allowed under this chapter may contain in lieu of any other copy, any otherwise lawful noncommercial message including any political message, that does not direct attention to a business operated for profit or to a commodity or service for sale, and that complies with all other requirements of this chapter.

(Ord. No. 69198, § 4, 7-18-2012.)

Chapter 26.72 - REGULATED USES

    **Sections:**

26.72.010 - Purpose.

    In the enactment, execution and enforcement of this title, it is recognized that there are some uses which, due to the nature of their operation, are recognized as having serious objectionable operational characteristics, particularly when several of said uses are concentrated in close proximity to each other thereby having a detrimental effect upon the surrounding area. The regulation of these uses is necessary to insure that the detrimental effects will not contribute to

the blighting, downgrading or otherwise diminution of property values of the surrounding neighborhood. The primary purpose of these regulations is to prevent a concentration of these uses in any one (1) area. Uses subject to these controls are:

    A. Adult book store;

    B. Adult motion picture theater;

    C. Adult peep show;

    D. Massage establishment.

(Ord. 59979 § 19 (part), 1986.)

26.72.020 - Definitions.

    A. Adult Book Store. "Adult book store" means an establishment having as a substantial or significant portion of its stock in trade, books, magazines and other periodicals or motion picture films, video tapes, or sound recordings which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "specified sexual activities or specified anatomical areas," (as defined below) or an establishment with a segment or section devoted to the sale or display of such material.

    B. Adult Motion Picture Theater. "Adult motion picture theater" means an establishment wherein motion pictures are shown which present material distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," (as defined below) for observation by patrons therein.

    C. Adult Peep Show. "Adult peep show" means an enclosed building used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," (as defined below), for observation by patrons therein by means of coin operated or manual operated viewing devices.

    D. Massage Establishment. "Massage establishment" means an establishment or operation within the meaning of Chapter 8.24 of the Revised Code of the City of St. Louis.

    E. Specified Sexual Activities and Specified Anatomical Areas.

        1. For the purpose of this section, "specified sexual activities" is defined as:

            a. Human genitals in a state of sexual stimulation or arousal;

            b. Acts of human masturbation, sexual intercourse or sodomy; bondage, sadomasochism, or bestiality;

            c. Fondling or other erotic touching of human genitals, pubic region, buttock or female breast.

        2. And "specified anatomical areas" is defined as:

            a. Less than completely and opaquely covered;

                i. Human genitals, pubic region,

                ii. Buttock, and

                iii. Female breast below a point immediately above the top of the areola; and

            b. Human male genitals in a discernibly turgid state, even if completely and opaquely covered.

(Ord. 59979 § 19 (part), 1986.)

26.72.030 - Location regulations.

Except as otherwise provided under the waiver provisions of this chapter, no building or land shall hereafter be used for any of the uses set out in Section 26.72.020 if:

A.  The boundaries of the site of the proposed location is within five hundred (500) feet of a residentially zoned district; or

B.  The boundaries of the site of the proposed location is within five hundred (500) feet of a church or elementary, intermediate or high school, or college, junior college or university.

C.  There is already in existence, two (2) or more regulated uses within one thousand (1,000) feet of the boundaries of the site of the proposed regulated use.

(Ord. 59979 § 19 (part), 1986.)

Cases:

Ordinance regulating the location of certain adult businesses was held valid against the contention that the Board of Aldermen failed to consider any relevant evidence or review any empirical data regarding the alleged concerns the ordinance was intended to redress before passing the ordinance. *Thames Enterprises, Inc. v. City of St. Louis,* 851 F. 2d 199 (8th Cir. 1988).

26.72.040 - Waiver provisions.

Applications to establish any of the above regulated uses shall be forwarded immediately by the Building Commissioner to the Community Development Commission.

A.  The prohibition against locating any of the above regulated uses within five hundred (500) feet of a residentially zoned district shall be waived upon the presentment, to the Community Development Commission, of a validated petition requesting such waiver, signed by fifty-one percent (51%) of those persons owning, residing, or operating a business establishment within five hundred (500) feet of the nearest property line of the proposed location. Said petition shall be on forms provided by the Community Development Commission and secured in accordance with rules and regulations governing the procedure for securing the petition of consent, adopted by the Commission. The circulator of the petition requesting a waiver shall subscribe to an affidavit attesting to the fact that the petition was circulated in accordance with the Commission's rules and that the circulator personally witnessed the signatures on the petition and that the same were affixed to the petition by the person whose name appears thereon. The Commission shall not consider the waiver of locational requirements set forth in subsection B of this section until the above-described petition, if required, shall have been filed and verified.

B.  The Community Development Commission may waive the one thousand (1,000) feet separation regulation if the following findings are made:

1.  That the proposed use will not be contrary to the public interest or injurious to nearby properties, and that the spirit and intent of this title will be observed.

2.  That the proposed use will not enlarge or encourage the development of a "skid row" area.

3.  That the establishment of an additional regulated use in the area will not be contrary to any program

of neighborhood conservation nor will it interfere with any program of urban renewal.

4. That all applicable regulations of the title will be observed.

C. Prior to granting such regulated use, the Community Development Commission shall give due Notice of Receipt of any application under consideration (Notice of Application) to all persons to whom any real property within five hundred (500) feet of the premises in question shall be assessed, and to the occupants of all single; two (2); three (3); and four (4) family buildings and to the managers of all multi-unit buildings over four (4) families (who shall be requested to post such notice in an appropriate location within the multi-unit building) and to all places within five hundred (500) feet, and to any neighborhood improvement organizations known to exist in the area (who have informed the Community Development Commission in writing of their existence). Such notice shall be delivered personally or by mail addressed to the respective owners and if the tenant's name is not known, the term "Occupant" may be used.

D. The notice of application shall inform the recipient of the applicant's name, the applicant's proposal, the local address and the lot number and subdivision name of the premises in question, and the section of the zoning ordinance under which the proposal is being processed. Such notice shall also invite the expression of comments, statements or opinions either in writing, in person or via telephone with a time period expiring not less than fourteen (14) calendar days from the mailing date of such notice.

E. Subsequent to the deadline for response to the notice of application, a decision shall be made by the Community Development Commission (taking into consideration the comments, statements and opinions expressed) to either approve, approve with conditions or deny the proposal in accordance with the standards set forth in this section. If no protests to the proposal were received by the Community Development Commission response to the notice of application having been mailed and if the applicant accepts the decision of the Community Development Commission this decision shall be deemed final and shall take immediate effect. If, however, a protest was received by the Community Development Commission in response to the notice of application having been mailed, this decision shall not take effect until the expiration of the appeal period set forth below, or in the event said decision is appealed, until it is ruled on by the Board of Adjustment.

F. A copy of the decision of the Community Development Commission shall be mailed to the applicant and to all persons responding to the notice of application. Any person aggrieved by the decision by the Community Development Commission may, within fourteen (14) calendar days after the mailing of said decision, appeal same to the Board of Adjustment in accordance with the procedural regulations set forth in Chapter 26.84. If an appeal is filed by other than the applicant the Community Development Commission shall inform the applicant that an appeal has been filed and that the Commission's decision will not take effect pending a public hearing and decision by the Board of Adjustment.

G. The Board may waive the locational requirements, upon appeal, of any of the regulated uses if the findings required in Section 26.72.040B can be made and after receiving a report and recommendation from the Community Development Commission.

H. In approving a permit for any regulated use, the Community Development Commission or the Board may impose any such conditions or limitations upon the establishment, location, construction, maintenance, or operation of the regulated use as may in its judgment be necessary for the protection of the public interest. Any evidence and guarantee may be required as proof that the conditions stipulated in connection therewith will be fulfilled.

I. When the decision of the Community Development Commission becomes effective, either because no

protests to the proposal were received by the Commission in response to the notice of application or because no appeal was taken to the Board of Adjustment within the allotted fourteen (14) calendar days, the Commission shall immediately notify the Building Commissioner in writing indicating the Commission's approval, approval with conditions (in which case the conditions shall be set out in detail) or denial. If the decision of the Commission approves or approves with conditions, the requested waiver, the Building Commissioner shall, if all other applicable building code and zoning code regulations have been complied with, issue an occupancy permit subject to any conditions unposed by the Community Development Commission.

(Ord. 59979 § 19 (part), 1986.)


Chapter 26.73 - SPECIAL USE DISTRICTS

**Sections:**


26.73.010 - Prohibit new or expanded use within SUD boundaries.

A.  The purpose for creation of an SUD as an overlay zoning district for a specific zoning districts area should be to assist in the implementation of the plan, commercial district redevelopment plan(s) and/or an adopted neighborhood plan for a specific geographic area of at least two (2) contiguous acres per a metes and bound legal description.

B.  The purpose for creation of an SUD as an overlay zoning district for a specific zoning districts area should also respond to well-defined health, safety, moral and/or general welfare problems. A specific SUD ordinance shall state the problems addressed by any use being prohibited or limited within the SUD area.

C.  A specific SUD ordinance may reduce the time period for discontinuing nonconforming uses within the specific SUD area from the existing one (1) year to a shorter time period not less than thirty (30) days.

D.  A specific SUD ordinance may prohibit the creation of uses or the expansion of existing uses that are permitted or conditional uses under existing commercial zoning districts ("F" Neighborhood Commercial District, "G" Local Commercial and Office District and "H" Area Commercial District) and related business oriented zoning districts ("J" Industrial District and "K" Unrestricted District).

E.  The residential dwelling districts ("A" Single-Family, "B" Two-Family, "C" Multiple-Family, "D" Multiple-Family, "E" Multiple-Family) may be included in a specific SUD ordinance only if the residential dwelling district has an existing problem land use addressed in the specific SUD ordinance.

(Ord. 66941 § 1, 2005.)


26.73.020 - Allowance of new or expanded use within SUD boundaries as conditional use.

A.  A specific SUD may promote flexibility and fairness under a new SUD ordinance by making it possible to allow new or expanded uses within the SUD subject to the conditional use provisions of Section 26.80.010 of the Zoning Ordinance of the City of St. Louis. In an SUD area a specific SUD ordinance may require that a use that is presently zoned as a permitted use, a conditional use or a prohibited use be subject to the conditional use process in Section 26.80.010.

B.  A specific SUD ordinance may further regulate a permitted use with additional restrictions because it has

been or may in the future be expected to be the cause of the emergence of well defined problems, and thus require that use become a conditional use subject to the provisions of Section 26.80.010.

C. A specific SUD ordinance may allow an existing conditional use to remain as a conditional use, but may subject that use to a specific list of limitations and subject that use to the provisions of Section 26.80.010, to address the well-defined problems with that type of use which the City has documented.

D. Given the goal of promoting flexibility and fairness in commercial districts, a specific SUD ordinance may make it possible to treat a prohibited use less restrictively than previously because through the conditional use process contained in Section 26.80.010 a specific SUD ordinance may substantially reduce, avoid or mitigate potential damage to adjacent property.

(Ord. 66941 § 2, 2005.)

26.73.030 - Types of items that may be included in specific SUD ordinance.

A. A specific SUD may deal with a range of criteria including: 1) maximum size or height of building; 2) number of parking spaces for employees, customers and/or visitors; 3) signage; 4) carryout windows; 5) landscaping buffers and fences; 6) percentage of lot landscaping; 7) refuse enclosures and dumpsters; 8) vehicular and pedestrian access; 9) outdoor lighting; 10) hours of operation; 11) prior record of business owner, operator and employees involving identified problem land uses; 12) time limits for accomplishment of the conditions; and/or 13) specific criteria that address unique aspects of the identified problem land uses and the identified geographic area in a specific SUD ordinance.

B. Conditional use review procedures used in a specific SUD ordinance will include a forty-five (45) day review period by the staff of the Zoning Administrator and a fifteen (15) day public notice period before the required conditional use hearing. If a conditional use permit is issued, it shall be valid for one (1) year after issuance, but can be declared null and void by the Zoning Administrator if the work to be done to establish the conditional use is not completed and an occupancy permit from the City is not issued within one (1) year after the written approval of the conditional use.

C. Under the conditional use standards of Section 26.80.010 of the Zoning Ordinance of the City of St. Louis the approval of the proposed use: 1) cannot be detrimental to the public; 2) cannot cause injury to neighbor's property or reduce value; 3) should enhance the general welfare; 4) should be a compliment or compatible use; and 5) the Zoning Administrator, Board of Public Service and the Board of Adjustment may add and require additional conditions and restrictions from time to time.

D. In developing conditions for the uses under a specific SUD ordinance or the conditions to be imposed on a specific use, the following criteria shall also be considered regarding the approval and/or conditions for the operation of the proposed use: 1) existing and proposed site topography; 2) existing and proposed land use on the SUD site and/or up to one thousand (1,000) feet from the SUD site; 3) density of commercial activity on and near the proposed site; 4) location of the site relative to major thoroughfares or public transit routes; 5) availability of public parks, playgrounds, open space and schools near the proposed site; 6) the impact of the proposed use on existing buildings, structures or other facilities with architectural, historical or cultural significance on the SUD site and/or up to one thousand (1,000) feet from the SUD site; as well as 7) existing landscaping including trees over six (6) inch caliper, formal garden(s), fountains, statues and/or sculptures on the SUD site.

(Ord. 66941 § 3, 2005.)

Chapter 26.74 - OFF-STREET PARKING AND LOADING IN DWELLING DISTRICTS

**Sections:**

26.74.030 - Entrances and exits.

All parking areas, loading areas, and driveways must have adequate entrances and exits approved by the Building Commissioner with the consent of the Director of Streets.

(Ord. 61857 § 3, 1990.)

26.74.040 - Maintenance requirements.

All parking areas, loading areas, and driveways must be maintained in good repair.

(Ord. 61857 § 4, 1990.)

26.74.050 - Penalty for violation.

Any person, firm or corporation that violates any provision of this chapter shall upon conviction be fined not less than one dollar ($1.00) or more than five hundred dollars ($500.00) or by imprisonment up to ninety (90) days or by both such fine and imprisonment.

(Ord. 61857 § 5, 1990.)

Editor's Note:

Ordinance 61857 was passed March 23, 1990.

Chapter 26.76 - RESERVED

Editor's Note:

Ch. 26.76, has been superseded by provisions in Ch. 25.01 enacted by Ord. No. 67396, § 3, 2007, and has been deleted at the direction of the city. The former Ch. 26.76, §§ 26.76.010—26.76.080, pertained to floodplain areas and derived from Ord. No. 65420, § 1 (part), 2001.

Chapter 26.80 - USE, HEIGHT AND AREA EXCEPTIONS

**Sections:**

26.80.010 - Conditional uses.

A.  Purposes. There are a number of uses that present unique problems with respect to their location and relationship with potential surrounding land uses. These uses are not allowed in a particular zoning district by right. However, they may be made compatible or appropriate by attaching certain conditions to their development.

B. **Authority. The authority to issue conditional use permits is hereby delegated to the Board of Public Service.**

C. Application and Submission Contents and Procedure.

    1. An application for a Conditional Use Permit may be filed by the owner, tenant or their representative, or any prospective owner, tenant, or their representative, of the property in question.

    2. Applications for Conditional Use Permits shall be filed with the Zoning Administrator and shall be accompanied by data, plans, and information as prescribed by the Board of Public Service to assure the fullest understanding of the application. One copy of the application shall be filed at the same time with the Board of Public Service. The Zoning Administrator shall provide written notification of an application for a Conditional Use Permit to the Aldermen in whose ward the conditional use is proposed. A fee, set forth in Chapter 26.98, shall be due at the time the Applicant requests a conditional use hearing.

D. Review Procedures.

    1. The Community Development Commission shall then have forty-five (45) days to submit findings of fact and recommendations to the Board of Public Service. The Commission may delegate the review to the Director of the Community Development Agency. If no report is received within the forty-five (45) days, it will be assumed that the Community Development Commission approves the issuance of a conditional use permit.

    2. Upon the receiving of the application for filing, the Board of Public Service shall set a date for, and shall conduct, a public hearing on the application within forty-five (45) days. The zoning administrator shall publish and post a notice of the public hearing at least fifteen (15) days prior to the hearing date. The notice shall be published in a newspaper of general circulation in the City. The notice shall also be posted prominently on the site and on the block of the property in question.

    3. The Board of Public Service shall have made a ruling within seven (7) days after the forty-fifth (45th) day referred to in subsection A of this section. A written report shall be filed, which shall include the conditions and restrictions applicable to the use in question.

    4. The Conditional Use Permit shall apply to the use in question as long as no changes are made to the site or the structure.

    5. A Conditional Use Permit may be valid for a period of one (1) year. Within that time, a building permit shall be obtained and construction started or, in the case where no building permit is required, an occupancy permit shall be obtained or the Conditional Use Permit shall become null and void provided that the one (1) year time limitation shall be tolled by a force majeure.

E. Standards. The Board of Public Service shall not approve a conditional use unless the Board finds that the use conforms to the following standards:

    1. The use will not be detrimental to the public health, safety, morals or general welfare;

    2. The use will not cause serious injury to the neighboring property by hindering use or reducing or impairing property values;

    3. The use will contribute to, enhance, and promote the general welfare and convenience of the specific location;

    4. The use will complement or be compatible with the surrounding uses and will not have a negative impact on adjacent uses or community facilities; and

    5. The use shall, in all other respects, conform to the applicable zoning regulations and standards, including

without limitation the particular regulations and standards stated for particular conditional uses in the various zoning districts.

    F.   Conditions and Restrictions. The regulations applicable to conditional uses stated in this zoning code are minimum standards. When approving a Conditional Use Permit, the Board of Public Service may stipulate additional conditions and restrictions as necessary to assure that the use complies with the standards of subsection D of this section.

(Ord. No. 69084, § 2, 2-13-2012: Ord. 59979 § 21 (part), 1986.)

**26.80.030 - Height exceptions.**

Subject to the same review procedures as those in Section 26.80.010, the following height exceptions may be authorized:

    A.   On through lots one hundred twenty (120) feet or less in depth, the height of a building may be measured from the street level on either street. On through lots more than one hundred twenty (120) feet in depth, the height regulations and basis of height measurements for the street permitting the greater height shall apply to a depth of not more than one hundred twenty (120) feet from the street.

    B.   Grain elevators or gas tanks to be erected to a height in excess of that permitted by the height regulations.

    C.   Buildings and structures erected by public utility (service) corporations for public convenience or welfare, except that within any dwelling district the height regulations governing public utility corporation buildings and structures shall be the same as the height regulations for churches and schools.

(Ord. 59979 § 21 (part), 1986.)

**26.80.040 - Area exceptions.**

Subject to Section 26.80.010, an exception may be authorized for an accessory building to occupy more than thirty percent (30%) of the area of a required rear yard, or to exceed twelve (12) feet in height.

(Ord. 59979 § 21 (part), 1986.)

**26.80.050 - Planned unit development district.**

    A.   Purpose. The planned unit development district (PUD) is intended, by site plan review and other procedures hereinafter set forth, to encourage the appropriate development of residential, or commercial uses, or the combination thereof, in the best interests of the City. Specifically, the purpose of the district is for:

        1.   Provide for a scale and flexibility of development which could not otherwise be achieved through the existing single use zoning districts, without detriment to neighboring properties;

        2.   Encourage site consolidation and planned mixed use development;

        3.   Allow for changes that may occur in building technology and changes in market demand for various building types; and

        4.   Provide for the development of property while protecting the ecological, topographical, geological, and historic features that might be damaged by meeting fixed single use district regulations.

B. Use Regulations. All uses permitted in the A, B, C, D and E dwelling districts and the F and G commercial districts permitted, provided the procedures outlined in this section are followed.

C. Conditional Uses. All possible conditional uses specified in the A, B, C, D and E dwelling districts and the F and G commercial districts may be permitted in determining the privileges and conditions that shall be approved for a PUD.

D. Sketch Plan Submittal. The applicant shall submit at least two copies of a sketch plan to the Planning Commission, accompanied with a filing fee, set forth in Chapter 26.98, on forms furnished by the Planning Commission. The sketch plan shall include both maps and a written statement and shall show enough of the area surrounding the proposed PUD to demonstrate the relationship of the PUD to adjoining uses. The maps may be in general, schematic form, and must contain the following information:

1. The existing topographic character of the land;

2. The existing and proposed land uses and approximate location of buildings and other structures proposed to be demolished or to remain;

3. The character and approximate density of dwellings;

4. The approximate location of major thoroughfares; and

5. Public uses, including schools, parks, playgrounds and other open spaces.

6. The written statement must contain the following information:

   a. An explanation of the character of the PUD including the number of any proposed residential units and the proposed square footage for any commercial or industrial space;

   b. A statement of proposed financing;

   c. A statement of the present ownership of all the land included within PUD; and

   d. A general indication of the expected schedule of development including the projected phases of development, if any.

E. Community Development Commission Review. Upon receipt of a sketch plan by the Community Development Commission, it shall refer a copy to the Zoning Administrator and review said sketch and make a report of its findings and recommendations, in writing to the Board of Aldermen no later than the Aldermanic Committee public hearing on the proposed PUD, otherwise a favorable recommendation shall be assumed. The Community Development Commission in making its report to the Board of Aldermen shall set forth as reasons for recommendation for or against the plan and specific evidence and facts as to whether or not the proposed PUD meets the following conditions:

1. That the values of buildings and the character of the property adjacent to the area included in said plan will not be adversely affected;

2. That the proposed development is consistent with the intent purposes of the zoning code to promote public health, safety, morals and general welfare; and

3. That the proposed development plan is consistent with any previously approved development plan that may affect the site and with the City's comprehensive plan.

F. Introduction of Ordinance. Upon action by the Community Development Commission or forty-five (45) days after the submission of the plan to the Community Development Commission, whichever comes first, a proposed ordinance may be introduced in the Board of Aldermen. When such proposed ordinance is

introduced in the Board of Aldermen, the committee to which it is properly referred for consideration shall hold a public hearing and publish notice thereof in accordance with the procedure for rezoning as set out in Section 26.92.040.

G.  Development Plan. If the Board of Aldermen approves the ordinance for the PUD, a development plan for the PUD shall be submitted to the Community Development Commission for approval. In making its determination whether to approve or disapprove a development plan, the Community Development Commission shall review the development plan for its conformity to the approved sketch plan. The development plan shall show and be accompanied by the following information, expressed in precise dimensions and project data, to assure the fullest understanding of the application:

1.  Applicant's name and address;

2.  Site plan drawn at 1" = 50' or larger (i.e., 1" = 20');

3.  Site location map showing the site in the context of the City's major street network;

4.  A title block shall be included and shall show the following information:

    a.  Project name,

    b.  Name of developer,

    c.  Scale,

    d.  Date of drawing;

5.  The boundaries and all dimensions of the site, including easements;

6.  Existing topography and proposed changes at contour intervals or more than five (5) feet;

7.  Existing trees of greater than six (6) inch caliber, indicating any that are to be removed;

8.  The location and dimensions of all proposed and existing buildings to remain, showing the height (stories and feet) of each building;

9.  The location and dimensions of all drives and aisles, and the dimensions and number of parking stalls;

10. Landscape plan showing the size and species of all plant material and related site improvements, including retaining walls, sidewalks, plazas, fountains, etc.;

11. The system of storm water control both during and after construction;

12. The locations and access to all utilities including storm and sanitary sewer, water, gas and electricity;

13. Exterior lighting, showing location, height and type;

14. Project information including the following:

    a.  Site area in square feet and acres,

    b.  Commercial building floor area,

    c.  Building coverage,

    d.  Site coverage (buildings plus parking and driveways),

    e.  Parking spaces required and provided;

15. Schematic architectural plans showing floor plans, building elevations, and building sections where necessary for clarification.

H.  Standards. Except as provided in conditions and restrictions required for a specific PUD by the Board of Aldermen, the following standards shall apply:

1.  No setback requirements will be required except those dictated by other City codes;

2. Height requirements shall be the same as those for the least restrictive adjacent residential zoning district. If no residential zoning district is adjacent then the standards shall be the same as those for the E multiple-family dwelling district;

3. All lots shall have access to a public or private street either directly or by way of a court or drive maintained under the jurisdiction of a trustee organization;

4. The overall residential density of the PUD should be no greater than that permitted in the E multiple-family dwelling district;

5. The PUD shall include at minimum twenty (20) percent of the site in open space, half of which may be privately controlled;

6. The project shall not be required to be on one contiguous site; however, the PUD shall extend in area only so far as it can still reasonably be considered one development. Any intervening property shall be included on the development plan and shall be described;

7. Buffering or screening with vegetation may be required between separate uses or between existing and proposed development.

I. Permits and Certificates. If the Community Development Commission approves the development plan for the PUD, building permits and certificates of occupancy may be issued therefor, even though the use of land, height and location of structures, including yards and open spaces, does not conform in all respects to the zoning district regulations.

J. Phased Development. In those developments which are to be constructed in phases, the ordinance shall approve the entire project, however, a development plan for only the initial phase of construction may be submitted to the Community Development Commission. Construction of subsequent phases will require approval of development plans. These plans must conform to the originally approved sketch plan.

K. Changes in the PUD. Any changes in a planned unit development approved by the Board of Aldermen consisting of a change in boundary, change in use, or change in projected schedule of development must be reintroduced into the Board of Aldermen as an amendment to said planned unit development.

L. Period of Validity. The planned unit development approval shall be valid for a period of eighteen (18) months unless within that time a building permit is obtained and substantial construction is commenced. The Community Development Agency may grant extensions upon written request of the applicant. There is no limit on the time of construction, however, a time limit may be required as a condition of approval.

M. Transferability of Permit. A permit for a PUD is transferable.

(Ord. No. 69084, § 2, 2-13-2012: Ord. 59979 § 21 (part), 1986.)

26.80.060 - Home occupations.

A. Home occupations shall be permitted if the following requirements are met:

1. The home occupation does not change the outside appearance of the residential dwelling;

2. The home occupation does not change the primary use of the home from residential;

3. The home occupation does not generate traffic, parking, sewerage, refuse, water use, noise, dust, odors, or vibrations in excess of what is normal in a residential neighborhood;

4. The home occupation does not create a hazard to person or property, result in electrical interference, involve the storage of flammable or hazardous materials, become a public or private nuisance, or is not

classified by the City as a nuisance property pursuant to Ordinance Number 69730 or its successor ordinances;

5. The home occupation does not have storage or display any occupation-related equipment, including vehicles that openly display occupation-related equipment, outside the home;

6. The home occupation does not regularly and routinely employ anyone who is not also a resident of the home to perform work inside the home;

7. The applicant of the home occupation resides at the home;

8. The home occupation does not display a sign;

9. The home occupation does not regularly and routinely accept customers, clients, or the general public into the home;

10. The home occupation does not advertise, solicit or invite customers, clients, or the general public to the home;

11. The home occupation is within a property with a valid Certificate of Inspection pursuant to Chapter 25.56 of the Revised Code of the City of St. Louis;

12. The home occupation and the property remain in compliance with all city laws, rules, and regulations.

B. The following are prohibited as home occupations:

1. Animal clinics and boarding facilities, including kenneling and day care;

2. Dancing schools;

3. Doctor and dentist offices;

4. Mortuaries;

5. Stables or kennels;

6. Private clubs;

7. Repair shops;

8. Restaurants;

9. Tourist homes;

10. Automobile repair or paint shops, sales and leasing of new or used autos and auto detailing and washing.

C. The following home occupations shall be considered a conditional use that may be allowed subject to the provisions of Section 26.80.010 of the Revised Code of the City of St. Louis:

1. Home cooking, preserving or processing of food for resale;

2. Home daycares;

3. Recording and film studios;

4. Home office use for general construction, electrical, painting, plumbing, or landscaping contractors;

5. Any proposed home occupancy that is not specifically prohibited by Subsection B of this Section, but cannot comply entirely with the standards contained in Subsection A of this Section.

D. A fee, set forth in Chapter 26.98, shall be due at the time an application is made for a home occupancy waiver.

(Ord. No. 70150, § 1, 11-24-2015; Ord. No. 69084, § 2, 2-13-2012: Ord. 59979 § 21 (part), 1986.)

26.80.070 - Community Unit Plan (CUP).

A.  The owner or owners of any tract or tracts of contiguous land comprising an area of not less than fifteen (15) acres, including streets and alleys except boundary streets, may submit a plan for the use and development of all of such tract or tracts of land to the Community Development Commission.

B.  A filing fee, set forth in Chapter 26.98, shall be required at the time such a plan is submitted to the Planning Commission.

C.  Upon receipt of a plan by the Community Development Commission, it shall review said plan and make a report of its findings and recommendations, in writing to the Board of Aldermen. The Community Development Commission in making its report to the Board of Aldermen shall set forth its reasons for approval or disapproval of the plan and specific evidence and facts as to whether or not the proposed community unit plan meets the following conditions:

1.  That the values of buildings and the character of the property adjacent to the area included in said plan will not be adversely affected;

2.  That said plan is consistent with the intent and purposes of the zoning code to promote public health, safety, morals and general welfare;

3.  That the average lot area per family contained in the site, exclusive of the area occupied by street, shall not be less than the lot area per family required for the district in which the development is located.

D.  Upon the receipt of the Community Unit Plan in the Board of Aldermen or the expiration of forty-five (45) days from the date of the submission of the plan to the Community Development Commission, a proposed ordinance may be introduced in the Board of Aldermen. When such proposed ordinance is introduced in the Board of Aldermen, the Committee to which it is properly referred for consideration shall hold a public hearing and publish notice thereof in accordance with the procedure for rezoning as set out in Section 26.92.040 of the Code. If the Board of Aldermen approves the ordinance for the Community Unit Plan, building permits and certificates of occupancy may be issued therefor, even though the use of land, height and location of structures, including yards and open spaces, does not conform in all respects to the zoning district regulations.

E.  Any proposed change in any Community Unit Plan consisting of a change in boundary or change in use shall be submitted for approval as an amendment to the Community Unit Plan in the same manner as provided in subsections C and D of this section.

F.  Any other proposed change shall be submitted for approval as an amendment to the Community Unit Plan in the same manner as provided for the granting of conditional use permits in accordance with the procedure set out in Section 26.80.010 of the Code.

G.  At the time any amendment to a community unit plan is submitted a filing fee, set forth in Chapter 26.98, shall be required.

(Ord. No. 69084, § 2, 2-13-2012: prior: Ord. 63299 § 2, 1994: Ord. 59979 § 21 (part), 1986.)

Chapter 26.82 - FORM-BASED DISTRICTS

26.82.010 - Purpose.

The purpose for the creation of a form-based district as a zoning overlay district shall be to encourage sustainable growth and to establish areas of a particular desired scale and siting relationships. The form-based districts will promote the health, safety, morals or general welfare of the community by effectively regulating improvements and enhancing the vibrancy and atmosphere of a neighborhood or a commercial corridor by providing a cohesive urban form and character. A form-based district is designed to assist in the implementation of the Strategic Land Use Plan, as well as planning and development initiatives, such as detailed neighborhood-level plans and commercial district plans and development projects. A form-based district is also intended to reinforce the character of existing City historic districts and not purposely alter the character of any existing National Register historic district.

(Ord. No. 69199, § 1, 7-18-2012.)

26.82.020 - Definitions.

For purposes of this chapter, the following terms, phrasing, words and their deviations shall have the meaning given herein. Any term not herein defined shall be construed as defined in Chapter 26.08 of the Zoning Code.

   A.  Architectural standards. Regulations controlling external architectural materials and quality.

   B.  Building development standards. Regulations regarding building types, frontage types and architectural standards.

   C.  Building envelope standards. Regulations controlling the configuration, features, and functions of buildings.

   D.  Building type. A structure defined by the combination of configuration and placement (e.g., detached single-family dwelling, rowhouse).

   E.  Build-to line. A line parallel to the property line where the facade of a building is required to be located.

   F.  Frontage type. The architectural element of a building between the public right-of-way and the building located on the abutting private property (e.g., porch, balcony).

   G.  Regulating plan. A plan or map of the regulated area designating the locations (also referred to as zones) where different building envelope standards apply.

   H.  Sustainability standards. Regulations controlling issues such as stormwater drainage and infiltration, tree protection and solar access.

   I.  Thoroughfare standards. Regulations regarding the design of different types of thoroughfares (e.g., pavement width, number and width of traffic lanes, bicycle lanes and parking lanes, landscape type and sidewalks).

   J.  Zoning overlay district. A designation for a physical area with mapped boundaries that are superimposed over the City's official zoning district map's underlying zoning districts and text detailing requirements that are either added to, or in place of, those underlying zoning districts' regulations.

(Ord. No. 69199, § 2, 7-18-2012.)

26.82.030 - Criteria.

Only those areas that meet the following criteria shall be eligible to become a form-based district.

   A.  A minimum geographic area consisting of at least 15 contiguous acres. Land may be under common or

multiple ownership.

B. Identification and documentation of a specific attribute or rationale of form-based zoning that would help the area to develop into its full potential and that is currently unavailable in the City's existing Zoning Code.

In addition, a form-based district shall document that the proposed area exhibits at least one of the following characteristics:

A. An area that is experiencing inappropriate development (e.g., development of automobile-oriented commercial uses along a traditional neighborhood commercial street).

B. An area that is expecting or experiencing significant change in terms of development activity (e.g., an area primarily consisting of vacant land and vacant buildings for which a substantial development is proposed).

C. A desire to encourage a transformation of an area or to make general improvements to an area (e.g., a focus on transit-oriented development or a more pedestrian- and bicyclist-friendly environment).

(Ord. No. 69199, § 3, 7-18-2012.)

26.82.040 - Minimum requirements.

No form-based district shall be approved unless at minimum it contains the following items:

A. A regulating plan in graphic form, as specified by the Planning Commission, which designates a specific classification (building envelope standards) for every parcel in the form-based district. The regulating plan shall include one or more zones where different building envelope standards apply.

B. Building envelope standards that include graphics that clearly indicate for each classification of property allowable encroachments, build-to lines, setbacks, building forms, building heights, building types and parking.

C. An indication as to how the proposed regulating plan, building envelope standards and building development standards would be reconciled with any applicable existing historic district standards for City historic districts adopted by ordinance.

D. A written statement of purpose outlining the goals and objectives for the form-based district.

E. Identification of the area for which the form-based district will apply, including a generalized metes and bounds legal description of the area.

F. Documentation of a planning process that was used to establish the plan or vision for the form-based district.

G. Documentation of adequate public participation during the planning process.

H. Support of the alderman or aldermen representing the proposed area.

I. Documentation of meeting the required criteria listed in Section 26.82.030.

J. Additional information as needed to ensure the proposed form-based district contains sufficient material for adequate review by the Planning Commission.

(Ord. No. 69199, § 4, 7-18-2012.)

26.82.050 - Optional regulatory subjects.

In addition to the minimum requirements, a form-based district may also include building development standards, use regulations, provisions that address non-conforming uses (which may include reducing the time period for discontinuing a non-conforming use to a period of time not less than thirty days), thoroughfare standards, sustainability standards, signage regulations, and any other regulations that would promote the goals of the form-based district. A form-based district will only serve as an overlay code on the subject matters specified in each form-based district and regulatory subjects not included in a form-based district will continue to be regulated by the existing Zoning Code.

(Ord. No. 69199, § 5, 7-18-2012.)

26.82.060 - Procedures for approval of a form-based district.

A form-based district is established by ordinance initiated by one of the following two procedures: initiation by the Planning Commission or a formal application process by an applicant.

A. The Planning Commission may on its own initiative propose the enactment of a form-based district for any portion of the City of St. Louis.

B. Prior to the filing of an application for approval of a form-based district with the Planning Commission, the applicant shall schedule a pre-application meeting with the City's Director of Planning and the Zoning Administrator. The purpose of the meeting is to allow the Director of Planning and the Zoning Administrator to inform the applicant of all applicable ordinances, rules, regulations, plans, existing historic districts, policies, standards and procedures that may affect the applicant's planning and development initiative. This consultation would also allow the applicant to present a general concept of the proposed planning and development initiative prior to the preparation of any detailed plans and associated development standards. The applicant shall submit at the pre-application meeting a preliminary application, which shall include the following information:

1. Identification of the applicant and contact person, as well as contact information;

2. Preliminary identification of the form-based district's boundaries;

3. A preliminary written statement of purpose outlining the applicant's intentions for the form-based district;

4. Conceptual-level sketch plans and ideas regarding proposed uses, building forms and densities;

5. Identification of professional planners, architects or others working on the plan;

6. A plan for public participation in the planning process;

7. Support from the alderman or aldermen representing the proposed area;

8. Preliminary documentation that the area meets the required criteria listed in Section 26.82.030; and

9. Any additional information as determined by the Director of Planning and the Zoning Administrator;

C. After meeting with the Director of Planning and the Zoning Administrator, an applicant may prepare its application on a form to be provided by the Zoning Administrator. The applicant may submit to the Planning Commission its application for the proposed form-based district, as defined in Sections 26.82.040 and 26.82.050, along with a non-refundable application fee, payable in cash, check or money order to "City of St. Louis", as provided for under the fee schedule in Chapter 26.98 of the Zoning Code, for those proposed form-based districts following a formal application process. The Planning Commission

shall have ninety (90) days from the time of submittal to approve or disapprove the form-based district. Upon receipt of the recommendation of the Planning Commission or the expiration of ninety (90) days from the date of first filing such application, an ordinance may be enacted into law pursuant to the provisions of Chapter 26.92 of the Revised Code of the City of St. Louis prescribing procedures for amendments or changes to the boundaries or regulations in the zoning laws of the City of St. Louis.

(Ord. No. 69199, § 6, 7-18-2012.)

26.82.070 - Amendments.

Any amendment or change in the boundaries or regulations of an established form-based district shall follow the procedures under Chapter 26.92 of the Zoning Code.

(Ord. No. 69199, § 7, 7-18-2012.)

26.82.080 - Administration of form-based districts.

An approved form-based district is intended to exist as a zoning overlay district with the City's existing Zoning Code. The overlay district shall represent and be depicted as a mapped geographic area on the City's official zoning district map. The overlay district may be applied over any zoning district and may encompass one or more zoning districts. Upon approval of an ordinance establishing a specific form-based district:

A. Administration of the form-based district shall be conducted by the office of the Zoning Administrator. The Building Commissioner may, with the approval of the Director of Public Safety, appoint one (1) or more additional members of his department, as well as members of other City departments who have a particular skill or competence to act for the Zoning Administrator. The term "Zoning Administrator" as elsewhere used in this zoning ordinance shall be deemed to include such appointees.

B. Minor waivers regarding an established form-based district may be granted or denied by the Zoning Administrator, as referenced in Section 26.88.020(I)(1)—(7). of the Zoning Code.

C. Appeals regarding a form-based district shall be heard by the Board of Adjustment.

(Ord. No. 69199, § 8, 7-18-2012.)

Chapter 26.84 - BOARD OF ADJUSTMENT

**Sections:**


26.84.010 - Board established.

A Board of Adjustment is hereby established. The word "Board" when used in this section shall be construed to mean the Board of Adjustment. The Board shall consist of five (5) members who shall be residents of the City of St. Louis, and who shall be appointed by the Mayor subject to approval by Resolution adopted by the Board of Aldermen.

A. One (1) member shall be a graduate of an accredited school of architecture or a licensed architect, and one (1) shall be a licenced real estate broker or agent. Each of these two (2) members shall have not less than three (3) years of experience in their profession.

B. The term of office of the members of the Board of Adjustment shall be for four (4) years. Members of the Bo Adjustment existing at the time of the effective date of this section shall be continued in office until the expi their term of office.

C. Three (3) alternate members may be appointed as provided above to serve in the absence or disqualification of the regular members. The alternate members shall also be residents of the City of St. Louis who shall serve for a term of one (1) year.

D. Members shall receive an expense allowance as set by ordinance. Expenses incurred in the discharge of official business of the Board may be allowed, but in no event shall these expenses of the Board exceed the amount appropriated by the City.

E. Vacancies shall be filled for the unexpired term only.

F. Members shall be removable for cause by the Mayor upon written charges and after a public hearing.

G. The Board shall elect its own chairman, who shall serve for one (1) year.

(Ord. 65763 § 2, 2002: Ord. 59981 § 1 (part), 1986: prior: Ord. 59979 § 23 (part), 1986.)

Editor's Note:

Ordinance 59981 was passed July 31, 1986.

City Counselor Ops.: 8493A, 9032, 9121

McQuillin:

22.228 et seq. Board of adjustment, review and zoning appeals.

26.84.020 - Rules and regulations.

The Board of Adjustment shall submit to the Clerk of the Board of Aldermen on or before June 1 of each year proposed rules and regulations as it may deem necessary to carry into effect the provisions of the zoning code. Said proposed rules and regulations shall be subject to the approval and adoption by resolution of the Board of Aldermen on or before June 30 of said year.

(Ord. 64195 § 1, 1997: prior: Ord. 59981 § 1 (part), 1986: Ord. 59979 § 23 (part), 1986.)

City Counselor Ops.: 8493A, 9032, 9121, 10039, 10324

26.84.030 - Meetings.

The meetings of the Board shall be held at the call of the chairman, and at such other time as the Board may determine. Such chairman, or in his absence the acting chairman, may administer oaths and compel the attendance of witnesses. All meetings of the Board shall be open to the public. The Board shall keep minutes of its proceedings, showing the vote of each member on each question, or, if absent or failing to vote, indicating such actions, all of which shall be immediately filed in the office of the Board and shall be a public record.

(Ord. 59981 § 1 (part), 1986: prior: Ord. 59979 § 23 (part), 1986.)

26.84.040 - Appeals.

A.  Appeals to the Board may be taken by any person aggrieved or by any officer, department, board or bureau of the affected by any decision of the Building Commissioner or the Board of Public Service. Such appeal shall be taken a reasonable time, as shall be prescribed by the Board by general rule, by filing with the Building Commissioner Board of Public Service and with the Board a notice of appeal specifying the grounds thereof. The Building Commissioner or the Board of Public Service shall forthwith transmit to the Board all the papers constituting the record upon which the action appealed from is taken. Any appeal stays all proceedings in furtherance of the act appealed from, unless the Building Commissioner or the Board of Public Service certifies to the Board, after not appeal shall have been filed with him or it, that, by reason of facts stated in the certificate, a stay would, in his o or its opinion, cause imminent peril to life or property.

B.  In such case proceedings shall not be stayed otherwise than by a restraining order which may be granted by the Board or by a court of record on application or notice to the Building Commissioner or the Board of Public Service, and on due cause shown. The Board shall fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the parties in interest and decide the same within a reasonable time. At the hearing any party may appear in person or by agent or by attorney. A fee, set forth in Chapter 26.98, shall be a paid to the Board at the time an appeal is filed.

(Ord. No. 69084, § 2, 2-13-2012: prior: Ord. 64654 § 2, 1999: Ord. 59981 § 1 (part), 1986: Ord. 59979 § 23 (part), 1986.)

City Counselor Ops.: 10029, 10119

Cases:

Order of board of adjustment reversing, on appeal, building commissioner's denial of permit was void. *Himmel v. Leimkuehler* , 329 S.W. 2d 264 (1959).

Petitioners were "aggrieved parties" entitled under statute and ordinance to maintain certiorari proceedings to review decision of board of adjustment. *Hernreich v. Quinn,* 168 S.W. 2d 1054 (1943).

Corporation which owned no realty and had no assets of any kind, was not an aggrieved person with meaning of statute authorizing review by certiorari of decisions of the board. *Lindenwood Improvement Assoc. v. Lawrence,* 278 S.W. 2d 30 (1955).

Authority to grant variance from zoning requirements should be exercised sparingly and in keeping with spirit of zoning plan and public welfare. *Arens v. City of St. Louis,* 872 S.W. 2d 631 (1994).

26.84.045 - Notice required of Board.

Whenever any notice of appeal shall be filed with the Board of Adjustment, the Board shall promptly notify the Alderman of the ward in which the property affected by the appeal may be located, after Community Development Commission and the Director of Public Safety.

(Ord. 59981 § 1 (part), 1986: prior: Ord. 59979 § 23 (part), 1986.)

26.84.050 - Jurisdiction.

The Board shall have the following powers:

A.  To hear and decide appeals where it is alleged there is error in any order, requirement, decision or

determination made by an Administrative Official or Agency in the enforcement of the zoning code;

B.  To permit the extension of a use district where the boundary line of a district divides a lot in a single ownership on April 25, 1950;

C.  To interpret the provisions of the Zoning Code in such a way as to carry out the intent and purpose of the plan, as shown upon the maps fixing the several districts accompanying and made a part of the zoning code where the street layout actually on the ground varies from the street layout as shown on the maps aforesaid;

D.  In passing upon appeals, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the zoning code, to vary or modify the application of any of the regulations or provisions of such code relating to the use, construction or alteration of buildings or structures or the use of land so that the spirit of the code shall be observed, public safety and welfare secured a substantial justice done;

E.  In exercising the above mentioned powers, the Board may, in conformity with the provisions of law, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the Building Commissioner or the Board of Public Service. The concurring vote of four (4) of the members of the Board shall be necessary to reverse any order, requirement or determination of the Building Commissioner or the Board of Public Service, or to decide in favor of the applicant on any matter upon which it is required to pass under the zoning code, provided, however, that the action of the Board shall not become effective until after the resolution of the Board setting forth the full reason for its decision and the vote of each member participating therein has been spread upon the minutes. Such resolution immediately following the Board's final decision shall be filed in the office of the Board and shall be open to public inspection;

F.  The Board of Adjustment shall cause to be published in the City Journal a statement showing disposition of each appeal and shall mail a copy of said statement to the Aldermen of the ward in which the property affected by the appeal may be located, the Community Development and the Director of Public Safety;

G.  Any person or persons jointly or severally aggrieved by any decision of the Board of Adjustment or any officer, department, board, or bureau of the municipality may present to the Circuit Court of the City a petition, duly verified, setting forth that such decision is illegal, in whole or in part, and specifying the grounds of the illegality. Such petition shall be presented to the court within thirty (30) days after the filing of the decision in the office of the Board as provided by Section 89.110 R.S.Mo. Upon the presentation of such petition the court may allow a writ of certiorari directed to the Board to review such decision of the Board, and shall prescribe therein the time within which a return thereto may be made and served upon the realtor's attorney which shall be not less than ten (10) days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision appealed from but the court may, on application, on notice to the Board and on due cause shown, grant a restraining order. The Board shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by such writ;

H.  The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from, and shall be verified. If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his

findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

(Ord. 59981 § 1 (part), 1986: prior: Ord. 59979 § 23 (part), 1986.)

Cases:

Variance may be granted on evidence of practical difficulty resulting from factors other than physical characteristics of property. *Arens v. City of St. Louis,* 872 S.W. 2d 631 (Mo. App. E.D. 1994).

Challengers' status as alderwomen did not by itself confer standing to challenge zoning variances granted by the Board of Adjustment. *State ex rel. Smith v. Grant,* 943 S.W. 2d 319 (Mo. App. E.D. 1997).

Chapter 26.88 - ZONING ADMINISTRATOR

**Sections:**


26.88.010 - Creation and purpose.

The office of the Zoning Administrator is hereby created within the Department of Public Safety. The Building Commissioner may, with the approval of the Director of Public Safety, appoint one (1) or more additional members of his department, as well as members of other City departments who have a particular skill or competence to act for the Zoning Administrator. The term "Zoning Administrator" as elsewhere used in this zoning ordinance shall be deemed to include such appointees.

(Ord. 59979 § 23 (part), 1986.)

26.88.020 - Duties and authority.

The Zoning Administrator shall enforce and perform those tasks necessary for administration of this zoning code. In addition to, and incidental to this authority, the Zoning Administrator:

A. May conduct inspections of all buildings, structures and land uses to determine compliance with this zoning code;

B. Shall approve all zoning certificates and make and maintain records thereof;

C. Shall approve all certificates of occupancy, and make and maintain records thereof;

D. Shall receive, check for compliance with the various submission requirements contained herein, file and forward to the appropriate officials or bodies all applications, special permits, variances and amendments to this zoning code and seek the recommendations from such officials and bodies as are required to properly enforce this title;

E. Shall forward to the Board of Adjustment all papers constituting the record upon which actions appealed from are taken;

F. May report in writing to the Planning Commission and the Board of Aldermen on the administration of the zoning code with special attention to enforcement problems and deficiencies in its contents,

procedures and standards;

G. Shall sit as ex officio Secretary on the Board of Adjustment, without a vote;

H. Shall notify in writing, if any violations of the provisions of this zoning code are found, the persons responsible for such violation. In giving this notification, the zoning administrator shall indicate the nature of the violation and order the action necessary to correct it. The zoning administrator shall order discontinuation of any illegal use of land, buildings or structures, removal of illegal buildings or structures or of illegal additions or alterations, discontinuance of any illegal work being done, or take any other action authorized by this zoning code to ensure compliance with or to prevent violation of its provisions;

I. May grant or deny minor waivers from the enforcement of requirements of this zoning code in accordance with standards stated below, provided, that any person aggrieved by any such decision of the Zoning Administrator may appeal to the Board of Adjustment pursuant to Chapter 26.84 and no fee shall be paid for filing such an appeal:

   1. To permit the reduction in the number of required parking spaces for joint use of parking facilities when evidence shows that the peak parking demand of the different uses occurs at different times;

   2. To increase, by not more than twenty-five percent (25%), the maximum distance that required parking spaces may be located from the uses served;

   3. To vary the size of the required parking space to allow for dedicated small car parking areas in parking lots which have a low turnover, such as parking for office uses. The small car spaces may be permitted to be seven and a half (7.5) feet by sixteen (16) feet in size;

   4. To vary the front, side or rear yards, required of a main or accessory building to allow it to conform to the existing setbacks of abutting or adjacent property;

   5. To vary the front, side or rear yards, required of a main or accessory building if evidence is provided showing a need for reduction of yard depths to provide for a permitted use that cannot be provided for by any other permissible means;

   6. To increase the height of any accessory structure; and

   7. To permit minor repairs or alterations of a nonconforming structure.

   8. To vary the number of bicycle racks required under Section 26.16.085(C) if site requirements required in Section 26.16.085(B) cannot be met by means of direct access from a street frontage.

(Ord. No. 69148, § 3, 4-4-2012: prior: Ord. 67401 § 2, 2007: Ord. 59979 § 23 (part), 1986.)

## Chapter 26.92 - CHANGES AND AMENDMENTS

**Sections:**

### 26.92.010 - Initiation of change.

Any amendment or change in the boundaries or regulations herein shall be initiated in the following manner:

A. By motion of the Planning Commission; or

B. By the filing of a petition with the City Zoning Administrator, by the owner or owners of the property within the district.

(Ord. No. 69037, § 2, 11-18-2011: Ord. 59979 § 24 (part), 1986.)

26.92.020 - Petition procedure.

The said petition shall be in writing on a form supplied by the Zoning Administrator and shall contain a complete description of the property involved and shall set forth fully the grounds of such petition and contain a recital of all the facts relied on by the petitioner. A fee, set forth in Chapter 26.98, shall be paid to the City upon the filing of a petition, and under no conditions shall said filing fee or any part thereof be returned in the event of unfavorable findings or recommendations on said petition by the Commission. After a study and investigation and within forty-five (45) days of filing the petition, the Planning Commission shall report to the petitioner its findings and recommendations. Where the Planning Commission recommends modification in the requested change, amendment or supplement, said petitioner may incorporate the recommended modification in the petition and forward it to the Planning Commission for further study and said Commission shall report to the petitioner its findings and recommendations.

(Ord. No. 69084, § 2, 2-13-2012: Ord. No. 69037, § 3, 11-18-2011: Ord. 59979 § 24 (part), 1986.)

26.92.030 - Action by Board of Aldermen.

Upon receipt of the recommendation of the Commission or the expiration of forty-five (45) days from the date of first filing said petition, the amendment, change or supplement in the form of a proposed ordinance may be introduced in the Board of Aldermen. Upon introduction in the Board of Aldermen in the form of an ordinance, the Planning Commission shall forward to said Board its findings and recommendations. Any amendment, supplement or change in the form of an ordinance pursuant to the provisions of this chapter shall be introduced into the Board of Aldermen within one (1) year from the date of the Planning Commission findings and recommendations. The Board of Aldermen, after public notice and hearing as provided in Section 26.92.040, may amend, supplement or change the boundaries or regulations herein or subsequently established.

(Ord. No. 69037, § 4, 11-18-2011: Ord. 59979 § 24 (part), 1986.)

26.92.040 - Notice of proposed change.

A. When any bill that has as its purpose the making of a change in the boundary of a zoning district map is introduced in the Board of Aldermen, the committee to which it is referred for consideration shall require the Clerk of said Board to:

1. Have a placard containing the words "Proposed change in zoning ordinance in this block" printed in large type, placed in a conspicuous place on or in the immediate vicinity of the property and block in which a change in zoning district boundaries is proposed at least fifteen (15) days prior to any public hearing held by the Committee having jurisdiction thereof. Such placard shall also have prominently displayed such relevant facts and information pertaining to the proposed change, a designation by street address of the property(s) to be changed and the date when those interested may appear before the committee and be heard. The bill proposing such zoning change shall also be attached to the placard beneath the relevant facts and information.

2. Have notice of the public hearing on the bill and the proposed changes published in the official paper of the City of St. Louis or a paper of general circulation, at least fifteen (15) days prior to said hearing.

B. When a bill proposing an amendment to the provisions of the zoning code is introduced in the Board of

Aldermen, the committee to which it is referred for consideration shall require that notice of the public hearing and the proposed changes be published in the official paper of the City of St. Louis or a paper of general circulation.

(Ord. No. 69037, § 5, 11-18-2011: Ord. 59979 § 24 (part), 1986.)

City Counselor Ops.: 8360

Chapter 26.96 - PLATS, CERTIFICATES OF OCCUPANCY AND SURVEY FEES

**Sections:**

26.96.010 - Plats required.

All applications for building permits shall be accompanied by a plat in triplicate drawn to scale, showing the actual dimensions of the lot to be built upon, the size of the buildings to be erected, and such other information as may be required by the Building Commissioner, which is necessary to provide for the enforcement of the zoning code.

(Ord. 59979 § 25 (part), 1986.)

26.96.020 - Certificates of occupancy—When.

A certificate of occupancy shall be required where there is a change in the use of land or where a new building is erected or an existing building is structurally altered or changed or converted in whole or in part.

(Ord. 59979 § 25 (part), 1986.)

26.96.030 - Issuance of certificates of occupancy.

Certificate of occupancy shall be issued by the Building Commissioner when, after inspection, it is found that the premises complies with the regulations of the zoning code. Certificates of occupancy and compliance shall be issued within ten (10) days after written application therefor; or if erection or alteration of buildings is contemplated, within ten (10) days after such erection or alteration is completed to the point of availability for occupancy and use. A record of all certificates shall be kept on file in the office of the building commissioner and copies shall be furnished on request to any person having a proprietary or tenancy interest in the building affected. There shall be no fee charged for the original certificate. A fee of fifty cents ($.50) for each copy of the original shall be charged by the Building Commissioner. No permit for the erection of any building shall be issued before application has been made for a certificate of occupancy. No building or premises may be occupied until such certificate shall have been issued.

(Ord. 59979 § 25 (part), 1986.)

26.96.040 - Front yard survey.

The fee for a survey necessary to establish the front yard line requirements of any use districts, as set forth in Chapter 26.98, shall be paid prior to the issuance of any certificate of occupancy or building permit.

(Ord. No. 69084, § 2, 2-13-2012: Ord. 59979 § 25 (part), 1986.)

Chapter 26.98 - FEE SCHEDULE

26.98.010 - Schedule enumerated.

   The following non-refundable fees shall be paid by the requesting party prior to any action being taken by the city in connection with zoning services:

| Service | Fee |
| --- | --- |
| Front yard survey | $25.00 |
| Rezoning petition | $250.00 |
| Appeal to the Board of Adjustment | $200.00 |
| Conditional use | $50.00 |
| PUD (planned unit development) | $500.00* |
| CUP (community unit plan) | $500.00* |
| Amendment of a CUP | $300.00 |
| SPD (signage plan district) | $300.00 |
| Home occupancy waiver | $50.00 |
| Zoning letters | $25.00 |
| Signature verification of plat and petitions | $475.00 |
| Incidental business waivers | $20.00 |
| Form-based district application fee | $500.00 |

   *;hg;$500.00 for the first acre, $250.00 for each additional acre or fraction thereof.

(Ord. No. 70150, § 2, 11-24-2015; Ord. No. 69199, § 9, 7-18-2012: Ord. No. 69084, § 3, 2-13-2012)

Chapter 26.100 - VIOLATIONS

**Sections:**

26.100.010 - Penalty for violations.

The owner or general agent of a building or premises where a violation of any provision of the zoning code has been committed or shall exist, or the lessee or tenant of an entire building or entire premises where such violation has been committed or shall exist, or the owner, general agent, lessee or tenant of any part of the building or premises in which such violation has been committed or shall exist, or the general agent, architect, builder, contractor or any other person who commits, takes part in or assists in any such violation or who maintains any building or premises, in which any such violation shall exist shall be guilty of a misdemeanor punishable by a fine of not less than ten dollars ($10.00) and not more than one hundred dollars ($100.00) for each and every day that such violation continues, but if the offense be willful on conviction thereof, the punishment shall be a fine of not less than one hundred dollars ($100.00) or more than two hundred fifty dollars ($250.00) for each and every day that such violation shall continue or by both such fine and imprisonment in the discretion of the court. Any such person who having been served with an order to remove any such violation shall fail to comply with said order within ten (10) days after such service or shall continue to violate any provisions of the regulations made under authority of the zoning code in the respect named in such order shall also be subject to a civil penalty of two hundred fifty dollars ($250.00).

(Ord. 59979 § 26 (part), 1986.)

Cases:

Circuit court has power in certiorari proceeding to order individual to vacate illegal residence and punish for contempt disobedience of such order, *Hernreich v. Quinn,* 168 S.W. 2d 1054 (1943).

Where an ordinance is unconstitutional, no one can be punished for having refused obedience to it before decision was made. *City of St. Louis v. Polar Wave Ice and Fuel Co.,* 296 S.W. 993 (1927).

McQuillin:

25.335 et seq. Prosecution on proceeding for zoning violations.

26.100.020 - Civil remedies.

In addition to the above remedies, the City Counselor may file an action to restrain any violation of the zoning code. Any person owning property in any district where his rights may be affected or invaded by a violation of the terms of the zoning code may bring suit in any Court of competent jurisdiction and obtain such remedies as may be available at law or in equity to protect his rights.

(Ord. 59979 § 26 (part), 1986.)

26.100.030 - Revocation of conditional use permit.

A.   Any use which constitutes an enlargement, alteration or extension in the permitted use of a building, structure or premises for which a conditional use permit has been granted, or any permitted use of a building, structure or premises for which a conditional use permit with conditions has been granted and said

conditions are not complied with shall be a violation of the zoning code.

B.  Upon notice from the Code Official that a use which may constitute an enlargement, alteration or extension in the permitted use of a building, structure or premises for which a conditional use permit has been granted has occurred, or that a permitted use of a building, structure or premises for which a conditional use permit with conditions has been granted and said conditions are not complied with, the Board of Public Service shall notify the owner of said building, structure or premises, and the party to whom said permit was granted, of a hearing to be held within 30 days of the date of said notice, to determine whether the use is an enlargement, alteration or extension in the permitted use for which a conditional use permit has been granted, or to determine whether the use for which a conditional use permit with conditions has been granted is in compliance with said conditions.

C.  If it is found by the Board of Public Service that an enlargement, alteration or extension in the permitted use of the building, structure or premises for which a conditional use permit has been granted has occurred, or that the permitted use of the building, structure or premises for which a conditional use permit with conditions has been granted and said conditions have not been complied with, the conditional use permit or conditional use permit with conditions shall be revoked.

D.  No new conditional use permit or conditional use permit with conditions shall be issued for the subject property for a period of one year from the date of revocation.

(Ord. 64051 § 1, 1997.)


26.100.040 - Revocation of variance.

A.  Any use which constitutes an enlargement, alteration or extension in the permitted use of a building, structure or premises for which a variance has been granted, or any permitted use of a building, structure or premises for which a variance with conditions has been granted and said conditions are not complied with shall be a violation of the zoning code.

B.  Upon notice from the Code Official that a use which may constitute an enlargement, alteration or extension in the permitted use of a building, structure or premises for which a variance has been granted has occurred, or that a permitted use of a building, structure or premises for which a variance with conditions has been granted and said conditions are not complied with, the Board of Adjustment shall notify the owner of said building, structure or premises, and the party to whom said variance was granted, of a hearing to be held within 30 days of the date of said notice, to determine whether the use is an enlargement, alteration or extension in the permitted use for which a variance has been granted, or to determine whether the use for which a variance with conditions has been granted is in compliance with said conditions.

C.  If it is found by the Board of Adjustment that an enlargement, alteration or extension in the permitted use of the building, structure or premises for which a variance has been granted has occurred, or that the permitted use of the building, structure or premises for which a variance with conditions has been granted and said conditions have not been complied with, the variance or variance with conditions shall be revoked.

D.  No new variance or variance with conditions shall be issued for the subject property for a period of one year from the date of revocation.

(Ord. 64051 § 2, 1997.)