# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| Mazen Owydat, et al.<br><br>PLAINTIFFS,<br><br>v.<br><br>City of St. Louis & Board of Adjustment of the City of St. Louis,<br><br>DEFENDANTS. | Civil Action No. 4:20-cv-00388 NAB |

## Defendants' Response to Plaintiffs' Memorandum Regarding the Standard of Review

Pursuant to the Court's Order and the request of the parties (Doc. 49 and 47, respectively), Defendants City of St. Louis ("City") and the Board of Adjustment of the City of St. Louis ("Board") submit the following memorandum of law regarding the appropriate statutory method for the Court's judicial review of the Board's decision.

### I.  Introduction

In their Complaint, Plaintiffs state five separate causes of action against. Counts I and II concern judicial review of the decision by the Board to uphold the decision by the Board of Public Service ("BPS") to deny Plaintiffs a conditional use permit to operate a convenience store and gas station at 4126 W. Florissant Avenue, St. Louis, Missouri ("the Property"). The remaining counts arise under 42 U.S.C. §§ 1983 and 1988.

The disagreement of the parties here as to which judicial review statute applies seems fundamentally linked to differing interpretations of what happened—and why it

happened. Put simply, Plaintiffs applied for a new occupancy permit, which required, *inter alia*, an inspection by City's Zoning Section. The Zoning inspection determined a need for a conditional use permit, which entailed an application separate and in addition to their occupancy permit application. That conditional use permit application was denied by BPS. Plaintiffs appealed to the Board, and the Board affirmed the denial. The denial of the conditional use application meant no occupancy permit would issue. However, the denial of the conditional use permit was not the same as the denial of the occupancy permit. They were separate processes.

**II.     The Court Should Review the Board's Decision Under § 89.110.**

Under Missouri law, it is well-settled that judicial review of decisions made by a board of adjustment is governed by § 89.110. *Deffenbaugh Industries, Inc. v. Potts*, 802 S.W.2d 520 (Mo. App. W.D. 1990); *State ex rel. Presbyterian Church of Washington, Missouri v. City of Washington, Missouri*, 911 S.W.2d 697, 701 (Mo. App. E.D. 1995). The proper redress for a person aggrieved by a zoning and planning decision is by petition for writ of certiorari under § 89.110. *Platte Woods United Methodist Church v. City of Platte Woods*, 935 S.W.2d 735, 737 (Mo. App. W.D. 1996). The exclusive remedy to attack a decision of a board of adjustment is under § 89.110. *Duffner v. City of St. Peters*, 482 S.W.3d 811, 816-17 (Mo. App. E.D. 2016) (citing *Bush v. City of Cottleville*, 411 S.W.3d 860, 865 n.5 (Mo. App. E.D. 2013). "A board of adjustment functions in an administrative or quasi-judicial capacity, and its decisions are reviewed pursuant to [the] statutory mandate [of § 89.110]." *Id*.

The plain text of § 89.110 provides, in relevant part,

> Any person or persons jointly or severally **aggrieved by any decision of the board of adjustment**...may present to the circuit court of the county or city in which the property affected is located a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. ... Upon the presentation of such petition the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of adjustment . . . (emphasis added).

Plaintiffs rely on *Babb v. Mo. Pub. Serv. Comm'n*, 414 S.W.3d 64 (Mo. App. W.D. 2013) for their argument that § 89.110 does *not* apply. Indeed, *Babb* is instructive for its analysis of the language and scope of § 89.110. But *Babb* does not avail the Plaintiffs' position; rather, it demands the opposite conclusion and advances Defendants' argument. Ultimately, *Babb* held that § 89.110 did not apply to those facts because "[t]he decision to deny the Babbs' [special use permit] application was made by the City's Board of Alderman", *not* by its board of adjustment, as that phrase is defined by § 89.080. *Id*. at 77. The *Babb* court further explained that "[i]n holding that section 89.110 has no application to zoning decisions unless made by a [board of adjustment]," it declined to follow other cases which found § 89.110 applicable to *all* zoning decisions, whether or not made by a board of adjustment. *Id*. at 76-77.

In other words, *Babb* mandates that if the decision that is the subject of Plaintiffs' Complaint was a zoning decision made by a board of adjustment, then § 89.110 is unequivocally the correct statute for this Court's review. Accordingly, the Court must decide two issues: (1) whether the Board's decision a "zoning" decision; and (2) whether the Board is a "board of adjustment." If the answer to both issues is affirmative, then *Babb* instructs that judicial review must occur under § 89.110.

### A. Was the Board's Decision a Zoning Decision?

3

Yes. The Court should find that the Board's decision was a zoning decision because the issue before the Board concerned Plaintiffs' application for a conditional use permit, not an occupancy permit.

Plaintiffs repeatedly mischaracterize or misapprehend the facts to suggest that their issues involved only an occupancy permit. In particular, Plaintiffs suggest they were before the Board because they filed an appeal of a citation issued by the Building Division (Exhibit 4). Doc. 50, p. 4, 9. This is incorrect, as evidenced by their application for an appeal to the Board of Adjustment, in which they state, "This comes as application for an appeal of the Board of Public Service denial dated June 25, 2019." Plaintiff's Exhibit 5, p. 47. In truth, Plaintiffs did not appeal the citation, but instead filed an application for a new occupancy permit application shortly after receiving the citation, which City assigned the number AOP-3847-19. Exhibit 5, p. 86-88.

As evidenced by many documents in the record, once an occupancy permit application is submitted, it is routed to the various sections within the Building Division, including the Zoning Section. *See e.g., id* (entitled "Inspector Routing"). Each section reviews the occupancy application and performs inspections to ensure that the proposed occupancy complies with *all* City's ordinances that are enforced by the Building Division, including the Zoning Code. *See* Exhibit E, § 25.01.020(§ 201.3) of the Revised Code of the City of St. Louis ("City Code")[1].

---

[1] Exhibit E is an abridged version of this section of the City Code, containing only the first page and the cited provision, § 201.3. A full version of § 25.01.020 can be found here: https://library.municode.com/mo/st._louis/codes/code_of_ordinances?nodeId=TIT25BUCO_CH25.01BUCO_25.01.020AM.

Of significance to the instant matter, the City's Zoning Code contains the following provisions: the City is divided into twelve zoning districts (§ 26.12.010); Plaintiffs' property at 4126 W. Florissant Avenue was classified as Zone G, "Local Commercial and Office District" (Plaintiffs' Exhibit 6, p.2); "convenience store" is not a type of use allowed by right for a building or premises in Zone G (§ 26.44.020); "convenience store" is a permitted conditional use, however, in Zone G (§ 26.44.025); any conditional use is not allowed by right and must be approved by the City's Board of Public Service ("BPS"), which has the authority to issue conditional use permits (§26.80.010); BPS shall not approve a conditional use unless it finds that "the use will not be detrimental to the public health, safety, morals or general welfare," and that "the use will not cause serious injury to the neighboring property by hindering use or reducing or impairing property values" (§ 26.80.010(E)). *See* Exh. 2.

In this case, Plaintiffs' occupancy application prompted several inspections of their Property by sections within the Building Division, including the Zoning Section. Exhibit 5, p. 86-88. The Zoning Section reviewed Plaintiffs new occupancy application "for Zoning Code compliance" and determined that it could not be approved unless it receives *separate* "approval through a conditional use permit, as required by [the] Zoning Code." Exhibit 6, p.1. Plaintiffs were informed in the same letter that to proceed with this *separate* application process for a conditional use permit, they needed to pay a fee and then a hearing would be scheduled. *Id*. at 1-2.

Plaintiffs did proceed with that separate application and were scheduled for a Conditional Use Hearing, which was necessary because, "the use you have requested a

permit for [Convenience Store/ Gas Station] is not allowed by right" in the zoning district in which the Property is located. Exhibit A, Letter regarding Conditional Use Hearing. On June 6, 2019, BPS held a hearing regarding Plaintiffs' conditional use application. *See* Exh. 5, pp.108-115. On June 18, 2019, BPS denied Plaintiffs' conditional use application because it determined that granting the conditional use permit would be "detrimental to the public health, safety, morals, or general welfare," and would "cause serious injury to the neighboring properties by hindering their use and reducing or impairing property values." Exhibit B, BPS Letter.

On July 12, 2019, Plaintiffs sent a letter to the Board requesting an appeal of BPS's decision. Exh. 5, p. 107. On October 9, 2019, and January 15, 2020, the Board heard evidence and testimony on Plaintiffs' appeal. Exh. 5, p.3. At both days of the hearing, residents and neighbors testified before the Board and described criminal activity at the Property. *Id*. p. 3-11. The Board also received evidence of the calls for Police service to the Property, and a list of over 100 signatures from people in opposition to Plaintiffs' appeal. Id. at p. 65-83. On January 28, 2020, the Board issued its Decision, with Findings of Fact, to uphold the BPS decision. The Board specifically found that the "proposed use does not conform to the standards required for conditional use approval as set forth in Section 26.80.010(E)" of the City Code, and that "the use would be detrimental to public health, safety, morals or general welfare." Id. at p. 10.

Contrary to Plaintiffs' assertions, the proceedings before the Board, and the Board's decision, clearly constituted a zoning decision. The Board did not hear an appeal of a citation for violations of the City's Building Code, nor did it hear an appeal of a

6

decision to deny Plaintiffs an occupancy permit, as suggested by Plaintiffs. The gravamen of the record makes clear that and the decisions by BPS and the Board decision related to Plaintiffs' application for a conditional use permit, which is a zoning issue. For example, City's May 14, 2019, letter to Plaintiffs concerned a "***conditional use*** hearing", which is a phrase used in the City's Zoning Code. Exh. A (emphasis added). The letter informs Plaintiffs that "the use you have requested a permit for is not allowed by right in the above-noted ***zoning district***." *Id*. (emphasis added)[2]. In its decision, the Board notes that it heard the appeal "pursuant to § 26.84.040 of ***the Zoning Code***." Exh. 5, p.3 (emphasis added). Most every document from Zoning, BPS, and the Board either directly quotes or references the City's Zoning Code, which governs conditional use permits.

While it is true that the Board's decision to uphold the BPS decision and deny Plaintiffs' conditional use application *had the effect* of preventing Plaintiffs from obtaining an occupancy permit. Nonetheless, the record is clear that the conditional use component was a ***separate*** process and application from the occupancy permit. The only issue before the Board was the conditional use permit, which was clearly and expressly a zoning matter within the Board's jurisdiction. In fact, the Board's jurisdiction, as enumerated by the very same part of the City's Zoning Code—Chapter 26.84—that creates the Board, is limited to "hear[ing] and decid[ing] appeals where it is alleged there is error in any order, requirement, decision or determination made by an Administrative

---

[2] The City's May 14, 2019, letter contains an error in that it notes that Plaintiffs' Property was zoned F. This error has no impact on the analysis in that a convenience store also requires a conditional use permit in Zone F, and this is also the only instance in which the applicable zoning section was incorrectly noted.

Official or Agency in the enforcement of *the zoning code*." Exh. 2, § 26.84.050(A)3. The same section enumerating the Board's powers makes no mention whatsoever of the Board's authority to hear an appeal of the denial of an occupancy permit.

Plaintiffs claim that their appeal of BPS's decision "should have been reviewed by the Board of Building Appeals under the IBC, not the Board of Adjustment." Doc. 50, pp.2-3. Not so. Under City's Code, jurisdiction of the Board of Building Appeals is limited to "hear[ing] and decid[ing] appeals where it is alleged that there is error in any order, requirement, decision or any determination made by *the Building Commissioner or the Health Commissioner* in the enforcement of the "Minimum Nonresidential Standards Law." Exh. C, Chapter 25.05 of the Revised Code of the City of St. Louis, § 25.05.010. Here, there was no decision of the Building Commissioner or the Health Commissioner at issue. Plaintiffs appealed a decision by BPS to deny a conditional use permit. Thus, the Board of Building Appeals had no jurisdiction to hear or decide the zoning matter at issue.

The Court should find that the decision of the Board was a zoning decision.

**B. Is the Board a board of adjustment?**

Yes. The Court should find that the Board is a "board of adjustment", as that phrase is defined by Missouri law.

Notably, Plaintiffs do not meaningfully raise this issue nor do they allege that the Board does *not* meet the definition of "board of adjustment" laid out in § 89.080. Because this issue does not appear to be in dispute, the defendants will devote few words to the

---

3 That same section notes that an appeal of the Board's decision should be guided by § 89.110 RSMo. Exh. 2, § 26.84.050(G).

topic.

According to *Bapp*, a "board of adjustment" under § 89.080 is "a five member board appointed by the 'local legislative body' pursuant to legislatively proscribed terms [] who must meet in accordance with statutorily authorized rules to conduct business as described in [§] 89.090. That business includes hearing appeals from decisions made by an administrative official in the enforcement of Chapter 89 zoning statutes." 414 S.W.3d at 77 n.15.

Here, Chapter 26.84 of the City Code establishes the Board, enumerates its rules, regulations, and jurisdiction, and lays out its procedures for meetings and appeals. *See* Exhibit 2. The Court should find that the Board is a board of adjustment pursuant to Chapter 89 RSMo.

Thus, the decision that Plaintiffs challenge here was a zoning decision that was made by a board of adjustment, *Bapp*, et al. dictates that § 89.110 is the only appropriate mechanism for the Court's judicial review in this matter.

### III. In the Alternative, the Proceedings Before the Board Were a Contested Case

If the Court finds that § 89.110 does not apply, the Court should find that judicial review of this matter should follow that of a "contested" case under Missouri law.

**A. Missouri Law**

Judicial review of a contested case is governed by Sections 536.100 to 536.140 RSMo. *Teague v. Missouri Gaming Commission*, 127 S.W.3d 679, 682 (Mo. App. W.D. 2003). "A case is contested when a hearing is required by law to determine the rights of a party." *James v. City of Jennings*, 735 S.W.2d 188, 190 (Mo. App. E.D. 1987). A "contested

9

case" is defined in Section 536.010(4) RSMo. as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." "This means that a contested case in the context of MAPA, is a case which must be contested because of some requirement by statute, municipal charter, ordinance or constitutional provision for a hearing of which a record must be made unless waived." *Rugg v. City of Carrollton*, 990 S.W.2d 89, 90 (Mo.App. W.D. 1999).

"In either a contested or a non-contested case the private litigant is entitled to challenge the governmental agency's decision." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009). "The difference is simply that in a contested case the private litigant must try his or her case before the agency, and judicial review is on the record of that administrative trial, whereas in a non-contested case the private litigant tries his or her case to the court." *Id.* at 507. The classification of a case as "contested" or "noncontested" is determined as a matter of law. *Id.* at 506.

The key to determining whether a case is contested or noncontested is the requirement of a hearing. *Id.* at 507. "The term 'hearing,' as used in section 536.010(2) means a proceeding at which a 'measure of procedural formality' is followed." *Id.* "Procedural formalities in contested cases generally include: notice of the issues (section 536.067); oral evidence taken upon oath or affirmation and the cross-examination of witnesses (section 536.070); the making of a record (section 536.070); adherence to evidentiary rules (section 536.070); and written decisions including findings of fact and conclusions of law (section 536.090)." *Id.* "In determining if a hearing comports with these formalities, the statute requiring the hearing is examined." *Id.*

## B. Defendants Satisfied the Procedural Safeguards Set Forth in Section 536.020 through 536.090

Plaintiffs cite *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur, Mo.*, where the court held that the statute at issue did not meet the formal procedural requirements of a hearing for a contested case. *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur, Mo.*, 477 S.W.3d 49, 54 (Mo. App. E.D. 2015). Firstly, the statute in *450 N. Lindbergh* contains only one section that even remotely addresses a procedural requirement for a hearing: ". . . the city clerk shall set a date for a public hearing before the Commission, and shall take specified steps to notify the public." *Id*. As such, that case is inapposite to these facts. Secondly, *450 N. Lindbergh* notes that the relevant inquiry in determining a contested v. non-contested case is whether an ordinance required the agency to provide a hearing. 477 S.W.3d at 54.

Here, the City's Zoning Code unequivocally does require the Board to provide a hearing on any appeal;

> The Board ***shall*** fix a reasonable time for the hearing of the appeal, give public notice thereof, as well as due notice to the parties in interest and decide the same within a reasonable time. At the hearing any party may appear in person or by agent or by attorney.

Exh. 2, pp.95-96, § 26.84.040(B). Further, the Board's Rules and Regulations, promulgated pursuant to § 26.84.030, contain a number of additional procedural requirements: (1) public notice of the hearing, including a description of the issue in the appeal; (2) an opportunity for both those in favor of and opposed to the appeal to testify; (3) the making of a record transcript by a certified court reporter; (4) rules governing how the hearing must be conducted, including that any objections are to be ruled on by the Chairperson;

and (5) a written decision. Exhibit D, Board's Rules & Regulations. Taken all together, Defendants substantially complied with the procedural formalities that the court in *City of Valley Park v. Armstrong* stated are "generally include[d]" in a contested case. As such, the Court should review Plaintiffs' appeal before the Board as a contested case if it decides not to review it under § 89.110.

### C. Review Under Section 536.150 as Sought by Plaintiffs is Not Permissible

Plaintiffs argue that they are entitled to review as a non-contested case because of the actions of building officials and the zoning administrator, and because said actions were not accompanied by sworn testimony, opportunity for cross-examination, nor rules of evidence. Section 536.150 RSMo states in part:

> When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have **rendered a decision** which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, **and there is no other provision for judicial inquiry into or review of such decision**, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action . . .

The only allegation in Plaintiffs' Petition that comes close to being a reviewable decision, made by a building official or the zoning administrator, under Section 536.150 is the claim that the City "forced" or "coerced" Plaintiffs into applying for a new occupancy permit. Doc. 3, p. 17. This is presumably a reference to the citation (50-4) attached to their Memo, though it was not mentioned in their Petition. That very citation informed Plaintiffs that they had a right to appeal the violations contained in the citation. Plaintiffs declined to do so and instead elected to apply for a new occupancy permit. As such, the citation is not reviewable under Section 536.150, which requires that there be "no other provision for

judicial inquiry into or review of such decision." Further, any alleged decision by the zoning administrator – there are none in the Petition but several were alleged in subsequent pleadings – was in relation to the conditional use permit; therefore, any said decision would be included in the appeal of the Board's decision and would be similarly not reviewable under Section 536.150.

## IV.  Conclusion

The only issue before the Board was the conditional use permit, which is a zoning matter governed under the City's Zoning Code and well within the Board's jurisdiction. Therefore, judicial review of the Board's decision must be conducted under § 89.110. In the alternative, the Court should review the Board's decision as a contested case under § 536.140.

Respectfully submitted,
Michael Garvin,
CITY COUNSELOR

/s/ J. Brent Dulle #59705(MO)
Associate City Counselor
Travis F. Warren, #71304(MO)
Assistant City Counselor
City of St. Louis Law Department
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-3361
DulleB@stlouis-mo.gov
WarrenT@stlouis-mo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system.

/s/ J. Brent Dulle