UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MAZEN OWYDAT, YOUSSEF MEQUEH, and SALEH ALKHAFAJI, as partners, d/b/a West Florissant BP, f/k/a West Florissant Amoco,<br><br>    Petitioners/ Plaintiffs,<br><br>vs.<br><br>THE CITY OF ST. LOUIS, MISSOURI, et al.,<br><br>    Respondents/Defendants. | Cause No. 4:20-cv-00388-NAB |

## PLAINTIFF'S REPLY MEMORANDUM REGARDING THE STANDARD OF REVIEW

### Introduction

Defendants engage in a level of obfuscation that is Orwellian in magnitude in their "Defendants' Response to Plaintiff's Memorandum Regarding the Standard of Care" (hereinafter the "Response"). Defendants state in the Introduction to their Response that the "disagreement of the parties . . . "seems fundamentally linked to differing interpretations of what happened. . ." *See* Response, Page 1. Defendants then falsely state that the subject matter of this case and the review conducted by the City's Board of Adjustment in the administrative proceeding below concerned a "separate" application for and denial of a Conditional Use Permit, not just an Occupancy Permit. *See* Response, Page 2. The Record of the administrative actions, however, belies these misleading assertions and clearly demonstrates that the heart of the issue below was, from its inception to its conclusion, centered on whether or not Plaintiff was entitled to an Occupancy Permit, not a conditional use permit as Defendants would have this Court believe.

1

## I. The Record Created by the City Belies Defendants Claims and it is Uncontroverted that the Subject Matter of the Proceedings was an <u>Occupancy Permit Application, Not a Conditional Use Permit Application</u>

The Record, Exhibit 5 filed as an attachment to Plaintiff's primary Memorandum Regarding the Standard of Review, conclusively establishes this (a highlighted copy of Exhibit 5 is filed herewith as a convenience).

The Record, Exhibit 5, on the following pages, establishes:

1. Appeal #20251 concerns an appeal of a denial of an occupancy permit, see pp. 1, 2, 3, 25;

2. The written Findings and Conclusions of the Board of Adjustment state that Plaintiff applied for an "occupancy permit", p. 4, item 4, and nowhere is there a finding that addresses a conditional use permit;

3. The Board upheld the decision of the Board of Public Service to deny an occupancy permit", page 10;

4. The Board further advised Plaintiff that Sections 26.100.030-040 of the City's Code provide "authorization to revoke conditional use permits" that fail to comply with conditions imposed by "when a conditional use. . . is granted." This is an explicit admission that Plaintiff's 1999 CUP, which is never mentioned in the Record and was never made an Exhibit before either the Board of Public Service or the Board of Adjustment remained valid and could be subject to "revocation."

5. The publication notice for Appeal #20251 states that it is for the "denial of an occupancy permit"; p. 50 (notably on the same page in the lower right corner are notices regarding conditional use permit hearings, which are formatted differently and Appeal #20251 is never listed under those "Public Notices"; see also p. 52 for the same content on a different publication date;

6. The Exhibits introduced into evidence (*see* reference at p.4, para. 1) also confirm that it was an occupancy permit, not a conditional use permit, that was the focus of the proceedings, *see, e.g.*, Ex. C-1, p. 46 (the Board of Public Service voted to deny approval "to occupy"; no mention of a CUP); Ex. D-1, p. 48 (we are in receipt of your appeal of the denial of an "occupancy permit"); Ex. J-1, pp. 65-79 (that repeatedly references "DENYING" . . . "occupancy"); Exhibit D, Board of Adjustment letter of September 23, 2019, confirming receipt of appeal of "denial of an occupancy permit", pp. 93-95; Exhibit E, publication notice of appeal of denial of occupancy permit, p. 96-97;

7. Board of Adjustment letter dated October 9, 2019, demonstrating that the proceeding before the Board of Public Service, #BPS-126680 with application tracking number #AOP-3847-19 was part of Appeal #20251 "concerning the Board of Public Service decision to deny the Appellant an occupancy permit",

2

p.85;

8. Exhibit C, p. 86, labeled "Occupancy Permit" and showing the routing through departments, all of which indicated "Issue Permit" except for Zoning and the Board of Public Service (and all for the illegal reason promulgated by Mary Hart Burton, as demonstrated below);

9. Exhibit C, p. 87, demonstrating that the current occupant on July 15, 2019 was West Florissant BP, which is the same occupant who received an occupancy permit in 1999 (*see* Exhibit 1 filed with Plaintiff's initial Memorandum);

10. Board of Public Service letter dated June 18, 2019, confirming denial of occupancy permit, p. 91; and

11. There was no separate conditional use permit ("CUP") proceeding as Defendants assert. The only mention in the Record of CUP hearing is before the Board of Public Service in connection with Occupancy Permit Application tracking #AOP-3847-19, which was illegally required by the Zoning Administrator as more fully discussed herein.

The Record demonstrates that all of the proceedings below were about an Occupancy Permit application that emanated from a citation under the Building Code and there was no review of CUP by the Board of Adjustment. Defendants statements to the contrary in their Reply at pages 4 through 8 are blatantly false and completely mis-state the Record. As such they do not serve as a valid basis for Chapter 89 review of a zoning determination.

**II.  The Uncontroverted Evidence Shows the Proceedings Below were based on an Illegal Premise That Cannot Support Chapter 89 Review.**

The uncontroverted evidence before the Court is that the Zoning Code did not require a new occupancy permit on the facts of this case. Plaintiff stated in its opening Memorandum, and in their Reply Defendants did not contest, the following quote and statements:

"With regard to occupancy permits, the City Zoning Code, Section 26.96.020, states explicitly that:

**26.96.020 - Certificates of occupancy—When.**
A certificate of occupancy shall be required where there is a change in the use of land or where a new building is erected or an existing building is structurally altered or changed or converted in whole or in part. (Ord. 59979 § 25 (part), 1986.)

Exhibit 2, page 101. There were no changes in the "use of land" and there was no new building or an existing building that was structurally altered, changed or converted in

3

whole or in part on Plaintiff's property.

Plaintiff's Memorandum, page 11. The City's Zoning Administrator knew or should have known that her own Zoning Code, Section 26.96.020, required her to approve Plaintiff's application for an Occupancy Permit. That would have been an end to it. Instead, she made a determination that is so clearly contrary to law that she could not survive a motion to dismiss based on Qualified Immunity if she were made a party to this action. *See, e.g., MacKintrush v. Pulaski County Sheriff's Department,* --- F.3d ---- (2021) 2021 WL 401274 (Feb. 5, 2021) (qualified immunity attaches when a defendant-official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known).

The Zoning Administrator said a new ***Occupancy Permit*** could not be granted because:

> "Conditional use approval is required for this gas station and convenience store here in Zone "G" - Local Commercial and Office District. (***There can be no continuation of this nonconforming use to this new applicant since convenience store uses can no longer be transferred to subsequent owners*** without conditional use approval.) (emphasis added).

*See* **Exhibit** 6, filed with Plaintiff's initial Memorandum. She said this knowing that Plaintiff had an existing CUP that had never been revoked and for which revocation proceedings had never been initiated as provided in Zoning Code Section 26.100.030-.040. This is confirmed by the Board of Adjustment's own written Findings in the Record, **Exhibit 5**, p. 11. She said this although there is no provision in the City's Zoning Code that says "convenience store uses can no longer be transferred to subsequent owners."[1] No ordinance, regulation or policy exists that supports the rationale given by the Zoning Administrator for denying the Occupancy Permit.

The Zoning Administrator then compounded the illegality by denying the Occupancy Permit because there could be "no continuation of this non-conforming use." Discontinuing a

---

[11] *See* Exhibit 7 filed simultaneously herewith that is an E-mail from the City Counselor's office confirming in response to a document request that the City Counselor's office is not aware of any such policy to which Ms. Burton refers.

4

non-conforming use is in plain disregard for the clear and overwhelming weight of legal authority that even an inexperienced planner would or should know.

The essential nature of a legal, non-conforming use is that it is a vested property right that is allowed to continue regardless of zoning code changes. *State ex rel. Kugler v. City of Maryland Heights,* 817 S.W.2d 931, 933 (Mo. Ct. App. E.D. 1991) (The legality of **nonconforming use is vested by use** and **not by ownership** or tenancy); *Heck v. City of Pacific*, 447 S.W.3d 202, 205 (Mo. Ct. App. E.D. 2014) (a nonconforming use is a vested property right that **may not be abrogated by a zoning ordinance**, *citing City of Sugar Creek v. Reese*, 969 S.W.2d 888, 891 (Mo. Ct. App.W.D.1998) (**"Zoning ordinances must permit continuation of nonconforming uses** in existence at the time of enactment [of zoning change] to avoid violation of constitutional provisions preventing the taking of private property without compensation."); *Rose v. Board of Zoning Adjustment Platte County*, 68 S.W.3d 507, 515 (Mo. Ct. App.2001) ("The term **'nonconforming use' means a use of land which lawfully existed prior to the enactment of a zoning ordinance** and which is maintained after the effective date of the ordinance even though not in compliance with the new use restrictions"); and *Storage Masters–Chesterfield, L.L.C. v. City of Chesterfield,* 27 S.W.3d 862, 865 (Mo. Ct. App. 2000) (**prior use establishes a vested property right,** and a new or modified ordinance may not be applied to require cessation of that use).

Without question, Plaintiff's CUP granted in 1999 is a vested property right that cannot be taken without violating Plaintiff's constitutionally protected property rights. *See, e.g., Gray v. White,* 26 S.W.3d 806, 818 (1999), (CUP holder *acquires a vested right* in the continued permitted use of that property). The Zoning Administrator certainly knew or should have known that the City's Zoning Code provides that a CUP "shall apply to the use" ***indefinitely***

so long as no changes are made to the site or structure in which the CUP is put to use. *See* **Exhibit** 2, page 101, filed previously with Plaintiff's primary Memorandum.

Instead of following the Zoning Code and clearly established law, the Zoning Administrator attempted to convert a simple and straightforward application for an Occupancy Permit into an application for a conditional use permit without acknowledging Plaintiff's existing Conditional Use Permit or properly attempting to revoke it. This bait and switch ploy should be seen by the Court for what it is: an illegal end-run around Plaintiff's valid and existing Conditional Use Permit and attempt to deprive Plaintiff of its constitutionally protected property rights without due process of law and without just compensation.

Since the proceedings below were premised on the illegal insertion of zoning issues into an occupancy permitting matter in a manner that was neither supported by the City's Zoning Code or controlling law, there was no valid zoning issue for the Board of Adjustment to consider, and that Board was without authority or jurisdiction to act. Consequently, Chapter 89 review is not applicable or proper in this case.

### III. A Conditional Use Permit Once Granted Provides the Same Protections As a Use Granted As a Matter of Right.

Defendants assert at pages 4 and 5 of their Reply that an "Inspector Routing" sheet used among sections of the City's administration somehow allows the enforcement of the Zoning Code and that because Plaintiff's property is located within Zone G, which only allows convenience stores by conditional use, that the Board of Public Service has the duty to issue separate conditional use permits on a new occupancy permit application. These assertions are misleading on their face, in their implications and in the manner in which they are presented.

First, while administrative sections may circulate "Inspector Routing" sheets, that does not give them authority to require any new permit in violation of City Code provisions or

governing law. There is no Zoning Code section that states a new CUP application must be sought when there is a change in occupancy. As discussed above in Section II, page 3 of this Reply, only changes in *use or structures* trigger new occupancy permit requirements under the Zoning Code, Section 26.96.020. Here, the citation against Plaintiff that started the "Inspector Routing" was that the current *owner* did not have an occupancy permit. Thus, the Routing was focused on the "user" not the "use" or "structure." There is nothing in Section 26.96.020 that authorized either the Zoning Administrator or the Board of Public Service to require a new occupancy permit on zoning grounds, let alone to require a new conditional use permit.

Second, the zoning district category (Zone G, Section 26.44.025) has no effect on the validity of a CUP once it is granted, and it is irrelevant to the question of property rights whether a use in a particular district is acquired "as a matter of right" or by "conditional use." While the Board of Public Service may have been delegated the right to issue or deny conditional use permits upon first request, once a property right is acquired either because it is categorized as a use allowed as a "matter of right" in Zone G, or by a "conditional use" allowed to be granted, the right to continue to use property in a manner consistent with the conditions in the CUP granted continues indefinitely and is a vested property right. Zoning Code, Section 26.80.010(D)(4); and *Gray v. White, supra*. In this case, as the Record clearly demonstrates, Plaintiff's 1999 CUP was never at issue before the Board of Public Service or the Board of Adjustment. No copy of that CUP or its conditions was ever introduced as an Exhibit or discussed. Defendants' statements at Pages 4 and 5 are merely platitudes and obfuscation and do not support the actions taken.

In fact, even if Plaintiff had applied for a new CUP in subjugation to the coercive efforts of the City, or even voluntarily, the subsequent denial of such a CUP application would have no

effect on the continued existence of a prior, validly existing CUP, such as Plaintiff's 1999 permit. This is true for the same reason that a property owner does not lose the right to use his home as a single-family residence in an R-1 district simply because that property owner petitions for a change of zoning to R-2 and is denied. The R-1 classification still gives the property owner the right to use his property in compliance with the regulations of the R-1 district. The same analysis applies to a CUP that has been granted. A property owner does not lose the right to use his or her property in compliance with that CUP unless it violates the conditions of the permit or other regulations in the applicable zoning district and steps are taken to revoke it as provided in the Zoning Code.

Defendants wrongly assert that a June 6, 2019 hearing on a CUP application somehow converts the entire occupancy permitting application into a zoning matter before the Board of Adjustment. That assertion is wrong for a number of reasons: 1) that June 6 hearing is never mentioned by the Board of Adjustment in its Findings, 2) a denial of a CUP is not a part of the Exhibits admitted before the Board of Adjustment, 3) nothing about the denial of a CUP is mentioned in the Findings of the Board of Adjustment, 4) no notice was ever published regarding the denial of a CUP in connection with Appeal #20251 that is the subject of the Record in this case and 5) it is irrelevant because the City had no legal right to require a new CUP for all the reasons already stated above.

The proceedings were all about an Occupancy Permit required under the Building Code (see the citations to the Record in Section I of the Reply above), and the Zoning Code itself does not require an Occupancy Permit on the facts of this case. As Defendants state at the top of page 8 of their Response, Section 26.84.050(A)3 "enumerating the Board's powers makes no mention whatsoever of the Board's authority to hear an appeal of the denial of an occupancy permit."

Plaintiff agrees. That is precisely why Chapter 89 review does not apply to this case.

**IV.     Defendants Cite to Outdated Law Regarding Contested Case Review.**

The *City of Jennings* and *City of Carrollton* cases cited by Defendants at pages 9 and 10 of their Response were decided before the more recent changes in the law regarding "contested-case" status, and they are no longer good law on this point. The law is now clear that in order for an administrative case to be considered a contested case, a statute (or in the case of a city, an ordinance) must require that the formalities of Chapter 536.020 through 536.090 be followed.

While Plaintiff believes that the *450 N. Lindbergh Legal Fund, LLC v. City of Creve Coeur, Mo.*, 477 S.W.3d 49, 54 (Mo. Ct. App. E.D. 2015) case cited previously is dispositive on this issue, we also refer the Court to *Winter Brothers Material Company v. County of St. Louis,* 518 S.W.3d 245 (Mo. Ct. App. E.D. 2017), which also held that "the relevant inquiry is not whether the party actually received these procedural formalities at a proceeding, but whether a statute, ordinance, or constitutional provision required the agency to provide such formalities," *citing 450 N. Lindbergh Legal Fund*, supra at 54. In *Winter Brothers*, the St. Louis County ordinances required a hearing to be held, but the ordinances lacked the same procedural formalities that guided the opinion in *450 N. Lindbergh Legal Fund*. The County ordinances required written notice of the hearing to be given to the applicant and those persons who opposed the permit application at the Planning Commission's hearing. Further, the ordinance required that the applicant be heard at the hearing. Importantly, however, no ordinance required that the hearing be on the record (Section 536.130); that witnesses be under oath, examined, and cross-examined (Section 536.070); that formal rules of evidence be followed (Section 536.070); or that the agency render written findings of fact and conclusions of law (Section 536.090, RSMo (2000)). Without a requirement of these procedural

formalities, the administrative hearing on the CUP did not qualify as a contested case, and the circuit court lacked authority to conduct a contested-case administrative review.

The *Winter Brothers* court acknowledged "that the proceedings before the County Council included some, but not all, of the required procedural formalities," but found it more important that "our review is not of what transpired at the administrative proceeding, ***but what the law requires for that proceeding***. *Supra* at 518 S.W.3d at 255.

Here, the governing City of St. Louis Code does not provide for the formal procedural requirements necessary to qualify as a "contested" case review, as more fully stated in our initial Memorandum. Neither does the Zoning Code provide for such formalities.

Furthermore, the Court should also take notice that throughout the proceedings described in the Record, Exhibit 5, there was no attempt by the City to separate prosecutorial, administrative or quasi-judicial functions and neither the Board of Public Service nor the Board of Adjustment had the benefit of independent counsel. This is particularly problematic with the Board of Adjustment, which is by statute an independent body that the City itself could sue in Circuit Court if aggrieved by a decision of that Board. Instead of providing independent counsel, the City Counselor's Office provides advice not only to administrative staff, but also to the boards at their hearings, as does the Zoning Department staff.

Given the lack of a requirement for contested-case formalities by any City ordinance and the lack of separation of functions conducted before the City's Board of Adjustment, no hearing before that board could be considered legitimately "contested."

V. **The Law Does Not Require Useless Acts.**

Defendants assert on page 12 of their Response that the very citation that coerced Plaintiff into filing a request for an occupancy permit authorized an appeal to the Board of Building Appeals, which Plaintiff did not do and, therefore, that decision is not reviewable under Section 536.150.

This assertion is wrong for a number of reasons.  Exhibit 4 filed with Plaintiff's initial Memorandum shows that a property owner is directed to two different bodies in order to appeal a determination against their interest, one to the Board of Building Appeals and the other to the Board of Adjustment.  In this case, the building official who inspected the premises at 4126 W. Florissant found only minor violations that were promptly repaired before a second inspection and the Building Section, on April 22, 2019 recommended issuance of the Occupancy Permit. *See* Exhibit 5, page 86.  There was no reason to appeal that determination.  It was the Zoning Section, however, that illegally denied the occupancy permit, and Plaintiff's were then misdirected to the Board of Adjustment.  The City cannot hide behind its own misdirection.

Moreover, any appeal to the Board of Building Appeals would have been useless since the Zoning Director stated on April 18, 2019 that she was denying the Occupancy Permit application because non-conforming uses could no longer be continued without a new CUP.  *See* Exhibit 6 filed with Plaintiff's initial Memorandum.  Plaintiff was in a Catch 22 situation, and an appeal to the Board of Building Appeals would have been a useless act.

Finally, Plaintiff has asserted violations of its constitutional rights under 42 U.S.C. Section 1983, which does not require that Plaintiff exhaust its administrative remedies before proceeding to Circuit Court (or District Court on removal).  *See, e.g., Patsy v. Board of Regents of State of Fla.,* 457 U.S. 496, 516 (1982) ("we conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983. We decline to overturn our prior decisions holding that such exhaustion is not required").

Even Section 536.100 envisions that a case such as that before the Court can be treated in other than a contested-case review basis.  The pertinent provision of Section 536.100 states: "provided, however, that nothing in this chapter contained shall prevent any person from attacking any void order of an agency at any time or in any manner that would be proper in the absence of this section."

11

Given the posture of this case, and the illegality of the bootstrapping by the City's Zoning Administrator that resulted in unnecessary and protracted administrative proceedings conducted without jurisdiction, it would be patently unfair to Plaintiff to require the more limited review of that record under a Chapter 89 writ of certiorari review. Plaintiff is entitled either to a trial on the merits of its Section 42 U.S.C. 1983 claims, or to have its injunctive and mandamus claims heard on a non-contested case review basis under Section 536.150 RSMo.

Respectfully Submitted,

CURTIS, HEINZ, GARRETT & O'KEEFE, PC

By: */s/Helmut Starr*
Helmut Starr, #32889MO
Nancy Mogab, #32478MO
Edward Sluys, #60471MO
Andrew Bramman, #69980MO
130 S. Bemiston, Suite 200
Clayton, Missouri 63105
(314) 725-8788 phone
(314) 725-8789 facsimile
hstarr@chgolaw.com
nmogab@chgolaw.com
esluys@chgolaw.com
abramman@chgolaw.com

*Attorneys for Plaintiff*
*West Florissant BP*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2021, the foregoing Plaintiff's Reply Memorandum Regarding the Standard of Review was served by E-mail upon Brent Dulle, dulleb@stlouis-mo.gov and Travis F. Warren, warrent@stlouis-mo.gov, counsel for Defendants.

*/s/Helmut Starr*
Helmut Starr